IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENEZET CONSULTING, LLC, and** | : | |
| **TRENTON POOL,** | : | |
| **Plaintiffs** | : | |
| | : | No. 1:16-cv-00074 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| | : | |
| **PEDRO CORTES, and** | : | |
| **JONATHAN MARKS,** | : | |
| **Defendants** | : | |

## ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Plaintiff Trenton Pool, a Republican voter registered in the State of Texas, brings this action with Plaintiff Benezet Consulting, LLC, the political consulting firm of which Plaintiff Pool is a principal. In the complaint, Plaintiffs allege that they desire to circulate nomination petitions within the Commonwealth of Pennsylvania on behalf of United States Senator Rand Paul, a candidate for the office of President of the United States. (Doc. No. 3.) Plaintiffs claim that their First Amendment right to circulate nomination petitions is unconstitutionally limited by three provisions of the Pennsylvania Election Code, codified at 25 Pa. Cons. Stat. §§ 2868-69.

The challenged provisions have been part of the Pennsylvania Election Code since 1937, administered by the Secretary of the Commonwealth in connection with his duties in overseeing statewide elections. 25 Pa. Cons. Stat. § 2621. Each year, pursuant to 25 Pa. Cons. Stat. § 2868, the Commissioner of the Bureau of Commissions, Elections, and Legislation ("the Bureau") publishes an election calendar fixing the statutory dates during which nomination petitions for candidates of major political parties must be circulated and providing detailed instructions for the circulation of valid nomination petitions. This election year has been no different. Defendant

Secretary Pedro Cortes published an election calendar and provided detailed instructions at dos.pa.gov, including the requirements at issue here.

Well in advance of the Secretary's preparation of the election calendar Plaintiff Pool contacted the Department of State to confirm that the provisions at issue here would continue to be enforced.  On October 22, 2015, attorneys for the Department confirmed that these requirements would be enforced in the 2016 calendar.  Plaintiffs took no action in response to that pronouncement.  Instead, days before the commencement of the statutory period for circulating nomination petitions commenced, Plaintiffs served the Commonwealth with their complaint and request for emergency injunctive relief.  Plaintiffs seek immediate injunctive relief in the form of a temporary restraining order and an injunction permanently enjoining the Secretary of the Commonwealth and the Commissioner of the Bureau from enforcing the offending provisions.  (See Doc. Nos. 4, 5.)

On January 26, 2016, five business days following service on the Commonwealth, the Court held a hearing on Plaintiffs' emergency motion.  At the time of the hearing, Defendants had not been afforded the opportunity to answer Plaintiffs' complaint or to file a formal brief in opposition to the pending motion.  At the hearing, the Court heard testimony in support of Plaintiffs' request for emergency relief.  Plaintiff Pool testified that for ten years he has been a professional circulator of nomination petitions, and that he had hoped that his firm Benezet LLC would be hired by candidate Senator Rand Paul to circulate nomination petitions in Pennsylvania during the current election cycle.

He testified that such a contract would be the largest he has ever obtained, and that in his opinion the Pennsylvania Election Code provisions related to certification by an in-state resident, notarization, and the "one signature, one voter" rule limit his ability to competitively price his

services.  He offered that he proposed to the Rand Paul campaign a fee of fifteen dollars per signature and received no contract.  Plaintiff Pool submitted that a proposed fee of six dollars per signature in five other states for other candidates also failed to result in a contract.  He added that in his experience candidates abandon their efforts in one state or another to concentrate elsewhere.  Plaintiffs' complaint represents that, even without a contract, Plaintiff Pool planned to be in Pennsylvania at the start of the circulation cycle to collect signatures for Rand Paul.  His in-court testimony on this representation was equivocal and not entirely convincing.

Plaintiffs also offered the testimony of Carl Romanelli.  Mr. Romanelli testified that he has been a candidate for elected office in Pennsylvania on two occasions, once as a Democrat and once as a Green Party candidate.  He testified that in his experience, Pennsylvania's in-state witness and notarization requirements make the petition process much more difficult.  The "pairing" resulting from the resident witness requirement alone results in "half the efficiency," in obtaining signatures, in Mr. Romanelli's experience.

A temporary restraining order is an extraordinary remedy, the "essential purpose" of which is "the preservation of the status quo while the merits of the cause are explored through litigation."  J.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 273 (3d Cir. 2002).  In considering an application for a temporary restraining order or a motion for a preliminary injunction, a court considers four factors: (1) "whether the movant has shown a reasonable probability of success on the merits;" (2) whether the movant will suffer irreparable injury pendent lite in the absence of the requested relief; (3) whether and to what extent harm will result to the non-moving party should the preliminary relief issue; and (4) "whether granting the preliminary relief will be in the public interest."  Crissman v. Dover Downs Entm't Inc., 289 F.3d 231, 253 (3d Cir. 2002) (en banc); see also Lozano v. City of Hazleton, 459 F. Supp. 2d 332, 335 (M.D. Pa. 2006) (weighing

the four preliminary injunction considerations in deciding temporary restraining order application).

