## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENEZET CONSULTING, LLC          :
*and* TRENTON POOL,              :          No. 1:16-CV-0074
                    Plaintiffs   :
                                 :          **Judge Kane**
          v.                     :
                                 :          *Complaint filed 01/14/16*
PEDRO A. CORTÉS *and*            :
JONATHAN MARKS,                  :
                    Defendants   :          Electronically Filed Document

## STATEMENT OF MATERIAL FACTS

Pursuant to LR 56.1, Pedro A. Cortés and Jonathan Marks (collectively, "Defendants"), by their attorneys, submit this Statement of Material Facts.  The evidentiary materials supporting these facts are attached as exhibits hereto.

### Plaintiffs' Constitutional Challenges

1.      The operative pleading in this case is the Second Amended Complaint ("SAC") Exhibit 1.

2.      Through this pleading, Plaintiffs assert 10 constitutional claims against Defendants.  SAC.

3.      The first six are based on purported violations of the First Amendment and are:  (1) a facial challenge to the requirement that—as it relates to nomination petitions seeking to place candidates for President of the United States on the

Democratic or Republican primary ballot—affidavits of circulators must be signed by Pennsylvania residents; (2) an as applied challenge to the requirement that—as it relates to nomination petitions seeking to place candidates for President of the United States on the Democratic or Republican primary ballot—affidavits of circulators must be signed by Pennsylvania residents; (3) a facial challenge to the requirement that—as it relates to nomination petitions seeking to place candidates for President of the United States on the Democratic or Republican primary ballot—affidavits of circulators must be notarized or otherwise signed in front of a person authorized to take sworn statements; (4) as an applied challenge to the requirement that—as it relates to nomination petitions seeking to place candidates for President of the United States on the Democratic or Republican primary ballot—affidavits of circulators must be notarized or otherwise signed in front of a person authorized to take sworn statements; (5) a facial challenge to the requirement that—as it relates to nomination petitions seeking to place candidates for President of the United States on the Democratic or Republican primary ballot—an elector may only sign for one candidate; and (6) as an applied challenge to the requirement that—as it relates to nomination petitions seeking to place candidates for President of the United States on the Democratic or Republican primary ballot—an elector may only sign for one candidate.  SAC, Counts I-VI.

4.     The next three "alternative" claims are for purported violations of the Equal Protection Clause and are premised on the contention that:  (1) the affidavit of circulator on the nomination petitions for those seeking access to the primary ballot as a Democratic or Republican candidate for President of the United States must be signed by Pennsylvania residents but the affirmation of circulator on nomination papers for those seeking access to the general election ballot as a minor party candidate for President of the United States may be signed by Pennsylvania or non-Pennsylvania residents; (2) the affidavit of circulator on the nomination petitions for those seeking access to the primary ballot for the Democratic and Republican candidates for President of the United States must be notarized or signed in front of a person authorized to administer oaths but the affirmation of circulator on nomination papers for those seeking access to the general election ballot as a minor party candidate for President of the United States need not be notarized or signed in front a person authorized to administer oaths; and (3) an elector may sign nomination papers for multiple minor party candidates seeking access to the general election ballot for President of the United States but electors may only sign one nomination petition for a Republican or Democrat who is seeking access to the primary ballot for President of the United States.  SAC, Counts VII-IX.

5.     Plaintiffs' final claim is based on the dormant Commerce Clause and—as it relates to nomination petitions seeking to place candidates for President of the United States on the Democratic or Republican primary ballot—alleges that the requirement that affidavits of circulators must be signed by Pennsylvania residents discriminates against out-of-state professional signature collectors.  SAC, Count X.

6.     Plaintiffs seek only declaratory and injunctive relief.  SAC.

**Parties**

7.     Benezet Consulting, LLC ("Benezet") is a Texas LLC that is in the business of gathering signatures for Republican candidates for President of the United States who seek to access primary ballots.  SAC, ¶ 22.  *See also* Deposition of Trenton Pool ("Pool Dep.") at 13(17-21) (testifying that the nature of Benezet's work is in the niche of signature gathering) (Exhibit 2).[1]

8.     Benezet was formed in 2014.  Pool Dep. at 13(3-11).

9.     Benezet performed no signature gathering efforts for any election in the 2014 election cycle or the 2015 election cycle.  Pool Dep. at 20(8-13).  *See also* Pool Dep. at 109(10-18).

---

[1]     Trenton Pool ("Pool") is a named plaintiff and also is the sole shareholder of Benezet.  He testified not only as an individual but as the Rule 30(b)(6) designee of Benezet.  SAC, ¶ 21; Pool Dep. at 7(7)-9(10).

10.     In the 2016 election cycle, outside of the State of Texas, the only signature collection by Benezet was for the presidential race and this was the first time that Benezet ever collected for any presidential race.  Pool Dep. at 87(7-10), 88(18)-89(17).