Turning to the first factor, the Court is unable to find at this preliminary stage of the litigation that Plaintiffs have presented facts sufficient to demonstrate a reasonable probability of success on the merits.  In "ballot access" cases touching political speech or voting rights, courts apply an analytical framework with its origins in the United States Supreme Court's opinion in Anderson v. Celebrezze, 460 U.S. 780 (1983).  See Burdick v. Takushi, 504 U.S. 428, 433-34 (1992).  Applying Anderson requires a court to balance the burden "placed on the rights which plaintiffs seek to assert" against "the precise interests identified by the state and the extent to which these interests require that plaintiffs' rights be burdened."  Rogers v. Corbett, 468 F.3d 188, 194 (3d Cir. 2006) (citing Anderson, 460 U.S. at 789).  This balancing begins by determining whether the challenged regulation imposes a "severe burden" on a plaintiff's First and Fourteenth Amendment rights, or whether instead, the challenged regulation imposes only "'reasonable, nondiscriminatory restrictions'" on a plaintiff's First and Fourteenth Amendment rights.  Burdick, 504 U.S. at 434 (quoting Anderson, 460 U.S. at 788).  Assuming, as Plaintiffs suggest, that Anderson governs their constitutional challenges, there is insufficient evidence of record from which this Court can reasonably conclude that the burden imposed upon them is severe or that the Commonwealth's interests – against which Plaintiffs' burdens would ultimately be balanced – are insufficient to sustain the regulations.

Although the Third Circuit has not addressed the provisions challenged here, Plaintiffs cite numerous persuasive authorities that suggest to the Court that they may prevail on at least one of the challenged provisions on a more developed record.  See, e.g., Nader v. Brewer, 531 F.3d 1028, 1037-38 (9th Cir. 2008) (invalidating Arizona's in-state witness requirement for

third-party general election petitions); Libertarian Party of Va. v. Judd, 718 F.3d 308, 317-19 (4th Cir. 2013). Invalidating Virginia's law that served to limit the ability of a Pennsylvania professional circulator to obtain signatures in Virginia, the Fourth Circuit observed that "a consensus has emerged that petitioning restrictions like the one at issue here" are viewed with disfavor. 718 F.3d at 316. However, in each of the cases referenced, the court applied Anderson based on review of a full record after the opportunity for at least abbreviated discovery. See id. at 312. Even in the recent Green Party of Pennsylvania v. Aichele case so extensively cited by Plaintiffs, that court issued preliminary relief eight weeks after service of the complaint, suggesting that the Commonwealth had notice and an opportunity to make a full record. See 89 F. Supp. 3d 723 at 728-29 (E.D. Pa. 2015). On a complete record this Court will likewise be able to carefully balance the alleged infringement on Plaintiffs' rights against the interest of the Commonwealth and other affected entities and parties who would be aggrieved by the relief Plaintiff requests.

      Turning to the second of the four temporary restraining order considerations, in the absence of a demonstrated likelihood of success on the merits, it necessarily follows that Plaintiffs have failed to establish the requisite irreparable harm. See Cont'l Grp., Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980) (requiring preliminary relief applicants to make "a clear showing of immediate irreparable harm"). The Court is cognizant that "'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury;'" however, "the assertion of First Amendment rights does not automatically require a finding of irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis added) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1989)). Plaintiffs have asserted First Amendment deprivations but, as discussed above, have not carried their burden of showing that a First

Amendment deprivation will occur absent an injunction.  Nor does the third consideration – harm to the non-moving party – counsel in favor of an injunction because it is well settled that "'any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'"  Maryland v. King, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quoting New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

As to the fourth factor, the Court is persuaded that given the late date of Plaintiffs' challenge relative to the nomination petition circulating period, the public interest is unquestionably better served by preserving the status quo.  Commissioner Marks of the Bureau of Commissions, Elections, and Legislation testified that roughly 1400 nomination petitions are currently in circulation with instructions to circulators that include all three of the statutory requirements challenged here.  An order from this Court suspending these requirements will necessarily result in unequal application of the law and create the potential for legal challenges in the Commonwealth Court of Pennsylvania.  Such challenges place at risk the preservation of remaining election calendar deadlines for ballot certification and the issuance of ballots to military and overseas voters.  On the record now before this Court, the risk of injecting chaos and uncertainty into a time-tested process is far greater than any constitutional deprivation shown by Plaintiffs at this stage of the proceedings.  In short, such extraordinary relief would cause great risk to an essential public function, in ostensible service to Plaintiffs' private interests that remain, at least for now, undefined.[1]

---

[1] At the hearing and in their briefs, Defendants raised the issue of standing.  On the record before it, the Court does not find that Plaintiffs lack standing to pursue their claims.  However, the Court reserves ruling on the issue of standing should the record ultimately reveal that Plaintiffs indeed lack standing.  Defendants also raised but have not yet briefed the issue of whether the Republican Party of Pennsylvania should properly be joined in these proceedings.

Accordingly, on this 27th day of January, 2016, Plaintiffs' application for a temporary restraining order is **DENIED**.  The Clerk of Court is directed to schedule a telephone case management conference at the earliest possible date for the scheduling of discovery, briefing, and a preliminary injunction hearing.

S/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