11.     Benezet has no contracts for the 2017 election cycle.  Pool Dep. at 139(12-19).

12.     Pool is a resident of Texas and is a registered member of the Texas Republican Party.  SAC, ¶ 21.

13.     Pool is a professional signature collector.  SAC, ¶ 21.

14.     Carol Love ("Love") is a registered Republican and a citizen of the Commonwealth and lives in Mountville, Pennsylvania.  SAC, ¶ 23.

15.     Pedro Cortés ("Cortés") is the Secretary of the Commonwealth.  SAC, ¶ 24.  Cortés has been sued only in his official capacity.  *Id.*

16.     Jonathan Marks ("Marks") is the Commissioner of the Pennsylvania Bureau of Commissions, Elections and Legislation.  SAC, ¶ 25.  Marks has been sued only in his official capacity.  *See also* Deposition of Jonathan Marks ("Marks Dep.") at 8(24)-9(14) (noting that he oversees the operations of the Bureau including the filing of nomination petitions) (Exhibit 3).

**Historic Signature Gathering Efforts In Pennsylvania**

17.    The provisions challenged do not prevent anybody from coming into Pennsylvania and handing out leaflets for candidates, or from talking to people on the street about candidates, or from carrying signs about candidates or issues.  Pool Dep. at 145(24)-146(13).  *See also* Deposition of Mike Jennings ("Jennings Dep.") at 60(11)-61(22) (testifying that, in Pennsylvania, he was able to collect signatures and that he was able to approach people and talk with them about what he was doing and that he was seeking to gather signatures) (Exhibit 4).

18.    For example, in many presidential election years—2000, 2004, 2008, 2012—Jacobs collected signatures in Pennsylvania.  Deposition of Andy Jacobs ("Jacobs Dep.") at 27(14-20) (Exhibit 5).

19.    In these Pennsylvania efforts—other than 2000—Jacobs had a Pennsylvanian as a witness, had the Pennsylvanian sign the affidavit of circulator, had the affidavit notarized, and collected a significant amount of signatures. Jacobs Dep. at 29(1)-30(6), 30(7)-31(8) (collecting some 5,000 signatures in Pennsylvania), 31(9)-32(8).

20.    In 2004, Witmer collected signatures for Libertarians in Pennsylvania and he worked with a Pennsylvania witness, had the nomination papers notarized,

and ensured that people signing had not signed for another candidate.  Deposition of Jacob Witmer ("Witmer Dep.") at 17(22)-20(21) (Exhibit 6).

21.     Alexander described his 2012 efforts as follows:  he "rocked PA…for Ron Paul.   We made a bunch of cash blast in Philly, let's do this thing." Deposition of Michael Alexander ("Alexander Dep.") at 48(7-18) (Exhibit 7).

22.     This collection effort for Ron Paul required Alexander to have a Pennsylvania witness and also required that the affidavit of circulator be notarized. Alexander Dep. at 49(19-25).

23.     In 2012, Pool collected signatures—for a fee—for Ron Paul in Pennsylvania to get Ron Paul on the Pennsylvania Republican primary ballot for President of the United States.  Pool Dep. at 126(8)-127(22), 132(14-17).

24.     Pool had a Pennsylvania witness with him for the Ron Paul signature collection efforts and the affidavit of circulator was notarized by the Pennsylvania resident.  Pool Dep. at 127(23)-128(16).

25.     Pool made sure that the person signing the petition had not signed a previous petition.  Pool Dep. at 128(17-20).

26.     Gailey testified that, in the 2012 election cycle, he collected signatures for Ron Paul and his delegates in Pennsylvania and that he had a Pennsylvania

witness with him who signed the affidavit of circulator before a notary. Deposition of Mark Gailey ("Gailey Dep.") at 28(15-25), 30(18)-31(4) (Exhibit 8).

27.    Carl Romanelli ("Romanelli") has gathered signatures—for multiple candidates including himself—for over 30 years and he testified that it was not that hard to gather signatures. Deposition of Carl Romanelli ("Romanelli Dep.") at 11(11(4-6), 11(22)-12(8), 20(1-4) (Exhibit 9).

28.    In 1981, Romanelli ran for Prothonotary in Luzerne County as a Democrat. Romanelli gathered sufficient signatures to get on the primary ballot, the affidavits were signed by a Pennsylvanian, the affidavits were notarized, and Romanelli asked potential signors if they had signed a petition for another candidate. Romanelli Dep. at 84(11)-86(9).

29.    In 1983, Romanelli collected sufficient signatures for a local candidate to get on the primary ballot and the affidavit of circulator was signed by a Pennsylvanian, the affidavits were notarized, and Romanelli made sure that those who signed had not signed for another candidate. Romanelli Dep. at 87(6)-89(1).

30.    In 1984, Romanelli collected signatures for Gary Hart—who was running for President of the United States as a Democrat—and the affidavit of circulator was signed by a Pennsylvanian, was notarized, and was signed by persons who had not signed another petition. Romanelli Dep. at 89(2)-91(6).

31.     Hart qualified for the primary ballot.  Romanelli Dep. at 90(11-16).

32.     In 1985, Romanelli collected signatures for a local candidate, who made it on the primary ballot, and the affidavit of circulator was signed by a Pennsylvanian, was notarized, and included signatures from persons who had not signed other petitions.  Romanelli Dep. at 91(9)-92(18).

33.     In 1988, Romanelli collected signatures for Gary Hart—who was, again, running for President of the United States as a Democrat—and the affidavit of circulator was signed by a Pennsylvanian, was notarized, and was signed by persons who had not signed another petition.  Romanelli Dep. at 94(9)-96(5).

34.     Hart qualified for the primary ballot.  Romanelli Dep. at 95(10-15).

35.     In 2002, Romanelli collected signatures for the Green Party candidate for Governor; Romanelli (a Pennsylvanian) signed the affidavit of circulator; the affidavit of circulator was notarized; the signors had not signed for other candidates; and the candidate made it on the general election ballot.  Romanelli Dep. at 99(24)-100(19).

36.     In 2004, Romanelli collected signatures for Ralph Nader—who was running for President of the United States as an Independent—and the affidavit of circulator was signed by a Pennsylvanian, was notarized, and was signed by

persons who had not signed for another third-party candidate.  Romanelli Dep. at 100(20)-101(20).

37.     Romanelli ran for U.S. Senate in 2006 as a candidate for the Green Party.  Romanelli Dep. at 23(15-19).

38.     Romanelli engaged a signature collection firm out of Florida to assist with this effort rather than a Pennsylvania company.  Romanelli Dep. at 24(10-13), 32(2-21).

39.     Romanelli gathered a total of 99,802 signatures; he submitted 94,544 signatures to the Secretary of State; about 40,000 of those signatures were obtained by the professional signature gatherers.  Romanelli Dep. at 26(3-21), 103(14-21).

40.     In 2006, the affidavits of circulators had to be signed by a Pennsylvania, had to be notarized, and the electors signing the papers could not have signed for another third-party candidate.  Romanelli Dep. at 102(17)-103(8), 109(23)-110(5).

41.     The signatures gathered for Romanelli's 2006 Senate bid were challenged and it was not until October that there was a decision by Commonwealth Court.  Romanelli Dep. at 105(2-8), 105(24)-106(10).

42.     As part of the litigation, there was at least one hearing where there were witnesses and testimony.  Romanelli Dep. at 109(11-13).[2]

43.     In 2012, Romanelli collected signatures for the Green Party's candidate for President—Jill Stein—and the affidavit of circulator was signed by a Pennsylvanian, it was notarized, and care was taken to ensure that electors signing the papers had not signed for another candidate.  Romanelli Dep. at 118(3-25).

44.     The 2012 collection efforts for Ms. Stein were not by a professional signature collection business.  Romanelli Dep. at 119(14-19), 142(14-18).

45.     On behalf of Ms. Stein in 2012, there were about 27,000 signatures collected and submitted to the Commonwealth.  Romanelli Dep. at 120(24)-121(4).

46.     Ms. Stein was on the general election ballot for President in 2012. Romanelli Dep. at 121(7-10).

---

[2]     In 2008, Romanelli collected signatures for the Green Party's candidate for President of the United States; however, these were not submitted because of the fear that there would be a challenge and fees and costs would be imposed on the Green Party as a result of the challenge.  Romanelli Dep. at 111(11)-114(20), 115(23)-116(2).  In 2010, Romanelli collected signatures for the Green Party's candidate for U.S. Senate—the affidavit of circulator was signed by a Pennsylvanian; it was notarized; and care was taken to make sure that people who signed the papers had not signed for another candidate.  Romanelli Dep. at 116(3)-117(11).  There was a threat of a challenge by Mike Sestak and, because of the fear of having costs and fees imposed, the candidate withdrew his filing.  Romanelli Dep. at 117(12)-118(2).

**Benezet's Operations**

47.     For the majority of its signature gathering efforts, Benezet is paid on a per signature basis.  Pool Dep. at 38(3-9).

48.     Benezet prices the per signature rate such that it will make a profit. Pool Dep. at 40(25)-41(4).

49.     Campaigns typically set an upper limit for the signatures that they are seeking because excessive signatures will not aid ballot access but will cost more money.  Jacobs Dep. at 35(18)-36(3); Gailey Dep. at 37(8-23) (putting the excess number of 50% of what is needed to get on a ballot), 40(10-25) (testifying that candidates and campaigns are not willing to pay for significantly more signatures than needed).

50.     Benezet has no employees who are signature collectors; instead, those who collect signatures for Benezet are independent contractors of Benezet.  Pool Dep. at 25(21)-26(5).  *See also* Alexander Dep. at 19(14-17); Jennings Dep. at 12(9-24), 15(14-19) (in the 2016 election cycle, Jennings was an independent contractor for Benezet and "traveled across the United States" collecting signatures for Benezet); Jacobs Dep. at 18(11-13) (admitting he is an independent contractor), 17(15-20) (admitting that his job is as a professional signature collector); Gailey

Dep. at 7(17-21), 8(6-7) (admitting that he is an independent contractor as it relates to his signature gathering efforts); Witmer Dep. at 56(22)-57(8) (same).

51.     As independent contractors, these individuals are free to collect signatures for Benezet or any other signature collection company or for candidates or issues on their own.  Pool Dep. at 208(4-20).  *See also* Alexander Dep. at 20(1-22) (admitting that he could work for as many signature collection companies as he wished) 47(19-20) (describing himself as a "freelancer"); Witmer Dep. at 10(9-11) (calling himself a "traveling petitioner"), 83(5-12) (testifying that nothing in his relationship with Benezet would prevent him from collecting for candidates directly or other companies).

52.     Indeed, in "the petitioning industry there are lots of people that travel from state to state placing initiatives and candidates on the ballot in exchange for money" and these people "generally are independent contractors."  Witmer Dep. at 82(3-19).  *See also* Alexander Dep. at 58(14)-62(19) (testifying that he went to Maryland, Indiana, West Virginia, Alabama to collect signatures for the Green Party, the Libertarian Party, the Constitution Party, and the Republicans).

53.     As independent contractors, these individuals are free to collect signatures by whatever method he/she may choose.  Pool Dep. at 234(22)-235(6), 235 (20-23).

54.     Benezet uses independent contractors, who live in states other than Pennsylvania, to collect signatures.  Pool Dep. at 34(5)-36(11).  *See also* Gailey Dep. at 5(2-6) (Gailey lives in Kentucky); Jacobs Dep. at 17(2-14) (giving his parents' address in Camp Hill but stating that "I've kind of bounced in and out of there multiple times over several years" and that "I've actually kind of been living on the road for the last several years"); Jennings Dep. at 9(6-24) (giving his mailing address as Los Angeles but admitting that he lives with his parents in North Carolina); Witmer Dep. at 11(19)-12(20) (stating that his residence is Alaska but that he gets his mail in Illinois); Alexander Dep. at 12(3-15) (providing his father's address in Massachusetts, his own address in Massachusetts and admitting that he "had many different address[s] during those periods" of signature collecting).

55.     The independent contractors also are paid on a per signature basis and, as a result, they are driven to get as many signatures as possible in the shortest time as possible so as to maximize earnings.  *See* Alexander Dep. at 19(104), 28(22)-29(6), 36(24)-37(7), 94(8-10); Witmer Dep. at 63(10-12), 70(103), 87(4)-88(7) (Witmer's goal is to make as much money as possible and if he is not collecting signatures he is not making money); Jennings Dep. at 47(5-6), 48(5-8) (admitting that the more signatures that are collected the more money is made); Gailey Dep. at 9(2-5); Jacobs Dep. at 36(11-14) (describing the goal of the professional signature

14

collector is to get as many signatures in as little time as possible); Gailey Dep. at 41(1)-42(22) (testifying that the plan, when collecting signatures, is to get as many signatures in as short a period of time as possible); Jennings Dep. at 50(3-9) testifying that it is all about getting the signatures as fast as possible).

56.     One independent contractor who works for Benezet admitted that he will circulate for "[a]nyone who pays me." Witmer Dep. at 90(21-22), 91(20). *See also* Witmer Dep. at 46(18)-48(7), 51(17-22), 52(1)-53(14) (testifying that in the 2016 election cycle, he collected signatures for several Republican candidates— even though the only person he cared about was Rand Paul—and that he also collected signatures for De La Fuente (both as an independent candidate and as a Democratic candidate) and that he also collected for the Green Party and the Constitution Party); Jacobs Dep. at 43(4-13), 50(8-11), 58(10-11), 61(16) (collecting for, among others, Santorum even though Jacobs "strongly" dislikes Rick Santorum).

57.     As one independent contractor testified, the time spent with any potential signor is "very quick, like in a matter of seconds" and if there is a hint that there will be no signature, that collector will just move on and talk no further. Jennings Dep. at 49(14-23). *See also* Jacobs Dep. at 23(4-12) (testifying that the interaction between Jacobs and possible signors does not take very long).

58.     Indeed, Alexander testified that his pitch to a potential signor was simply to ask:  "oh, you're a Democrat?  Here, sign this."  Alexander Dep. at 17(10-11).

59.     Pool even testified about ways to obtain a signature:

First of all, don't go straight up there and pitch them like that.  You have to build rapport.  There's different things that you do.  You say, pardon me, sir, are you a registered voter here in the State of Pennsylvania?  Or no, since I'm going to their house, I'd probably have a walk list.  Hey guys, we are out here helping our Republicans get on the ballot, you mind helping us with a quick signature?  And they say no, oh well, you know, *the Democrat machine out here is just killing us and it's hard to find our guys at home during the day because we're all busy working*, *making the dollar*, and that kind of thing.  You *start charming them*, that's what you do.

Pool Dep. at 294(20)-295(8) (emphasis added).  *See also* Pool Dep. at 295(21-25) (describing the job of a signature collector as being "just like any sales job that you've ever heard of"); Alexander Dep. at 93(11-16) (getting signatures is "just like selling").

60.     Pool even called his efforts a "trick":

Well I mean, when you get rejected, there's ways to handling rejection.  And you have to be resilient enough to bounce back and utilize some of them.  *That trick where I said well, Hillary Clinton and Bernie Sanders are out here getting all the signatures in the land. You know, it's hard finding our guys at home because everyone is out there working since we're not on welfare, stuff like that.  You say those little tricks and that gets them started and then they start getting happy and you make them laugh once or twice and maybe they'll give you the signature*.

Pool Dep. at 296(4-14) (emphasis added).

61.     Benezet's independent contractors who collect signatures go from state to state to state to state to collect signatures and collectors cannot be in two places at the same time.  Pool Dep. at 65(6-10), 65(20-22).

62.     There is significant overlap between the collection periods for any given state and people cannot be in two places at the same time.  Pool Dep. at 230(20)-231(8) (admitting that Benezet deploys it some of its band of independent contractors to various states at the same time and when a collection period ends, those folks are moved to yet another state).

63.     In fact, Benezet may get calls to redeploy its independent contractors on a moment's notice from a particular state to another state.  Pool Dep. at 71(25)-72(6), 72(24)-73(6).

64.     Pool described the business as follows:  "Deadlines are looming.  You know, we're just, we're literally just become a nomadic band of petition gatherers and throw them into the next state."  Pool Dep. at 111(3-5).  *See also* Pool Dep. at 221(19)-230(19) (describing many states that Benezet independent contractors traveled to during 2016 to collect signatures).

## Benezet 2016 Signature Gathering Efforts In Pennsylvania And Elsewhere

65.   In the 2016 election cycle, Benezet[3] engaged some 30 to 40 people to collect signatures.   Pool Dep. at 33(2-12).   *See also* Alexander Dep. at 13(7)-15(16) (Alexander testifying that, in 2016, he gathered signatures for De La Fuente, Cruz, Trump, and Santorum and he collected these signatures in a variety of states), 27(10)-28(8) (Alexander testifying that he had trouble remembering all of the states that he collected in because "I've worked too many jobs"), 32(16)-33(15) (testifying that he went from Rhode Island to Connecticut to Massachusetts), 38(19-20), 39(22)-40(1) (testifying that he also coordinated in states including New Hampshire); Witmer Dep. at 46(14)-49(16) (in the 2016 cycle, Witmer collected signatures in Indiana, North Dakota, Illinois, Pennsylvania, Connecticut, New Mexico, and Georgia); Jennings Dep. at 16(12)-46(6) (testifying about each state he was in during the 2016 election cycle—Illinois, Indiana, Wisconsin, Pennsylvania, Massachusetts, California, Washington, Georgia, Alabama, Ohio, Wyoming, North Dakota, and Kentucky), 18(9-17)

---

[3]    All of Pool's work in the 2016 election cycle has been through Benezet with the possible exception of an effort to recall a city counselor and something for Uber.   Pool Dep. at 118(24)-119(22).   As for other years, Pool's efforts were centered in Texas.   *See* Pool Dep. at 125(13-23) (2011 collection efforts for his father's run for Texas Supreme Court), 133(17)-134(22) (2013 efforts in Texas), 115(24-25), 117(3)-118(10) (same in 2014), 118(20-23) (no collection efforts in 2015).   But see Pool Dep. at 129(1-8), 132(8-16) (2012 collection for Libertarians in North Dakota).

(testifying that, in 2016, he collected signatures in Illinois for Cruz and Paul), 20(13)-21(2) (he collected, in Indiana, for De La Fuente as a Democrat and Santorum as a Republican), 22(4-13) (in Wisconsin, he collected for De La Fuente as a Democrat and as an independent), 25(2)-26(3) (in Pennsylvania, he collected for Cruz and De La Fuente—perhaps as a Democrat and perhaps as an independent), 32(20)-33(7) (collecting in Georgia for De La Fuente and the Green Party candidate), 36(20-25) (in Ohio, collecting for De La Fuente as an independent), 43(24)-44(3) (in Wyoming, collected for De La Fuente and Stein); Jacobs Dep. at 43(4-13), 50(8-11), 58(10-11) (collecting in Indiana for Cruz, Paul, Trump, De La Fuente, Carson, and Santorum), Gailey Dep. at 10(5-10, 12(19-22) (collecting signatures in Illinois for Paulo and Cruz on behalf of Benezet), 14(5-7), 16(16-18), 14(25)-15(5), 39(19-22) (from Illinois, Gailey went to Indiana to collect for Benezet and collected signatures for Paul, Cruz, De La Fuente, and Trump), 16(19)-20(7) (after Indiana, Gailey briefly went to Wisconsin and collected for De La Fuente on behalf of Benezet).

66.    In the 2016 election cycle, Benezet collected signatures for Republican Presidential candidates Ted Cruz, Rand Paul, Rick Santorum, and Donald Trump.  Pool Dep. at 27(5-17).

67.    In the 2016 election cycle, Benezet collected signatures for Cruz, Paul, Santorum, and Trump in the following states:   Cruz—Illinois, Indiana,

Vermont, Rhode Island, Delaware, and Pennsylvania; Paul—Illinois and Indiana'
Santorum—Indiana; Trump—Indiana.   Pool Dep. at 18(3)-23(1).   *See also* Pool
Dep. at 24(8-13) (admitting that, of course, Benezet collected signatures for Cruz
in Pennsylvania).

68.    Benezet began its efforts for Cruz in Pennsylvania the first week of
February 2016.   Pool Dep. at 90(8-13) (testifying that the contract for Democratic
candidate De La Fuente began at the very end of January 2016 and the Cruz
contract was almost a week after that).   *See also* Pool Dep. at 237(11-14)
(testifying that Benezet's independent contractors collected signatures for Cruz for
about two weeks in Pennsylvania).

69.    In the 2016 election cycle, Benezet collected about 4,000 signatures
for Republican Presidential candidate Cruz in Pennsylvania.   Pool Dep. at 47(22)-
48(6).[4]

70.    In the 2016 election cycle, the affidavits of circulator on the
nomination petitions for Republican Presidential candidate Cruz were signed by
Pennsylvania residents and were notarized.   Additionally, the collectors made sure
that those who signed had not signed for another Republican candidate for
President of the United States.   Pool Dep. at 48(14)-49(16).

---

[4]    Pool testified that Benezet was the only professional signature outfit
collecting for Cruz; however, there were other volunteers who collected signatures
for Cruz.   Pool Dep. at 360(25)-361(11).

71.    In the 2016 election cycle, Benezet collected signatures for Democratic Presidential candidate Rocky De La Fuente.  Pool Dep. at 18(20)-19(2).[5]

72.    In the 2016 election cycle, Benezet collected signatures for Democratic Presidential candidate De La Fuente in the following states: Wisconsin; Indiana; Pennsylvania; and Illinois.  Pool Dep. at 18(20)-19(2).  *See also* Pool Dep. at 24(23)-25(1) (admitting that Benezet actually collected signatures in Pennsylvania for De La Fuente's run as a Democratic candidate for President of the United States).

73.    Benezet began its efforts for De La Fuente in Pennsylvania the last week of January 2016.  Pool Dep. at 90(8-10).  *See also* Pool Dep. at 237(3-10) (testifying that Benezet collected in Pennsylvania for about two weeks).

74.    In the 2016 election cycle, Benezet collected about 5,000 signatures for Democratic Presidential candidate De La Fuente in Pennsylvania.  Pool Dep. at 48(7-8).[6]

---

[5]    Only Benezet collected signatures in Pennsylvania for the Democratic Presidential bid of De La Fuente.  Pool Dep. at 76(23-25).

[6]    Benezet also collected signatures for at least one ballot initiative in Pennsylvania—on behalf of OpenPittsburgh.org.  Pool Dep. at 43(11-15).  This effort used about 25 collectors.  Pool Dep. at 45(4-8), 202(22-24).  The effort occurred in the late summer of 2016 and lasted a few days.  Pool Dep. at 43(16)-44(25), 204(23)-205(1).  These papers had to be notarized and over 6,000

75.    In the 2016 election cycle, the affidavits of circulator on the nomination petitions for Democratic Presidential candidate De La Fuente were signed by Pennsylvania residents and were notarized.  Additionally, the collectors made sure that those who signed had not signed for another Democratic candidate for President of the United States.  Pool Dep. at 51(7-25).

76.    In fact, all of the professional circulator witnesses testified that they collected signatures in Pennsylvania, that the affidavits of circulator on the nomination petitions were signed by Pennsylvanians, that the affidavits were notarized, and that efforts were made to ensure that no elector who signed had previously signed another nomination petition.  *See* Alexander Dep. at 42(2-6) (Alexander collected some 1,000 signatures in Pennsylvania for De La Fuente), 25(9-11) (Alexander testifying that the signatures he collected for De La Fuente in Pennsylvania were notarized); Witmer Dep. at 53(22)-54(16) (Witmer testifying that he collected signatures for De La Fuente as a Democrat and for Cruz as a

---

signatures were notarized—assembly-line fashion—in an evening.  Pool Dep. at 205(4)-206(3).  Despite being allowed to use out-of-state collectors, the signatures collected were thrown out by the Allegheny Court of Common Pleas because, among other things, the collectors did not comply with the Order of Judge Hornak from the Western District of Pennsylvania.  *See* August 9, 2016 Hornak Order (Exhibit 10); September 20, 2016 James Order (Exhibit 11).  Significantly, on August 8, 2016—when Judge Hornak held a hearing on a motion seeking a preliminary injunction in this case where Witmer was a plaintiff, Witmer did not attend the hearing; instead, he was in North Dakota collecting signatures.  Witmer Dep. at 77(24)-78(3), 78(19)-79(1).

Republican in Pennsylvania), 64(13)-65(10), 65(25)-67(17) (Witmer testifying that, in Pennsylvania, he collected signatures he was accompanied by witnesses, that the nomination petitions were notarized, and that he ensured that those signing had not signed for other presidential candidates); Jennings Dep. at 52(7-20) (Jennings testifying that, in Pennsylvania, he collected signatures and had the affidavit signed by a Pennsylvanian and notarized); Jacobs Dep. at 22(13-23) (Jacobs testifying that in the 2016 election cycle he collected signatures in Pennsylvania for Cruz and that the affidavit of circulator was signed by a Pennsylvanian and was notarized); Gailey Dep. at 17(24)-19(6), 23(9)-24(15), 25(8)-26(15) (testifying that he went to Pennsylvania and collected for De La Fuente—as a Democrat—and Cruz—as a Republican—and that the affidavit of circulator was signed by a Pennsylvanian and notarized).

77.    Some of the witnesses would carry boards and collect signatures: "So he [one of the Pennsylvania witnesses] would go and he would be holding the boards getting signatures.  And when Bob or whoever is working with him can't get them all, you know, because they're spilling over and everything, he would start gathering them, too."  Pool Dep. at 155(25)-156(5).  *See also* Pool Dep. at 156(7-9) (testifying that pretty much all witnesses did this), 156(14-17) (testifying that the witnesses would "see how easy and how good it is.  And they all kind of say well, you know, I can do that, too.  Why don't we make a little extra money"),

157(2-23) (same), 160(4-6) (testifying that some witnesses would go on their own to collect signatures), 161(11-15) (everybody who worked as a witness also carried a petition board).

78.   Romanelli even testified that, when he ran for the U.S. Senate in 2006, the Pennsylvania witnesses were helpful because they were familiar with the Green Party issues whereas the professional signature collectors were not "chatty about the issues, but more focused on getting the job done."  Romanelli Dep. at 41(20)-41(3).

79.   In the 2016 election cycle, Benezet collected signatures for Independent Presidential candidate De La Fuente in the following states: Pennsylvania;  Ohio;  South  Dakota;  North  Dakota;  Wyoming;  Montana; Washington;  New  Mexico;  Wisconsin;  Virginia;  Alabama;  Mississippi; Massachusetts; Connecticut; New Hampshire; Rhode Island; New York; Alaska; California; and Georgia.  Pool Dep. at 19(3-19), 25(2-14).

80.   Benezet also collected signatures for the Green Party, Libertarian Party, and Constitution Party in the 2016 election cycle.  Pool Dep. at 97(6)-104(9).

81.   In the 2016 election cycle, the independent contractors collecting signatures for Benezet stayed in various locations within the states that they were

collecting.  Pool Dep. at 79(12)-80(13) (describing the collection efforts in Illinois as being "chaotic"), 81(15)-82(15) (testifying that collectors did some "jumping around" for their collection efforts), 83(2-15) (same), 84(21)-85(20) (same for Illinois). *See also* Jennings Dep. at 18(2-6) (testifying that he stayed at "scattered" locations in Illinois), 19(2)-20(6) (staying in multiple places in Indiana), 32(6-17) (stayed in many hotels while in Washington), 33(25)-34(3) (moved around while in Georgia), 35(1-5) (worked for a different business and stayed in different places in Washington), 37(16-18) (stayed at different hotels in Ohio), 46(6-25) (stayed in different for a two week period in Kentucky).

82.   Benezet will be profitable for 2016.  Pool Dep. at 109(13-14).

83.   In fact, Benezet will likely make more money off of its efforts in Pennsylvania than anywhere else.  Pool Dep. at 356(21-25).

84.   In 2016, Romanelli collected signatures for the Green Party's candidate for President—Jill Stein.  Romanelli Dep. at 124(3-12).[7]

85.   Romanelli began the signature collection efforts in March of 2016. Romanelli Dep. at 124(13-15).

86.   The papers, this time, did not need to be notarized and could be signed by out-of-state circulators.  Romanelli Dep. at 124(23)-125(14).

---

[7]   Romanelli also collected for other down-ballot Green Party candidates in 2016.  Romanelli Dep. at 124(9-12).

87.     The papers, this time, could be signed by electors who had signed papers for other candidates.  Romanelli Dep. at 125(15-18).

88.     Benezet was hired to assist with the signature collection for the Stein candidacy in 2016.  Romanelli Dep. at 130(4-16) (testifying that Benezet started in late April or early May).  *See also* Romanelli Dep. at 136(6-9) (testifying that Benezet obtained about 10,000 signatures for the Stein campaign), 142(23-25).

89.     Overall, about 22,700 signatures were collected and filed on behalf of Jill Stein.  Romanelli Dep. at 126(1-2).

90.     Ms. Stein's papers were not challenged and she appeared on the general election ballot for the office of President in 2016.  Romanelli Dep. at 128(13-15).

## Notarization of Affidavits of Circulators

91.     There are some 80,000 notaries in the Commonwealth.  Marks Dep. at 88(4-8).

92.     Notaries in the Commonwealth may not charge more than $5.00 for their                     notary                     fee.                     *See* http://www.dos.pa.gov/OtherServices/Notaries/General%20Information%20and%2 2Equipment/Pages/Notary-Public-Fees.aspx (Department of State notary fees) (last

visited December 20, 2016).  *See also* Pool Dep. at 317(13) (testifying that $5.00 was a typical fee for notarization of a document).

93.     The Commonwealth maintains a public web-site where one can find a notary anywhere in the Commonwealth.  Marks Dep. at 99(3-22).

94.     To become a licensed notary in Pennsylvania, one must provide certain information to the Commonwealth including whether he/she has been convicted of a felony and other background information.  Notaries also must complete training and, as of next year, notaries will need to pass a test.  Marks Dep. at 88(12)-89(3).

## Signing Multiple Petitions

95.     According to Pool, "some people, like if they're a staunch Libertarian, they're not going to sign for Jill Stein.  And Jill Stein's not going to sign for Gary Johnson.  And then sometimes they'll get a Hillary supporter and they'll want to sign for Gary Johnson to hurt Trump, you know.  It's all psychological."  Pool Dep. at 345(19-24).  *See also* Pool Dep. at 366(24)-367(24) (testifying that, in his experience, electors may not sign petitions for candidates other than the person he/she is supporting); Romanelli Dep. at 132(9)-133(18); Gailey Dep. at 45(3-20), 70(7-13); Jacobs Dep. at 62(17)-63(25); Alexander Dep. at 72(4-15) (campaigns are much more difficult because "people don't want to sign").

96.     Love testified that she does not recall ever being approached to sign a petition to get a Republican or Democratic candidate on the primary ballot for President.  Deposition of Carol Love ("Love Dep.") at 19(19)-20(1) (Exhibit 12). *See also* Love Dep. at 22(4-10) (testifying that she does not ever recall seeing anybody trying to collect signatures for presidential candidates).

97.     Love does not recall who she voted for in the 2016 Republican primary; nor does she recall whether she voted or not in several past Presidential elections.  Love Dep. at 20(2-8), 16(23)-19(8).

## Differences Between Major Parties And Minor Parties

98.      There are a number of differences between the major parties in Pennsylvania—currently, the Democrats and Republicans—and other minor parties or political bodies.  Marks Dep. at 11(5-23) (testifying that the major parties use nomination petitions to seek access to primary ballots while the minor parties and political bodies use nomination papers to access the general election ballot), 12(4-20) (the Election Code qualifies the Democrats and Republicans as major parties because of the support their have received in past elections and because a significant number of voters are registered as members of these parties).

99.     For the primary, the Bureau receives nomination petitions for about 1,100 candidates and most of those are filed within the last couple of days.  Marks

Dep. at 25(15-24).  *See also* Marks Dep. at 25(25)-26(6) (confirming that more nomination petitions are filed than nomination papers).

100.  It takes 2,000 valid signatures on nomination petitions to appear on the Democratic or Republican primary ballot for President of the United States. Marks Dep. at 48(6-11).

**Respectfully submitted,**

**BRUCE R. BEEMER**
**Attorney General**

By:   *s/ Nicole J. Radziewicz*
**NICOLE J. RADZIEWICZ**
**Deputy Attorney General**
**Attorney I.D. # 314061**

**Office of Attorney General**         *s/Kenneth L. Joel*
**Litigation Section**                 **KENNETH L. JOEL**
**15th Floor, Strawberry Square**      **Chief Deputy Attorney General**
**Harrisburg, PA  17120**              **Chief, Litigation Section**
**Direct:  717-783-3146**              **Attorney I.D. #72370**
**Fax:     717-772-4526**
**nradziewicz@attorneygeneral.gov**

**Date:  December 22, 2016**           *Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BENEZET CONSULTING, LLC** | : | |
| *and* **TRENTON POOL,** | : | **No. 1:16-CV-0074** |
| **Plaintiffs** | : | |
| | : | **Judge Kane** |
| **v.** | : | |
| | : | *Complaint filed 01/14/16* |
| **PEDRO A. CORTES** *and* | : | |
| **JONATHAN MARKS,** | : | |
| **Defendants** | : | **Electronically Filed Document** |

<u>**CERTIFICATE OF SERVICE**</u>

I, Nicole J. Radziewicz, Deputy Attorney General for the Commonwealth of

Pennsylvania, Office of Attorney General, hereby certify that on December 22,

2016, I caused to be served a true and correct copy of the foregoing document

titled Statement of Material Facts to the following:

**VIA ELECTRONIC FILING**

**Paul Anthony Rossi**
**873 East Baltimore Pike**
**Suite 705**
**Kennett Square, PA  19348-1801**
<u>paularossi@comcast.net</u>
*Counsel for Plaintiffs*

 *s/ Nicole J. Radziewicz*
**NICOLE J. RADZIEWICZ**
**Deputy Attorney General**