**EXHIBIT 1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENEZET CONSULTING, LLC;** | : | |
| **TRENTON POOL; and CAROL LOVE** | : | |
| | : | **CIVIL ACTION** |
| **PLAINTIFFS,** | : | |
| | : | **No. 1:16-CV-00074** |
| **vs.** | : | **Hon. Yvette Kane** |
| | : | |
| **PEDRO A. CORTÉS, in his official capacity** | : | |
| **as the Secretary of the Commonwealth of** | : | |
| **Pennsylvania; and JONATHAN MARKS,** | : | |
| **in his official capacity as Commissioner,** | : | |
| **of the Bureau of Commissions, Elections and** | : | ***Filed Electronically*** |
| **Legislation** | : | |
| | : | |
| **DEFENDANTS.** | : | |

## SECOND AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, BENEZET CONSULTING LLC, TRENTON POOL and CAROL

LOVE, by and through their undersigned legal counsel, file this action for

prospective equitable relief against Defendants, PEDRO A. CORTÉS, in his

official capacity as Secretary of the Commonwealth and JONATHAN MARKS, in

his official capacity as Commissioner for the Bureau of Commissions, elections

and Legislation, and the state official with direct supervision of the Pennsylvania

Bureau of Elections, and allege, based on information and belief, as follows:

1

# NATURE OF THE COMPLAINT

1.    This is a civil rights action brought pursuant to the Civil Rights Act of 1871, 42 U.S.C § 1983, alleging that various requirements of 25 P.S. §§2868 and 2969 (hereinafter the "Election Code") and defendants, acting in their official capacity and under color of state law, impermissibly impair plaintiffs' core political speech and (in the alternative) equal protection of the laws in violation of rights guaranteed to plaintiffs under the First and Fourteenth Amendments to the United States Constitution and/or the Commerce Clause of the United States Constitution in the circulation of nomination petitions in the Commonwealth of Pennsylvania.

2.    Plaintiffs ask this Court for declaratory and injunctive relief (both temporary and permanent) prohibiting state officials from enforcing the unconstitutional challenged provisions now and in the future.

3.    Plaintiffs contend that the requirement of 25 P.S. §2869 requiring that only a qualified elector duly registered and enrolled as a member of the designated party of the State may circulate and execute the affidavit that must be appended to each sheet of a nomination petition is unconstitutional as it impairs rights guaranteed under the First and Fourteenth Amendments to the United States Constitution which fails to advance any governmental interest, let alone narrowly

tailored to advance a compelling governmental interest, of the Commonwealth of Pennsylvania or support any other valid administrative purpose.

(a)    25 P.S. § 2869 of the Pennsylvania Election Code prohibits non-Pennsylvania residents from executing the "Affidavit of Circulator" (hereinafter the "Affidavit") that must be validly executed on each and every nomination petition page.  Defendants are authorized to strike and refuse to file any nomination petition when the Affidavit is executed by anyone who is not: "a qualified elector of the Commonwealth, duly registered and enrolled as a member of the political party designated in this nomination petition."  Accordingly, the Affidavit imposes an unconstitutional impairment on plaintiffs' right to free speech, petition and association as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

(b)    The Affidavit imposed by 25 P.S. § 2869 is not narrowly tailored to effectuate a compelling state interest.  As explained by the overwhelming majority of federal district and circuit courts of appeals, any alleged compelling governmental interest advanced by statutes identical to 25 P.S. § 2869 is more narrowly and fully advanced – without the need to impair any First Amendment guarantees – by requiring affiants to submit to the Commonwealth's jurisdiction for the purpose of any subsequent investigation, prosecution and adjudication of alleged election petition fraud.

3

(c)     Furthermore, Election Code provisions (unique to Pennsylvania) establishes the right of any registered qualified elector enrolled in the same party as the candidate circulating the nomination petition to object to the validity of a nomination petition, triggering an immediate signature-by-signature judicial review by Pennsylvania's Commonwealth Court (or local Court of Common Pleas) to determine the validity of each signature and Affidavit.   It is the most robust and conclusive procedure to prevent, detect and nullify any allegation of petition fraud such that the Affidavit is rendered a complete nullity and does not, in fact, advance any actual governmental interest, let alone a compelling governmental interest necessary to permit the impairment of rights guaranteed under the First and Fourteenth Amendments.

4.     Plaintiffs contend that defendants' enforcement of 25 P.S. §2869 requiring that the affidavit appended to each sheet of the nomination petition be executed in the presence of a notary public is unconstitutional as it impairs rights guaranteed under the First and Fourteenth Amendments to the United States Constitution which is not narrowly tailored to advance a compelling governmental interest of the Commonwealth of Pennsylvania or support any other valid administrative purpose.

(a) Defendants have imposed, in excess of 25 P.S. § 2869 (which merely requires that an affidavit be appended to each nomination paper), the

4

further requirement that the Affidavit made part of each nomination petition paper must be notarized.  A notary public in Pennsylvania charges – *at a minimum* – $5.00 per affidavit.  In many instances a notary public in Pennsylvania will charge up to $20.00 per executed page.  Defendants' requirement that each Affidavit be notarized, amounts to an unconstitutional signature certification fee of (at minimum) $.14285 per signature for nomination petitions (defendants' nomination petitions provide space for only 35 signatures per nomination petition ÷ $5.00 = $.14285 per signature), a fee in clear violation of the First Amendment's general prohibition on the imposition of any financial penalty upon those who exercise a right guaranteed by the Constitution – and, electoral signature verification fees in particular.

(b)    Defendants refuse to offer any non-monetary alternative to the sworn affidavit requirement.  Pennsylvania law, however, provides for a "free" unsworn affidavit alternative pursuant to 18 Pa. Cons. Stat. § 4904(a)(1) which provides that: "A person commits a misdemeanor of the second degree if, with the intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true."  Defendants, in excess of their statutory authority, refuse to permit Affidavits to be made pursuant to, and subject to the penalties of, 18 Pa. Cons. Stat.§ 4904(a)(1).

(c)     While Affidavits made pursuant to 18 Pa. Cons. Stat §4904(a)(1) would not require the payment of any fees to a notary public,  such Affidavits would, nevertheless, impose a criminal penalty for an intentional misstatement to defendants that the affiant does not believe to be true and would protect any vestigial state interest alleged to be advanced by defendants' notarized Affidavit requirement.

(d)     Defendants cannot argue that the requirement they have imposed on plaintiffs to notarize each Affidavit made part of every nomination petition paper is anything other than a signature verification fee of the kind held unconstitutional by the United States Supreme Court.  Defendants' predecessors-in-office specifically argued to the United States District Court for the Eastern District of Pennsylvania in *Morrill v. Weaver*, 224 F.Supp.2d 882 (2002), that the Affidavit was necessary to validate petitioners' signatures.

(e)     Accordingly, owing to: (a) the unconstitutionality of all signature verification fees imposed on election petitions; (b) the availability of an alternative statutory provision providing for acknowledgements imposing criminal sanctions for willful written false statements to defendants which does not impose any monetary burden on plaintiffs or the electoral process; (c) unchallenged provisions of the Pennsylvania Election Code establishing the right of any elector enrolled in the same party as the nomination petition to challenge such nomination

6

petition thereby triggering an immediate signature-by-signature *judicial review* of the validity of every challenged signature recorded on a nomination petition; and (d) the lack of any statutory mandate that the Affidavit be notarized – defendants' imposition of the sworn Affidavit requirement must be declared unconstitutional and permanently enjoined for defendants' lack of statutory authority and because defendants' exercise of any permissible administrative discretion violates plaintiffs' First Amendment right against signature verification fees and fails to narrowly advance the Commonwealth's legitimate interest in the prevention of petition fraud in the electoral process in violation (again) of rights guaranteed to plaintiffs under the First and Fourteenth Amendments.

5.      Plaintiffs contend that the requirement of 25 P.S. §2868 that each "signer of a nomination petition shall sign but one such petition for each office to be filled" is unconstitutional as it impairs rights guaranteed under the First and Fourteenth Amendments to the United States Constitution which fails to advance any governmental interest, let alone narrowly tailored to advance a compelling governmental interest, of the Commonwealth of Pennsylvania or support any other valid administrative purpose.

6.      **In the alternative**, the decision in *Green Party of Pennsylvania v. Aichele*, 89 F.Supp.3d. 723 (E.D.Pa 2015)(J. Dalzell) holding that: (1) the in-state witness restriction; (2) the notarization requirement of each Affidavit made part of

7

each page of nomination papers; and (3) the limitation on voters to sign only one nomination paper per political office are unconstitutional, as applied to the Pennsylvania Green and Libertarian parties, and enjoining enforcement as to those minor political parties and bodies <u>and </u>defendants subsequent abandonment of these requirements for all nomination papers renders defendants continued enforcement of the in-state witness requirement, the notarization requirement of each Affidavit for nomination petitions and the limitation that registered and enrolled members of major political parties may only sign one nomination petition under 25 P.S. §§ 2868 and 2869 deny plaintiffs the equal protection of the laws and violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

7.      **In the alternative**, Plaintiffs Benezet Consulting and Pool contend that the requirement of 25 P.S. §2869 requiring that only a qualified elector duly registered and enrolled as a member of the designated party of the State may circulate and execute the affidavit that must be appended to each sheet of a nomination petition is unconstitutional as it impairs rights guaranteed under the Commerce Clause of the United States Constitution, in that it favors in-state professional circulators to the economic detriment of out-of-state professional circulators because: (1) in-state circulators do not need to pay for in-state witnesses to tag along with circulators, thereby allowing in-state professional circulators to

8

charge less per signature than out-of-state professional circulators as a direct and proximate result of 25 P.S. § 2869; (2) in-state professional circulators do not need to spend on the additional advertising costs to find in-state witnesses that out-of-state professional circulators are required to expend as a direct and proximate result of 25 P.S. § 2869; (3) out-of-state professional circulators are required to spend additional time in finding and training in-state witnesses that in-state professional circulators are able to direct to the actual gathering of signatures in a time compressed environment placing out-of-state professional circulators at a disadvantage as a direct and proximate result of 25 P.S. § 2869; and (4) in-state professional circulators may circulate nomination petitions in a more efficient manner than out-of-state professional circulators who may only circulate nomination petitions if and when they can secure an in-state witness to tag along with the out-of-state professional circulators thereby reducing the number of hours that out-of-state circulators are able to lawfully work to gather signatures as a direct and proximate result of 25 P.S. § 2869.

8.      Defendants' exercise of authority pursuant to the challenged provisions of the Pennsylvania Election Code is the proximate cause of plaintiffs' impairment of federal First Amendment rights not narrowly tailored to advance any compelling governmental interest and, therefore, invalid and must be declared in violation of rights guaranteed to plaintiffs under the First and Fourteenth

Amendments to the United States Constitution and defendants must be immediately and permanently enjoined from enforcing against plaintiffs those provisions of the Pennsylvania Election Code challenged herein.

9.      This Court has jurisdiction to adjudicate plaintiffs' claims.

10.     Plaintiffs have standing to maintain the instant action as to all claims contained herein.

11.     All claims advanced in this litigation are ripe for immediate adjudication.

12.     The injunctive and declaratory relief requested by plaintiffs will provide plaintiffs complete relief as to defendants' violation of rights guaranteed to plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

13.     The United States Supreme Court has established that the act of signing an election petition, such as the nomination petitions at issue in this action, is core political speech afforded the highest level of constitutional protection.

14.     Further, the United States Supreme Court has clearly recognized that speech attendant to the signing of electoral petitions such as the nomination petition that plaintiffs wish to circulate on behalf of candidates for the Office of President of the United States is a complex expression of core political speech broader than the mere ministerial act/process of placing political party candidates

10

on the primary election ballot. At minimum, the act of circulating and signing a nomination petition for a specific political party candidate implicates political expression of approval for a certain political agenda advanced by one (or more) candidates to the exclusion and disapproval of the political agendas advanced by one (or more) other political candidates and, in certain instances, disapproval of the establishment and/or the *status quo* of the current political elites dominating the modern political landscape.

15.    The Commonwealth's nomination petition process, whereby qualified registered electors enrolled in a major political party may sign a nomination petition for party candidates seeking the nomination of their political party in the Commonwealth of Pennsylvania (i.e., the Republican and Democrat parties) is not an analogue to an election where electors are properly forced to cast a single ballot for one candidate in a primary election. The Commonwealth cannot limit the speech of electors to sign only one nomination petition. A primary election selects the standard bearer and vessel that will carry the major political party's message to the voters. The Commonwealth has no interest in the number of candidates engaged in speech within a major political party. Furthermore, the modest number of signatures required to place a major party candidate on the primary election ballot (2,000 in the case of a candidate for President) does nothing to limit the number of candidates that end up on the primary ballot (i.e., if each elector signed

only one nomination petition , the statute permits up to 900 candidates to appear on

the primary ballot for each party) Accordingly, the Commonwealth of

Pennsylvania has no legitimate any interest in limiting the number of nomination

petitions that a registered elector enrolled in a political party may validly sign.  The

Petition and Free Speech Clauses of the First Amendment, in concert with the

Fourteenth Amendment, does not permit defendants to limit a registered voter of a

major political party to support only one candidate for their party's nomination

prior to the actual election.  A registered elector may need to support multiple

candidates for their party's nomination process in order to make sure the widest

array of political speech that the registered voter supports is articulated in the

election campaign and considered by the party prior to the actual primary election.

16.     The challenged provisions of 25 P.S. §§2868, 2869 deplete finite

economic and grass-root volunteer resources impairing plaintiffs' ability to

advance their chosen political massage to the registered voters of the

Commonwealth of Pennsylvania.

17.     The declaratory and injunctive relief sought in this action will permit

plaintiffs to circulate nomination petitions in the Commonwealth of Pennsylvania

for their chosen candidates in the most efficient manner possible and eliminate

unnecessary and unconstitutional costs to plaintiffs in the circulation of nomination

petitions – costs which are not tethered to narrowly advance any compelling

governmental interest or administrative purpose necessary to sustain defendants' unconstitutional enforcement of the challenged statutory provision of 25 P.S. §§ 2868, 2869.

## JURISDICTION

18.     Jurisdiction lies in this court under 28 U.S.C. § 1331, providing that district courts shall have original jurisdiction of all civil actions arising under the Constitution of the United States.

19.     Moreover, jurisdiction lies under 42 U.S.C. § 1983 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. § 1983 as plaintiffs allege violation of rights of free speech under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment to the United States Constitution.

## VENUE

20.     Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391 as each defendant maintains their principal office in Harrisburg, Pennsylvania.

## PARTIES

21.     Plaintiff Trenton Pool is a registered member of the Texas Republican Party, and resides in Texas at 3800 Creek Road, Dripping Springs, in Hays County.

Plaintiff Trenton Pool is a professional circulator of election petitions wishing to circulate nomination petitions in Pennsylvania starting on February 26, 2016, for Rand Paul's campaign for the Republican Party nomination for President of the United States.  Plaintiff Pool is forbidden from circulating nomination papers on his own as a direct and proximate result of the challenged provision of 25 P.S. §2869, for the sole reason that he is not a "qualified elector" of the Commonwealth of Pennsylvania.  Accordingly, Plaintiff Pool is not able to maximize his ability to spread Rand Paul's message as a direct and proximate result of 25 P.S. §2869, because any effort and time he spends circulating Rand Paul's nomination petitions in Pennsylvania must, by force of law, be tethered to another volunteer in the same geographic locality thereby minimizing his ability to expand the reach of Rand Paul's message and the pool of "qualified electors" exposed to Rand Paul's political message in the Commonwealth of Pennsylvania.

Plaintiff Trenton Pool is willing to sign an affidavit, or any other paper, placing himself within and consenting to the jurisdiction of Pennsylvania judicial officials with respect to any investigative and/or judicial procedure seeking to investigate and prosecute violations of Pennsylvania election law.

22.    Plaintiff Benezet Consulting LLC is a Limited Liability Company registered in the State of Texas with a principal place of business at 506 West 15th Street, Suite 201, Austin Texas (hereinafter "Benezet").  Plaintiff Benezet is

engaged in the business of circulating nomination petitions for Republican candidates, including candidates for President of the United States. Plaintiff Benezet contracts with candidates to circulate election petitions to secure access to state primary and general election ballots by charging a flat "per signature fee" requiring Benezet to absorb all costs associated with the circulation of election petitions, including: (a) travel and housing costs for professional out-of-state circulators employed by Benezet; (b) wages paid to circulators hired by Benezet; (c) wages paid to in-state witnesses, required by the statutory provisions challenged herein, to team-up with out-of-state Benezet professional circulators to execute the Affidavit attached to each sheet of a nomination petition; and (d) fees paid to notary publics to execute each Affidavit, as required by defendants' unconstitutional enforcement of the statutory provisions challenged herein.

23.     Plaintiff Carol Susan Love is, aged 49 and is a registered Republican and citizen of the Commonwealth of Pennsylvania, residing at 4 Pennridge Avenue, Mountville, Pennsylvania, 17554.

24.     Defendant Pedro Cortes is Secretary of the Commonwealth of Pennsylvania. Defendant Cortes is the Commonwealth's chief election official and has ultimate authority over the enforcement of the Pennsylvania Election Code and, more specifically, the challenged provisions of 25 P.S. §§2868 and 2869.

Plaintiffs assert their claims against defendant Cortes in his official capacity only.

Defendant Cortes address is 2601 North 3rd Street, Harrisburg, PA 17110.

25.     Defendant Jonathan M. Marks is Commissioner of the Pennsylvania

Bureau of Commissions, Elections and Legislation.  Commissioner Marks

oversees, in relevant part: (a) enforcement of the Commonwealth's electoral

process; (b) voter registration; (c) the Commonwealth's SURE system; (d) the

content, instructions and requirements for filing of nomination petitions; and (e)

the striking of nomination petition signatures and nomination papers that do not

comply with defendants' enforcement of the challenged provisions of 25 P.S. §§

2868, 2869 at the time nomination petitions are filed with defendant Marks' office.

Plaintiffs assert their claims against Commissioner Marks in his official capacity

only.  Commissioner Marks' address is 210 N. Office Building, Harrisburg,

Pennsylvania, 17120.

## **FACTUAL BACKGROUND**

26.     In order to be placed on the Commonwealth's primary election ballot,

candidates for the nomination of major political parties in Pennsylvania (currently

only the Republican and Democratic parties) must circulate nomination petitions

and secure the signatures of a required number of registered qualified electors

enrolled in the same political party as the candidate seeking a party's nomination.

The number of signatures that a candidate must secure on a nomination petition is based on the political office sought by a candidate.

27.     In Pennsylvania, candidates for the Republican and Democratic nominations for President of the United States must secure both: (1) 2,000 valid signatures from all Pennsylvania counties to have the candidate's name appear on the statewide Pennsylvania primary ballot; and (2) 250 valid signatures for each delegate and alternate delegate, secured from registered electors enrolled as members of the subject party from each Congressional District (candidates seeking election as delegates and alternate delegates to the Democratic National Convention must declare support for a specific presidential candidate and receive party permission before they file their nomination petitions; Republican candidates do not need to declare their support for a specific presidential candidate, but each campaign seeks to have their supporters run for delegate and alternate delegate slots in each Congressional District).

28.     In 2016, nomination petitions may not be circulated until Tuesday, February 26th.

29.     In 2016, nomination petitions must be filed with defendants no later than Tuesday, March 16th.

30.     Under 25 P.S. § 2869 **only** Pennsylvania residents may circulate nomination petitions **and** execute the Affidavit made part of each nomination

petition paper. Residents of other states may not validly execute the Affidavit made part of each nomination petition. The Affidavit must be executed before the nomination petition paper may be filed with defendants.

31.    Under 25 P.S. § 2869, residents of other states may only circulate nomination petitions if their circulation is "witnessed" by a Pennsylvania resident who can then execute the Affidavit made part of each nomination petition paper. In other words, every out-of-state circulator must find a Pennsylvania resident who will tag along to witness the circulation of the nomination petition so that the Pennsylvania resident may execute the Affidavit.

32.    Plaintiff Pool is a professional election petition circulator and President of plaintiff Benezet Consulting, and has circulated election petitions in multiple states, for many different national, state and local candidates since at least 2012.

33.    Plaintiff Pool considers his work an important means of expressing his belief of conservative values and the political agenda articulated by the Republican candidates on whose behalf he circulates nomination petitions. Plaintiff Pool believes that his work is an important way for him to convey the message of conservative Republicans throughout the country.

34.    Plaintiff Pool would like to circulate nomination petitions for Rand Paul, a candidate for the Republican Party nomination for President of the United

States, in Pennsylvania starting on Tuesday, January 26, 2016, but is unable to do so without being accompanied by a Pennsylvania resident to witness the signatures and to execute the Affidavit made part of each nomination petition paper. Plaintiff Pool's professional experience found that being accompanied by a non-professional in-state resident witness significantly slowed down the process of signature collection and inhibited his ability to communicate effectively and efficiently with potential signatories.

35.     Plaintiff Pool is willing to sign an affidavit, or any other paper, that will place him under Pennsylvania jurisdiction for the purpose of any investigation and/or prosecution of alleged election petition fraud.

36.     Plaintiff Benezet seeks to circulate nomination petitions for Rand Paul and other conservative Republican candidates seeking the Republican nomination for President of the United States.

37.     Plaintiff Benezet is in the business of circulating election/nomination petitions.

38.     The Ted Cruz campaign has refused to hire Benezet to circulate nomination petitions in Pennsylvania for the sole reason that Benezet's professional out-of-state circulators would be required to circulate nomination petitions "married" to in-state witnesses slowing down the signature gathering process, and forced to pay fees to the in-state witnesses, thereby increasing the cost

19

of circulating nomination petitions to both plaintiff Benezet and the Cruz campaign as a direct and proximate result of 25 P.S. § 2869.

39.     The state residency requirement imposed by 25 P.S. § 2869 adds an additional link/step in the signature gathering process that is amenable to challenge by opposing candidates causing many candidates to avoid the additional economic costs of hiring in-state witnesses for out-of-state circulators and the additional risks associated with hiring out-of-state petition circulators and in-state witnesses that might cause a candidate's petitions to be subject to additional challenges.

40.     The state residency requirement imposed by 25 P.S. § 2869 creates a First Amendment monopoly for in-state petition circulators, excluding the speech of out-of-state circulators.

41.     The circulation of nomination petitions is core political speech.

42.     The United States Supreme Court has recognized that the act of signing an election petition is speech which is "interactive communication concerning change" where First Amendment protection is "at its zenith." *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 183 (1999).

43.     The state residency requirement imposed by 25 P.S. § 2869 reduces the pool of circulators, within the compressed 3 week time frame, available to assist and support plaintiff Pool in his effort to place Rand Paul on the 2016 Pennsylvania Republican primary ballot, placing a severe burden on Pool's First

Amendment right by making it more difficult for him to disseminate and advance his political views, to choose the most effective and efficient means of conveying his message and political agenda, to associate in a meaningful way with other like-minded circulators for the purposes of eliciting political change, and to gain access to the ballot for the candidate of his choice.

44.     The state residency requirement for the witness of signatures necessary for the lawful execution of the Affidavit made part of each nomination petition paper imposed by 25 P.S. § 2869 imposes a severe burden on Pool's First Amendment rights by restricting the nature of support he can offer candidates of his choosing, restricting the type of speech he can engage in within the territory of the Commonwealth of Pennsylvania and restricting his right to freely associate with the Republican Party of Pennsylvania, the voters of Pennsylvania and with the candidates he wants to become the party's standard-bearer.

45.     The state residency requirement imposed by 25 P.S. § 2869 reduces the quantity of petition circulators in Pennsylvania, thereby diminishing the political speech available to the voters of Pennsylvania and violating voters' First Amendment rights to receive information and to participate in the marketplace of ideas.

46.     The state residency requirement imposed by 25 P.S. § 2869 is not justified by a sufficiently weighty state interest.

47.     The state residency requirement imposed by 25 P.S. § 2869 is not narrowly tailored to advance a compelling state interest.

48.     Defendants requirement that the Affidavit required by 25 P.S. §2869 and made part of each nomination petition paper must be executed in the presence of a notary public, or some other person authorized to take sworn statements, is a meaningless ministerial requirement because in Pennsylvania, upon any challenge to the validity of a nomination petition, a full signature-by-signature review of signatures recorded on a nomination petition is conducted by state courts. Accordingly, the sworn Affidavit requirement for each nomination petition paper serves no governmental interest, let alone a compelling governmental interest or weighty administrative purpose.  Notarization of the Affidavit on each nomination petition paper serves no purpose in the face of actual judicial review of the validity of nomination petition signatures and circulators upon a properly filed challenge to the nomination petition.

49.     Defendant Marks, in deposition testimony made in *Green Party of Pennsylvania v. Aichele*, 89 F.Supp.3d 723 (E.D. Pa. 2015) (Civil Action No. 14-3299), admitted that a single signed affidavit per circulator (rather than for each nomination petition paper) would, at minimum, satisfy the Commonwealth's alleged interest in requiring a circulator to execute the Affidavit in the presence of a notary public.

22

50.     The requirement that the Affidavit made part of each nomination petition paper is a signature verification fee (a verification with no substantive purpose) which has been held by other federal courts as an unconstitutional impairment of rights guaranteed under the First Amendment to the United States Constitution.

51.     Plaintiff Pool would need to pay the notarization costs for all of the nomination petition papers he circulates for every candidate represented by plaintiff Benezet at both the state level and for the nomination petitions he circulates for delegates and alternate delegates at the congressional district level.

52.     Plaintiff Benezet would need to absorb the costs of notarizing every Affidavit made part of each nomination petition paper for all circulators (in-state and out-of-state) employed by Benezet to circulate nomination petitions for presidential candidates at the state level (nomination petitions circulated to gather the 2,000 signatures required to place a presidential candidate on the state-wide primary ballot) and for individual delegates and alternate delegates running at the congressional district level.  Total Affidavit costs for plaintiff Benezet are expected to exceed over $2,500.

53.     The limitation imposed by 25 P.S. § 2868 prohibiting registered electors from signing more than one nomination petition per office is an

impairment of voter's right to voice support for more than one presidential

candidate prior to the actual primary election.

54.     As a result of Pennsylvania's late primary election, candidates that are

actively running for a party nomination for President of the United States at the

time nomination petitions are circulated in late January and early February may not

continue their campaigns into the Pennsylvania primary election.  Accordingly,

voters may need, or desire, to support multiple candidates at the time nomination

petitions are circulated that most closely support their political agenda so as to

make sure at least one candidate who closely supports their desired agenda for the

party remains viable at the time the Pennsylvania primary election is contested in

late April.

55.     The Commonwealth of Pennsylvania has no interest, let alone a

compelling governmental interest, nor weighty administrative purpose in limiting

the number of nomination petitions that a registered elector may sign where the

primary election decides the standard-bearer and political agenda of a private

political party.

56.     Furthermore, the Commonwealth of Pennsylvania has no interest, let

alone a compelling governmental interest, nor weighty administrative purpose in

preventing plaintiffs from collecting multiple nomination petition signatures from

registered voters who want to voice the widest articulation of their desired political

agenda by supporting more than one like-minded candidate for the nomination of their political party.

57.     The limitation imposed under 25 P.S. § 2868 increases plaintiff Benezet's cost of circulating plaintiff multiple nomination petitions in the Commonwealth of Pennsylvania.

58.     The limitation imposed under 25 P.S. § 2868 preventing registered electors from signing more than one nomination petition is a content based impairment of rights guaranteed under the First Amendments to the United States Constitution.

59.     An actual and justiciable controversy exists as to which the plaintiffs require a declaration of their rights.

60.     Unless the requested injunctive relief issues, defendants will continue to infringe the constitutional rights of plaintiffs and other candidates, voters and petition circulators.

61.     Plaintiffs have no adequate remedy at law for defendants' violations of their rights.

62.     Plaintiffs are suffering, or will imminently suffer, irreparable harm as a result of defendants' violations of the law and Constitution and the harm will continue unless declared unlawful and enjoined by this Court.

**ADDITIONAL FACTUAL AVERMENTS SINCE HEARING:**

63.     Plaintiff Love was not permitted to sign the nomination petitions circulated by plaintiff Pool because plaintiff Pool was not able to secure an in-state witness in Lancaster County and was, therefore, not able to circulate nomination petitions in Lancaster County where plaintiff Carol Love resides.

64.     Plaintiff Love wanted to sign more than one nomination petition for President of the United States because, at this early stage of the process, she currently, and at all times during the circulation period of nomination petition, supports more than one candidate for the Republican nomination for President of the United States.

65.     Plaintiff Love intends, if permitted, to sign more than one nomination petition in future elections because she believe access to the Commonwealth's primary election ballot allows a wider choice for registered Republicans to make an informed choice for the elected standard bearer of her chosen political party.

66.     Plaintiff Pool was contracted by Rocky De La Fuente a Democrat candidate for President of the United States to circulate nomination petitions in the Commonwealth of Pennsylvania.

67.     Plaintiff Pool had eight (8) out-of-state professional circulators ready to circulate nomination petition on or about Wednesday, February 27th but was not able to circulate any nomination petitions until Monday, March 1st because plaintiff

Pool was not able to secure any in-state witness to tag along with plaintiff Pool and Pool's out-of-state circulators.

68.     Plaintiff Pool was forced to expend funds on advertising, through flyers and advertisements on Craig's List to find in-state witnesses willing to work for $10.00 per hour to tag along with Pool and Pool's professional out-of-state circulators to witness the signatures recorded on the nomination petitions circulated by Pool and Pool's professional out-of-state circulators.

69.  Plaintiff Pool contacted the local Republican and Democrat parties to request that they assist in finding in-state witnesses and was, at all times, refused any help from local party officials.

70.     Even after March 1st, plaintiff Pool and Pool's circulators were hindered in gathering signatures for Rocky De La Fuenta because the witnesses would: (a) not be willing to work the same number of hours as plaintiff Pool and Pool's professional out-of-state circulators; (b) cancel at the last minute such that a replacement in-state witness could not be located to permit the circulation of nomination petition; (c) pick fights with voters unwilling to sign nomination petitions; (d) interfere with the process of securing a recorded signature on the nomination petitions circulated by Pool and Pool's professional out-of-state circulators.

71.     By way of example, and to show the 'quality' of individuals willing to tag along for $10 per hour to serve as in-state witnesses for nomination petitions, one in-state witness would pick fights/verbally interact in a negative manner, with voters unwilling to sign the nomination petition and in one such instance called the voter a "cock sucker" for not signing the nomination petition which caused the voter to turn back and respond to the in-state witness which triggered a physical confrontation that Pool's professional out-of-state circulator was forced to break-up causing loss of time in the circulation of the nomination petition – not quite the idealized utopian version of enhanced First Amendment speech/team work propounded by opposing counsel in argument to this Court at the TRO hearing on January 25th.

72.     In addition to the 2,000 signatures that each candidate must get to be included in the state's top-line ballot primary vote, the total number of signatures which must be gathered, and notarized, for congressional district delegates and alternates are 26,000 per Democrat candidate (104 total delegates x 250 signatures) and 35,500 signatures per Republican candidate (71 delegates, 71 alternate delegates x 250 signatures).

73.     The business of circulation of nomination/election petition in the United States is interstate commerce.

74.     Plaintiff Pool intends to circulate nomination petitions, and bid for

contracts to circulate nomination petitions, for future elections held in the

Commonwealth of Pennsylvania.

## COUNT I – FACIAL CHALLENGE
**(The State Residency Requirement for Witnesses of Nomination Petition Circulation Imposed by 25 P.S. § 2869 is a Facial Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

75.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

76.     The circulation of nomination petitions as defined by 25 P.S. § 2869

of the Pennsylvania Election Code is core political speech protected by the First

Amendment to the United States Constitution.

77.     Signatures recorded on nomination petitions as defined by 25 P.S. §

2869 of the Pennsylvania Election Code is core political speech protected by the

First Amendment to the United States Constitution.

78.     The state residency requirement imposed on witnesses of nomination

petition circulation contained in 25 P.S. § 2869 of the Pennsylvania Election Code

places a severe burden on core political speech and is subject to strict scrutiny.

79.     Because the state residency requirement imposed on witnesses of

nomination petition circulation is not narrowly tailored to further a compelling

governmental interest, the provision facially violates the First Amendment to the

29

United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

80.     Alternatively, because no state regulatory interests justify the state residency requirement imposed on witnesses of nomination petition circulation violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

81.     Defendants are state actors charged with enforcement of 25 P.S. § 2869 against plaintiffs.

82.     Defendants, pursuant to the Pennsylvania Election Code, are required to reject any nomination petition sought to be filed by plaintiffs if it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or if it contains material alterations made after signing without the consent of the signers; or it does not contain a sufficient number of signatures as required by law.

83.     Accordingly, defendants enforcement of 25 P.S. § 2869 is the direct and proximate cause of the impairment of rights guaranteed to plaintiffs under the First Amendment to the United States Constitution of the United States for which plaintiffs request relief.

## COUNT II – AS APPLIED CHALLENGE

**(The State Residency Requirement for Witnesses of Nomination Petition Circulation Imposed by 25 P.S. § 2869 is As Applied to the Facts of This Case, an Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

84.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

85.    The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

86.    Signatures recorded on nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

87.    The state residency requirement imposed on witnesses of nomination petition circulation contained in 25 P.S. § 2869 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny.

88.    Because the state residency requirement imposed on witnesses of nomination petition circulation is not narrowly tailored to further a compelling governmental interest, the provision, as applied to the facts of this case, violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

89.    Alternatively, because no state regulatory interests justify the state residency requirement imposed on witnesses of nomination petition circulation

31

violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

90.     Defendants are state actors charged with enforcement of 25 P.S. § 2869 against plaintiffs.

91.     Defendants, pursuant to the Pennsylvania Election Code, are required to reject any nomination petition sought to be filed by plaintiffs if it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or if it contains material alterations made after signing without the consent of the signers; or it does not contain a sufficient number of signatures as required by law.

92.     Accordingly, defendants enforcement of 25 P.S. § 2869 is the direct and proximate cause of the impairment of rights guaranteed to plaintiffs under the First Amendment to the United States Constitution of the United States for which plaintiffs request relief.

## COUNT III – FACIAL CHALLENGE
**(Defendants' Enforcement of 25 P.S. § 2869 So As To Require Plaintiffs to Notarize Every Nomination Petition Paper is a Facial Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

93.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

94.     The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

95.     Signatures recorded on nomination petition paper as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

96.     Defendants' enforcement of 25 P.S. § 2869 of the Pennsylvania Election Code requiring witnesses of nomination petition circulation to secure a sworn affidavit from the likes of a notary public places a severe burden on core political speech and is subject to strict scrutiny.

97.     Because defendants' enforcement of the affidavit requirement of 25 P.S. § 2869 is not narrowly tailored to further a compelling governmental interest, the provision facially violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

98.     Alternatively, because no state regulatory interests justify defendants' enforcement of the affidavit requirement of 25 P.S. §2869 defendants' enforcement of the provision violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

99.    Defendants are state actors charged with enforcement of 25 P.S. § 2869 against plaintiffs.

100.    Defendants, pursuant to the Pennsylvania Election Code, are required to reject any nomination petition sought to be filed by plaintiffs if it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or if it contains material alterations made after signing without the consent of the signers; or it does not contain a sufficient number of signatures as required by law.

101.    Accordingly, defendants enforcement of the affidavit requirement of 25 P.S. § 2869 is the direct and proximate cause of the impairment of rights guaranteed to plaintiffs under the First Amendment to the United States Constitution of the United States for which plaintiffs request relief.

## COUNT IV – AS APPLIED CHALLENGE
### (Defendants' Enforcement of 25 P.S. § 2869 So As To Require Plaintiffs to Notarize Every Nomination Petition Paper is, As Applied to the Facts of This Case, an Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)

102.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

103.    The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

104.    Signatures recorded on nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

105.    Defendants' enforcement of 25 P.S. § 2869 of the Pennsylvania Election Code requiring witnesses of nomination petition circulation to secure a sworn affidavit from the likes of a notary public places a severe burden on core political speech and is subject to strict scrutiny.

106.    Because the defendants' enforcement of the affidavit requirement imposed by 25 P.S. § 2869 is not narrowly tailored to further a compelling governmental interest, the provision, as applied to the facts of this case, violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

107.    Alternatively, because no state regulatory interests justify defendants' enforcement of the affidavit requirement imposed by 25 P.S. §2869 defendants' enforcement of the provision violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

108.    Defendants are state actors charged with enforcement of 25 P.S. § 2869 against plaintiffs.

109.    Defendants, pursuant to the Pennsylvania Election Code, are required to reject any nomination petition sought to be filed by plaintiffs if it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or if it contains material alterations made after signing without the consent of the signers; or it does not contain a sufficient number of signatures as required by law.

110.    Accordingly, defendants enforcement of the affidavit requirement of 25 P.S. § 2869 is the direct and proximate cause of the impairment of rights guaranteed to plaintiffs under the First Amendment to the United States Constitution of the United States for which plaintiffs request relief.

## COUNT V – FACIAL CHALLENGE
**(The Prohibition of Qualified Electors from Signing More than One Nomination Paper Imposed by 25 P.S. § 2868 is a Facial Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

111.    Plaintiffs reassert each preceding allegation as if set forth fully herein.

112.    The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

113.    Signatures recorded on nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

114.    The prohibition of qualified electors from signing more than one nomination petition imposed by 25 P.S. § 2868 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny.

115.    Because the prohibition of qualified electors from signing more than one nomination paper imposed by 25 P.S. § 2868 is not narrowly tailored to further a compelling governmental interest, the provision facially violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

116.    Alternatively, because no state regulatory interests justify prohibiting qualified electors from signing more than one nomination petition, 25 P.S. § 2868 facially violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

117.    Defendants are state actors charged with enforcement of 25 P.S. § 2868 against plaintiffs.

118.    Defendants, pursuant to the Pennsylvania Election Code, are required to reject any nomination petition sought to be filed by plaintiffs if it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or if it contains material alterations made

after signing without the consent of the signers; or it does not contain a sufficient number of signatures as required by law.

119.   Accordingly, defendants enforcement of 25 P.S. § 2868 is the direct and proximate cause of the impairment of rights guaranteed to plaintiffs under the First Amendment to the United States Constitution for which plaintiffs request relief.

## COUNT VI – AS APPLIED CHALLENGE

**(The Prohibition of Qualified Electors from Signing More than One Nomination Paper Imposed by 25 P.S. § 2868 is, As Applied to the Facts of this Case, an Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

120.   Plaintiffs reassert each preceding allegation as if set forth fully herein.

121.   The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

122.   Signatures recorded on nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

123.   The prohibition of qualified electors from signing more than one nomination petition imposed by 25 P.S. § 2868 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny.

124.    Because the prohibition of qualified electors from signing more than one nomination petition imposed by 25 P.S. § 2868 is not narrowly tailored to further a compelling governmental interest, the provision, as applied to the facts of this case, violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

125.    Alternatively, because no state regulatory interests justify prohibiting qualified electors from signing more than one nomination petition, 25 P.S. § 2868 violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

126.    Defendants are state actors charged with enforcement of 25 P.S. § 2868 against plaintiffs.

127.    Defendants, pursuant to the Pennsylvania Election Code, are required to reject any nomination petition sought to be filed by plaintiffs if it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or if it contains material alterations made after signing without the consent of the signers; or it does not contain a sufficient number of signatures as required by law.

128.   Accordingly, defendants enforcement of 25 P.S. § 2868 is the direct and proximate cause of the impairment of rights guaranteed to plaintiffs under the First Amendment to the United States Constitution for which plaintiffs request relief.

**IN THE ALTERNATIVE:**

### COUNT VII – EQUAL PROTECTION CLAIM
### (The In-State Witness Requirement for Nomination Petitions)

129.   Plaintiffs reassert each preceding allegation as if set forth fully herein.

130.   Defendants, pursuant to a federal injunction and declaration that the in-state witness restriction is unconstitutional, as applied to the Pennsylvania Green and Libertarian parties in the circulation of nomination papers, have abandoned enforcement of the in-state witness requirement for the Affidavit made part of each nomination paper to the extent that the Affidavit has been re-named from the "Affidavit of Qualified Elector" in 2014 nomination papers to the "Affirmation of Circulator" for the 2015 nomination papers.

131.   Accordingly, circulation of nomination papers to place candidates for minor political parties and political bodies directly on the Commonwealth's general election ballot are permitted free from the in-state witness requirement.

132.   Plaintiffs who are members of a major political party and/or who circulate election petitions for major political party candidates remain subject to

the in-state witness requirement for the Affidavit made part of each nomination petition.

133.   Defendants' different treatment of, and imposition of different requirements upon, plaintiffs in the circulation of nomination petitions for candidates of major political parties versus those who circulate nomination papers for minor political parties and bodies denies plaintiffs equal protection of the laws and constitutes a violation of plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT VIII – EQUAL PROTECTION CLAIM
### (The Notarization Requirement for the Affidavit Made Part of Each Nomination Petition Paper)

134.   Plaintiffs reassert each preceding allegation as if set forth fully herein.

135.   Defendants, pursuant to a federal injunction and declaration that the notarization requirement for each Affidavit made part of each nomination paper page is unconstitutional, as applied to the Pennsylvania Green and Libertarian parties in the circulation of nomination papers, have abandoned enforcement of the notarization requirement for the Affidavit made part of each nomination paper to the extent that the Affidavit has been re-named from the "Affidavit of Qualified Elector" in 2014 nomination papers to the "Affirmation of Circulator" for the 2015 nomination papers.

136.   Accordingly, circulation and notarization of nomination papers to place candidates for minor political parties and political bodies directly on the Commonwealth's general election ballot are permitted free from the requirement that Affidavit made part of each page of the nomination paper must be notarized.

137.   Plaintiffs who are members of a major political party and/or who circulate election petitions for major political party candidates remain subject to the requirement that they must notarize the Affidavit made part of each nomination petition paper.

138.   Defendants' different treatment of, and imposition of different requirements upon, plaintiffs in the circulation and execution of the Affidavits for nomination petitions for candidates of major political parties versus those who circulate and execute nomination papers for minor political parties and bodies denies plaintiffs equal protection of the laws and constitutes a violation of plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT IX – EQUAL PROTECTION CLAIM
### (The Requirement that Registered Voters Enrolled in Major Political Parties May Sign Only One Nomination Petition for Each Office)

139.   Plaintiffs reassert each preceding allegation as if set forth fully herein.

140.   Defendants, pursuant to a federal injunction and declaration that the requirement that registered voters may only sign one nomination paper for each

office is unconstitutional, as applied to the Pennsylvania Green and Libertarian parties in the circulation of nomination papers, have abandoned enforcement of the restriction on all voters from signing more than one nomination paper to the extent that the restriction has been eliminated from defendants' instructions promulgated for nomination papers.

141. Accordingly, registered voters seeking to place candidates for minor political parties and political bodies directly on the Commonwealth's general election ballot are permitted to sign an unlimited number of nomination papers for an unlimited number of minor political party and political body candidates.

142. Plaintiffs Benezet Consulting and Pool who are members of a major political party and/or who circulate election petitions for major political party candidates remain subject to the requirement that they may not validly collect signatures from voters for more than one nomination petition for candidates seeking nomination from major political parties and access to the Commonwealth's primary election ballot.

143. Plaintiff Love is a registered Republican of the Commonwealth of Pennsylvania who is prohibited from lawfully signing more than one nomination petition to make sure at least one candidate that she supports is on the Commonwealth's primary election ballot for her chosen political party.

144.   Defendants' different treatment of, and imposition of different requirements upon, plaintiffs in the circulation and signing of nomination petitions for candidates of major political parties versus those who circulate and sign nomination papers for minor political parties and bodies denies plaintiffs equal protection of the laws and constitutes a violation of plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT X
### (Violation of the Commerce Clause of the United States Constitution)

145.   Plaintiffs reassert each preceding allegation as if set forth fully herein.

146.   The Commerce Clause of the United States Constitution, Article I Section 8 Clause 3, prohibits states from enacting legislation that protects its own citizens from commercial competition from citizens of other states or that places an undue burden on interstate commerce.

147.   25 P.S. § 2869 violates the Commerce Clause because it is a protectionist measure that shields in-state professional circulators from economic competition by out-of-state professional circulators by imposing undue burdens on out-of-state professional circulators that in-state professional circulators are not subjected to and which increase the costs on out-of-state professional circulators who want to circulate nomination petitions in Pennsylvania giving in-state professional circulators a built in cost advantage in securing contracts to circulate

nomination petitions for candidates seeking to be placed on the Commonwealth's primary election ballot.

148. The business of circulating nomination petitions by professional circulators is interstate commerce.

149. The in-state witness requirement of 25 P.S. § 2869 forces out-of-state professional circulators who desire to contract with candidates who seek to appear on the Commonwealth's primary election ballot to either: (1) absorb the additional costs imposed by 25 P.S. § 2869, thereby reducing the economic benefit of a contract to circulate nomination petitions in Pennsylvania, or (2) pass along the additional costs imposed by 25 P.S. § 2869 to the candidate placing them at a competitive disadvantage with in-state professional circulators who are not required, simply by virtue of their in-state residency, to suffer the additional costs, both in time, money and efficiency, to secure additional in-state witnesses to execute the Affidavit necessary to lawfully file nomination petitions with defendants.

150. The in-state witness requirement of 25 P.S. § 2869 serves no legitimate state purpose.

151. Accordingly, the in-state witness requirement of 25 P.S. § 2869 violates the Commerce Clause of the United States Constitution.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Enter declaratory judgment against all challenged provisions of 25

       P.S. §§2868, 2869 as detailed in Counts I through IX above,

       or any combination thereof;

b.      Enter emergency preliminary and permanent injunction, on or before

       January 25, 2016, enjoining defendants from enforcing the challenged

       provisions and interpretations of 25 P.S. §§2868, 2869 as detailed in

       Counts I through IX above, or any combination thereof, against all

       defendants now and in the future;

c.      Immediately enjoin defendants to from continuing to publish

       nomination petitions and instructions for the nomination petitions that

       do not conform to the declaratory and injunctive relief ordered by this

       Court;

d.      Award plaintiffs the cost of this action together with their

       reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988;

       and,

e.      Retain jurisdiction of this action and grant plaintiffs such other

       relief which may in the determination of this Honorable Court to be

       necessary and proper.

Dated:      February 16, 2016

_____/s/ Paul A. Rossi, Esq_____
Paul A. Rossi, Esq.
*Counsel to Plaintiffs*
IMPG Advocates
873 East Baltimore Pike
Suite #705
Kennett Square, PA 19348
717.961.8978
Paul-Rossi@comcast.net

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on February 16, 2016, he personally caused to be served upon opposing counsel of record a true and correct copy of the foregoing "Second Amended Complaint" via the Court's ECF filing system:


Dated:    February 16, 2016              _____/s/ *Paul A. Rossi*_____
                                        Paul A. Rossi, Esq.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENEZET CONSULTING, LLC;** | : | |
| **TRENTON POOL; and CAROL LOVE** | : | |
| | : | **CIVIL ACTION** |
| **PLAINTIFFS,** | : | |
| | : | **No. 1:16-CV-00074** |
| **vs.** | : | **Hon. Yvette Kane** |
| | : | |
| **PEDRO A. CORTÉS, in his official capacity** | : | |
| **as the Secretary of the Commonwealth of** | : | |
| **Pennsylvania; and JONATHAN MARKS,** | : | |
| **in his official capacity as Commissioner,** | : | |
| **of the Bureau of Commissions, Elections and** | : | ***Filed Electronically*** |
| **Legislation** | : | |
| | : | |
| **DEFENDANTS.** | : | |

## SECOND AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, BENEZET CONSULTING LLC, and TRENTON POOL and CAROL LOVE, by and through their undersigned legal counsel, file this action for prospective equitable relief against Defendants, PEDRO A. CORTÉS, in his official capacity as Secretary of the Commonwealth and JONATHAN MARKS, in his official capacity as Commissioner for the Bureau of Commissions, elections and Legislation, and the state official with direct supervision of the Pennsylvania Bureau of Elections, and allege, based on information and belief, as follows:

1

<u>**NATURE OF THE COMPLAINT**</u>

1.      This is a civil rights action brought pursuant to the Civil Rights Act of

1871, 42 U.S.C § 1983, alleging that various requirements of 25 P.S. §§2868 and

2969 (hereinafter the "Election Code") and defendants, acting in their official

capacity and under color of state law, impermissibly impair plaintiffs' core

political speech and (in the alternative) equal protection of the laws in violation of

rights guaranteed to plaintiffs under the First and Fourteenth Amendments to the

United States Constitution <u>and/or the Commerce Clause of the United States</u>

<u>Constitution</u> in the circulation of nomination petitions in the Commonwealth of

Pennsylvania.

2.      Plaintiffs ask this Court for declaratory and injunctive relief (both

temporary and permanent) prohibiting state officials from enforcing the

unconstitutional challenged provisions now and in the future.

3.      Plaintiffs contend that the requirement of 25 P.S. §2869 requiring that

only a qualified elector duly registered and enrolled as a member of the designated

party of the State may circulate and execute the affidavit that must be appended to

each sheet of a nomination petition is unconstitutional as it impairs rights

guaranteed under the First and Fourteenth Amendments to the United States

Constitution which fails to advance any governmental interest, let alone narrowly

tailored to advance a compelling governmental interest, of the Commonwealth of Pennsylvania or support any other valid administrative purpose.

(a)     25 P.S. § 2869 of the Pennsylvania Election Code prohibits non-Pennsylvania residents from executing the "Affidavit of Circulator" (hereinafter the "Affidavit") that must be validly executed on each and every nomination petition page.  Defendants are authorized to strike and refuse to file any nomination petition when the Affidavit is executed by anyone who is not: "a qualified elector of the Commonwealth, duly registered and enrolled as a member of the political party designated in this nomination petition."  Accordingly, the Affidavit imposes an unconstitutional impairment on plaintiffs' right to free speech, petition and association as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

(b)     The Affidavit imposed by 25 P.S. § 2869 is not narrowly tailored to effectuate a compelling state interest.  As explained by the overwhelming majority of federal district and circuit courts of appeals, any alleged compelling governmental interest advanced by statutes identical to 25 P.S. § 2869 is more narrowly and fully advanced – without the need to impair any First Amendment guarantees – by requiring affiants to submit to the Commonwealth's

jurisdiction for the purpose of any subsequent investigation, prosecution and

adjudication of alleged election petition fraud.

        (c)    Furthermore, Election Code provisions (unique to

Pennsylvania) establishes the right of any registered qualified elector enrolled in

the same party as the candidate circulating the nomination petition to object to the

validity of a nomination petition, triggering an immediate signature-by-signature

judicial review by Pennsylvania's Commonwealth Court (or local Court of

Common Pleas) to determine the validity of each signature and Affidavit.   It is the

most robust and conclusive procedure to prevent, detect and nullify any allegation

of petition fraud such that the Affidavit is rendered a complete nullity and does not,

in fact, advance any actual governmental interest, let alone a compelling

governmental interest necessary to permit the impairment of rights guaranteed

under the First and Fourteenth Amendments.

      4.    Plaintiffs contend that defendants' enforcement of 25 P.S. §2869

requiring that the affidavit appended to each sheet of the nomination petition be

executed in the presence of a notary public is unconstitutional as it impairs rights

guaranteed under the First and Fourteenth Amendments to the United States

Constitution which is not narrowly tailored to advance a compelling governmental

interest of the Commonwealth of Pennsylvania or support any other valid

administrative purpose.

<div align="center">4</div>

(a) Defendants have imposed, in excess of 25 P.S. § 2869 (which merely requires that an affidavit be appended to each nomination paper), the further requirement that the Affidavit made part of each nomination petition paper must be notarized. A notary public in Pennsylvania charges – *at a minimum* – $5.00 per affidavit. In many instances a notary public in Pennsylvania will charge up to $20.00 per executed page. Defendants' requirement that each Affidavit be notarized, amounts to an unconstitutional signature certification fee of (at minimum) $.14285 per signature for nomination petitions (defendants' nomination petitions provide space for only 35 signatures per nomination petition ÷ $5.00 = $.14285 per signature), a fee in clear violation of the First Amendment's general prohibition on the imposition of any financial penalty upon those who exercise a right guaranteed by the Constitution – and, electoral signature verification fees in particular.

(b) Defendants refuse to offer any non-monetary alternative to the sworn affidavit requirement. Pennsylvania law, however, provides for a "free" unsworn affidavit alternative pursuant to18 Pa. Cons. Stat. § 4904(a)(1) which provides that: "A person commits a misdemeanor of the second degree if, with the intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true." Defendants, in

5

excess of their statutory authority, refuse to permit Affidavits to be made pursuant to, and subject to the penalties of, 18 Pa. Cons. Stat.§ 4904(a)(1).

(c)     While Affidavits made pursuant to 18 Pa. Cons. Stat §4904(a)(1) would not require the payment of any fees to a notary public,  such Affidavits would, nevertheless, impose a criminal penalty for an intentional misstatement to defendants that the affiant does not believe to be true and would protect any vestigial state interest alleged to be advanced by defendants' notarized Affidavit requirement.

(d)     Defendants cannot argue that the requirement they have imposed on plaintiffs to notarize each Affidavit made part of every nomination petition paper is anything other than a signature verification fee of the kind held unconstitutional by the United States Supreme Court.  Defendants' predecessors-in-office specifically argued to the United States District Court for the Eastern District of Pennsylvania in *Morrill v. Weaver*, 224 F.Supp.2d 882 (2002), that the Affidavit was necessary to <u>validate petitioners' signatures</u>.

(e)     Accordingly, owing to: (a) the unconstitutionality of all signature verification fees imposed on election petitions; (b) the availability of an alternative statutory provision providing for acknowledgements imposing criminal sanctions for willful written false statements to defendants which does not impose any monetary burden on plaintiffs or the electoral process; (c) unchallenged

6

provisions of the Pennsylvania Election Code establishing the right of any elector enrolled in the same party as the nomination petition to challenge such nomination petition thereby triggering an immediate signature-by-signature _judicial review_ of the validity of every challenged signature recorded on a nomination petition; and (d) the lack of any statutory mandate that the Affidavit be notarized – defendants' imposition of the sworn Affidavit requirement must be declared unconstitutional and permanently enjoined for defendants' lack of statutory authority and because defendants' exercise of any permissible administrative discretion violates plaintiffs' First Amendment right against signature verification fees and fails to narrowly advance the Commonwealth's legitimate interest in the prevention of petition fraud in the electoral process in violation (again) of rights guaranteed to plaintiffs under the First and Fourteenth Amendments.

5.      Plaintiffs contend that the requirement of 25 P.S. §2868 that each "signer of a nomination petition shall sign but one such petition for each office to be filled" is unconstitutional as it impairs rights guaranteed under the First and Fourteenth Amendments to the United States Constitution which fails to advance any governmental interest, let alone narrowly tailored to advance a compelling governmental interest, of the Commonwealth of Pennsylvania or support any other valid administrative purpose.

6.      **In the alternative**, the decision in *Green Party of Pennsylvania v.*
*Aichele*, 89 F.Supp.3d. 723 (E.D.Pa 2015)(J. Dalzell) holding that: (1) the in-state
witness restriction; (2) the notarization requirement of each Affidavit made part of
each page of nomination papers; and (3) the limitation on voters to sign only one
nomination paper per political office are unconstitutional, as applied to the
Pennsylvania Green and Libertarian parties, and enjoining enforcement as to those
minor political parties and bodies <u>and</u> defendants subsequent abandonment of these
requirements for all nomination papers renders defendants continued enforcement
of the in-state witness requirement, the notarization requirement of each Affidavit
for nomination petitions and the limitation that registered and enrolled members of
major political parties may only sign one nomination petition under 25 P.S. §§
2868 and 2869 deny plaintiffs the equal protection of the laws and violate the
Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution.

7.      **In the alternative**, Plaintiffs Benezet Consulting and Pool contend
that the requirement of 25 P.S. §2869 requiring that only a qualified elector duly
registered and enrolled as a member of the designated party of the State may
circulate and execute the affidavit that must be appended to each sheet of a
nomination petition is unconstitutional as it impairs rights guaranteed under the
Commerce Clause of the United States Constitution, in that it favors in-state

8

professional circulators to the economic detriment of out-of-state professional circulators because: (1) in-state circulators do not need to pay for in-state witnesses to tag along with circulators, thereby allowing in-state professional circulators to charge less per signature than out-of-state professional circulators as a direct and proximate result of 25 P.S. § 2869; (2) in-state professional circulators do not need to spend on the additional advertising costs to find in-state witnesses that out-of-state professional circulators are required to expend as a direct and proximate result of 25 P.S. § 2869; (3) out-of-state professional circulators are required to spend additional time in finding and training in-state witnesses that in-state professional circulators are able to direct to the actual gathering of signatures in a time compressed environment placing out-of-state professional circulators at a disadvantage as a direct and proximate result of 25 P.S. § 2869; and (4) in-state professional circulators may circulate nomination petitions in a more efficient manner than out-of-state professional circulators who may only circulate nomination petitions if and when they can secure an in-state witness to tag along with the out-of-state professional circulators thereby reducing the number of hours that out-of-state circulators are able to lawfully work to gather signatures as a direct and proximate result of 25 P.S. § 2869.

87. Defendants' exercise of authority pursuant to the challenged provisions of the Pennsylvania Election Code is the proximate cause of plaintiffs'

9

impairment of federal First Amendment rights not narrowly tailored to advance

any compelling governmental interest and, therefore, invalid and must be declared

in violation of rights guaranteed to plaintiffs under the First and Fourteenth

Amendments to the United States Constitution and defendants must be

immediately and permanently enjoined from enforcing against plaintiffs those

provisions of the Pennsylvania Election Code challenged herein.

98.    This Court has jurisdiction to adjudicate plaintiffs' claims.

109.    Plaintiffs have standing to maintain the instant action as to all claims

contained herein.

110.    All claims advanced in this litigation are ripe for immediate

adjudication.

121.    The injunctive and declaratory relief requested by plaintiffs will

provide plaintiffs complete relief as to defendants' violation of rights guaranteed to

plaintiffs under the First and Fourteenth Amendments to the United States

Constitution.

132.    The United States Supreme Court has established that the act of

signing an election petition, such as the nomination petitions at issue in this action,

is core political speech afforded the highest level of constitutional protection.

143.    Further, the United States Supreme Court has clearly recognized that

speech attendant to the signing of electoral petitions such as the nomination

10

petition that plaintiffs wish to circulate on behalf of candidates for the Office of President of the United States is a complex expression of core political speech broader than the mere ministerial act/process of placing political party candidates on the primary election ballot. At minimum, the act of circulating and signing a nomination petition for a specific political party candidate implicates political expression of approval for a certain political agenda advanced by one (or more) candidates to the exclusion and disapproval of the political agendas advanced by one (or more) other political candidates and, in certain instances, disapproval of the establishment and/or the *status quo* of the current political elites dominating the modern political landscape.

154. The Commonwealth's nomination petition process, whereby qualified registered electors enrolled in a major political party may sign a nomination petition for party candidates seeking the nomination of their political party in the Commonwealth of Pennsylvania (i.e., the Republican and Democrat parties) is not an analogue to an election where electors are properly forced to cast a single ballot for one candidate in a primary election. The Commonwealth cannot limit the speech of electors to sign only one nomination petition. A primary election selects the standard bearer and vessel that will carry the major political party's message to the voters. The Commonwealth has no interest in the number of candidates engaged in speech within a major political party. Furthermore, the modest number

11

of signatures required to place a major party candidate on the primary election ballot (2,000 in the case of a candidate for President) does nothing to limit the number of candidates that end up on the primary ballot (i.e., if each elector signed only one nomination petition , the statute permits up to 900 candidates to appear on the primary ballot for each party) Accordingly, the Commonwealth of Pennsylvania has no legitimate any interest in limiting the number of nomination petitions that a registered elector enrolled in a political party may validly sign.  The Petition and Free Speech Clauses of the First Amendment, in concert with the Fourteenth Amendment, does not permit defendants to limit a registered voter of a major political party to support only one candidate for their party's nomination prior to the actual election.  A registered elector may need to support multiple candidates for their party's nomination process in order to make sure the widest array of political speech that the registered voter supports is articulated in the election campaign and considered by the party prior to the actual primary election.

165.  The challenged provisions of 25 P.S. §§2868, 2869 deplete finite economic and grass-root volunteer resources impairing plaintiffs' ability to advance their chosen political massage to the registered voters of the Commonwealth of Pennsylvania.

176.  The declaratory and injunctive relief sought in this action will permit plaintiffs to circulate nomination petitions in the Commonwealth of Pennsylvania

for their chosen candidates in the most efficient manner possible and eliminate unnecessary and unconstitutional costs to plaintiffs in the circulation of nomination petitions – costs which are not tethered to narrowly advance any compelling governmental interest or administrative purpose necessary to sustain defendants' unconstitutional enforcement of the challenged statutory provision of 25 P.S. §§ 2868, 2869.

## JURISDICTION

18~~7~~.   Jurisdiction lies in this court under 28 U.S.C. § 1331, providing that district courts shall have original jurisdiction of all civil actions arising under the Constitution of the United States.

19~~8~~.   Moreover, jurisdiction lies under 42 U.S.C. § 1983 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. § 1983 as plaintiffs allege violation of rights of free speech under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment to the United States Constitution.

## VENUE

20~~19~~. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391 as each defendant maintains their principal office in Harrisburg, Pennsylvania.

13

## PARTIES

2~~10~~.    Plaintiff Trenton Pool is a registered member of the Texas Republican
Party, and resides in Texas at 3800 Creek Road, Dripping Springs, in Hays County.
Plaintiff Trenton Pool is a professional circulator of election petitions wishing to
circulate nomination petitions in Pennsylvania starting on February 26, 2016, for
Rand Paul's campaign for the Republican Party nomination for President of the
United States.  Plaintiff Pool is forbidden from circulating nomination papers on
his own as a direct and proximate result of the challenged provision of 25 P.S.
§2869, for the sole reason that he is not a "qualified elector" of the Commonwealth
of Pennsylvania.  Accordingly, Plaintiff Pool is not able to maximize his ability to
spread Rand Paul's message as a direct and proximate result of 25 P.S. §2869,
because any effort and time he spends circulating Rand Paul's nomination petitions
in Pennsylvania must, by force of law, be tethered to another volunteer in the same
geographic locality thereby minimizing his ability to expand the reach of Rand
Paul's message and the pool of "qualified electors" exposed to Rand Paul's
political message in the Commonwealth of Pennsylvania.

Plaintiff Trenton Pool is willing to sign an affidavit, or any other paper,
placing himself within and consenting to the jurisdiction of Pennsylvania judicial
officials with respect to any investigative and/or judicial procedure seeking to
investigate and prosecute violations of Pennsylvania election law.

14

22.    Plaintiff Benezet Consulting LLC is a Limited Liability Company

registered in the State of Texas with a principal place of business at 506 West 15th

Street, Suite 201, Austin Texas (hereinafter "Benezet").  Plaintiff Benezet is

engaged in the business of circulating nomination petitions for Republican

candidates, including candidates for President of the United States.  Plaintiff

Benezet contracts with candidates to circulate election petitions to secure access to

state primary and general election ballots by charging a flat "per signature fee"

requiring Benezet to absorb all costs associated with the circulation of election

petitions, including: (a) travel and housing costs for professional out-of-state

circulators employed by Benezet; (b) wages paid to circulators hired by Benezet;

(c) wages paid to in-state witnesses, required by the statutory provisions

challenged herein, to team-up with out-of-state Benezet professional circulators to

execute the Affidavit attached to each sheet of a nomination petition; and (d) fees

paid to notary publics to execute each Affidavit, as required by defendants'

unconstitutional enforcement of the statutory provisions challenged herein.

23.    Plaintiff Carol Susan Love is, aged 49 and is a registered Republican

and citizen of the Commonwealth of Pennsylvania, residing at 4 Pennridge

Avenue, Mountville, Pennsylvania, 17554.

24.    Defendant Pedro Cortes is Secretary of the Commonwealth of

Pennsylvania.  Defendant Cortes is the Commonwealth's chief election official and

15

has ultimate authority over the enforcement of the Pennsylvania Election Code and, more specifically, the challenged provisions of 25 P.S. §§2868 and 2869. Plaintiffs assert their claims against defendant Cortes in his official capacity only. Defendant Cortes address is 2601 North 3rd Street, Harrisburg, PA 17110.

25̶3̶.   Defendant Jonathan M. Marks is Commissioner of the Pennsylvania Bureau of Commissions, Elections and Legislation. Commissioner Marks oversees, in relevant part: (a) enforcement of the Commonwealth's electoral process; (b) voter registration; (c) the Commonwealth's SURE system; (d) the content, instructions and requirements for filing of nomination petitions; and (e) the striking of nomination petition signatures and nomination papers that do not comply with defendants' enforcement of the challenged provisions of 25 P.S. §§ 2868, 2869 at the time nomination petitions are filed with defendant Marks' office. Plaintiffs assert their claims against Commissioner Marks in his official capacity only. Commissioner Marks' address is 210 N. Office Building, Harrisburg, Pennsylvania, 17120.

## FACTUAL BACKGROUND

26̶4̶.   In order to be placed on the Commonwealth's primary election ballot, candidates for the nomination of major political parties in Pennsylvania (currently only the Republican and Democratic parties) must circulate nomination petitions and secure the signatures of a required number of registered qualified electors

16

enrolled in the same political party as the candidate seeking a party's nomination. The number of signatures that a candidate must secure on a nomination petition is based on the political office sought by a candidate.

27~~5~~.  In Pennsylvania, candidates for the Republican and Democratic nominations for President of the United States must secure both: (1) 2,000 valid signatures from all Pennsylvania counties to have the candidate's name appear on the statewide Pennsylvania primary ballot; and (2) 250 valid signatures for each delegate and alternate delegate, secured from registered electors enrolled as members of the subject party from each Congressional District (candidates seeking election as delegates and alternate delegates to the Democratic National Convention must declare support for a specific presidential candidate and receive party permission before they file their nomination petitions; Republican candidates do not need to declare their support for a specific presidential candidate, but each campaign seeks to have their supporters run for delegate and alternate delegate slots in each Congressional District).

28~~6~~.  In 2016, nomination petitions may not be circulated until Tuesday, February 26th.

29~~7~~.  In 2016, nomination petitions must be filed with defendants no later than Tuesday, March 16th.

17

3028.  Under 25 P.S. § 2869 **only** Pennsylvania residents may circulate nomination petitions **and** execute the Affidavit made part of each nomination petition paper.  Residents of other states may not validly execute the Affidavit made part of each nomination petition.  The Affidavit must be executed before the nomination petition paper may be filed with defendants.

3129.  Under 25 P.S. § 2869, residents of other states may only circulate nomination petitions if their circulation is "witnessed" by a Pennsylvania resident who can then execute the Affidavit made part of each nomination petition paper.  In other words, every out-of-state circulator must find a Pennsylvania resident who will tag along to witness the circulation of the nomination petition so that the Pennsylvania resident may execute the Affidavit.

3230.  Plaintiff Pool is a professional election petition circulator and President of plaintiff Benezet Consulting, and has circulated election petitions in multiple states, for many different national, state and local candidates since at least 2012.

3331.  Plaintiff Pool considers his work an important means of expressing his belief of conservative values and the political agenda articulated by the Republican candidates on whose behalf he circulates nomination petitions.  Plaintiff Pool believes that his work is an important way for him to convey the message of conservative Republicans throughout the country.

18

3̶4̶2̶.   Plaintiff Pool would like to circulate nomination petitions for Rand Paul, a candidate for the Republican Party nomination for President of the United States, in Pennsylvania starting on Tuesday, January 26, 2016, but is unable to do so without being accompanied by a Pennsylvania resident to witness the signatures and to execute the Affidavit made part of each nomination petition paper.  Plaintiff Pool's professional experience found that being accompanied by a non-professional in-state resident witness significantly slowed down the process of signature collection and inhibited his ability to communicate effectively and efficiently with potential signatories.

3̶5̶3̶.   Plaintiff Pool is willing to sign an affidavit, or any other paper, that will place him under Pennsylvania jurisdiction for the purpose of any investigation and/or prosecution of alleged election petition fraud.

3̶6̶4̶.   Plaintiff Benezet seeks to circulate nomination petitions for Rand Paul and other conservative Republican candidates seeking the Republican nomination for President of the United States.

3̶7̶5̶.   Plaintiff Benezet is in the business of circulating election/nomination petitions.

3̶8̶6̶.   The Ted Cruz campaign has refused to hire Benezet to circulate nomination petitions in Pennsylvania for the sole reason that Benezet's professional out-of-state circulators would be required to circulate nomination

19

petitions "married" to in-state witnesses slowing down the signature gathering

process, and forced to pay fees to the in-state witnesses, thereby increasing the cost

of circulating nomination petitions to both plaintiff Benezet and the Cruz campaign

as a direct and proximate result of 25 P.S. § 2869.

39~~7~~.   The state residency requirement imposed by 25 P.S. § 2869 adds an

additional link/step in the signature gathering process that is amenable to challenge

by opposing candidates causing many candidates to avoid the additional economic

costs of hiring in-state witnesses for out-of-state circulators and the additional risks

associated with hiring out-of-state petition circulators and in-state witnesses that

might cause a candidate's petitions to be subject to additional challenges.

40~~38~~.  The state residency requirement imposed by 25 P.S. § 2869 creates a

First Amendment monopoly for in-state petition circulators, excluding the speech

of out-of-state circulators.

41~~39~~.  The circulation of nomination petitions is core political speech.

42~~0~~.   The United States Supreme Court has recognized that the act of

signing an election petition is speech which is "interactive communication

concerning change" where First Amendment protection is "at its zenith." *Buckley*

*v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 183 (1999).

43~~1~~.   The state residency requirement imposed by 25 P.S. § 2869 reduces

the pool of circulators, within the compressed 3 week time frame, available to

assist and support plaintiff Pool in his effort to place Rand Paul on the 2016
Pennsylvania Republican primary ballot, placing a severe burden on Pool's First
Amendment right by making it more difficult for him to disseminate and advance
his political views, to choose the most effective and efficient means of conveying
his message and political agenda, to associate in a meaningful way with other like-
minded circulators for the purposes of eliciting political change, and to gain access
to the ballot for the candidate of his choice.

42. The state residency requirement for the witness of signatures
necessary for the lawful execution of the Affidavit made part of each nomination
petition paper imposed by 25 P.S. § 2869 imposes a severe burden on Pool's First
Amendment rights by restricting the nature of support he can offer candidates of
his choosing, restricting the type of speech he can engage in within the territory of
the Commonwealth of Pennsylvania and restricting his right to freely associate
with the Republican Party of Pennsylvania, the voters of Pennsylvania and with the
candidates he wants to become the party's standard-bearer.

43. The state residency requirement imposed by 25 P.S. § 2869 reduces
the quantity of petition circulators in Pennsylvania, thereby diminishing the
political speech available to the voters of Pennsylvania and violating voters' First
Amendment rights to receive information and to participate in the marketplace of
ideas.

21

4̶64.    The state residency requirement imposed by 25 P.S. § 2869 is not
justified by a sufficiently weighty state interest.

4̶75.    The state residency requirement imposed by 25 P.S. § 2869 is not
narrowly tailored to advance a compelling state interest.

4̶86.    Defendants requirement that the Affidavit required by 25 P.S. §2869
and made part of each nomination petition paper must be executed in the presence
of a notary public, or some other person authorized to take sworn statements, is a
meaningless ministerial requirement because in Pennsylvania, upon any challenge
to the validity of a nomination petition, a full signature-by-signature review of
signatures recorded on a nomination petition is conducted by state courts.
Accordingly, the sworn Affidavit requirement for each nomination petition paper
serves no governmental interest, let alone a compelling governmental interest or
weighty administrative purpose.  Notarization of the Affidavit on each nomination
petition paper serves no purpose in the face of actual judicial review of the validity
of nomination petition signatures and circulators upon a properly filed challenge to
the nomination petition.

4̶97.    Defendant Marks, in deposition testimony made in *Green Party of
Pennsylvania v. Aichele*, 89 F.Supp.3d 723 (E.D. Pa. 2015) (Civil Action No. 14-
3299), admitted that a single signed affidavit per circulator (rather than for each
nomination petition paper) would, at minimum, satisfy the Commonwealth's

alleged interest in requiring a circulator to execute the Affidavit in the presence of a notary public.

50~~48~~. The requirement that the Affidavit made part of each nomination petition paper is a signature verification fee (a verification with no substantive purpose) which has been held by other federal courts as an unconstitutional impairment of rights guaranteed under the First Amendment to the United States Constitution.

51~~49~~. Plaintiff Pool would need to pay the notarization costs for all of the nomination petition papers he circulates for every candidate represented by plaintiff Benezet at both the state level and for the nomination petitions he circulates for delegates and alternate delegates at the congressional district level.

52~~0~~. Plaintiff Benezet would need to absorb the costs of notarizing every Affidavit made part of each nomination petition paper for all circulators (in-state and out-of-state) employed by Benezet to circulate nomination petitions for presidential candidates at the state level (nomination petitions circulated to gather the 2,000 signatures required to place a presidential candidate on the state-wide primary ballot) and for individual delegates and alternate delegates running at the congressional district level. Total Affidavit costs for plaintiff Benezet are expected to exceed over $2,500.

23

53 1.   The limitation imposed by 25 P.S. § 2868 prohibiting registered electors from signing more than one nomination petition per office is an impairment of voter's right to voice support for more than one presidential candidate prior to the actual primary election.

54 2.   As a result of Pennsylvania's late primary election, candidates that are actively running for a party nomination for President of the United States at the time nomination petitions are circulated in late January and early February may not continue their campaigns into the Pennsylvania primary election.  Accordingly, voters may need, or desire, to support multiple candidates at the time nomination petitions are circulated that most closely support their political agenda so as to make sure at least one candidate who closely supports their desired agenda for the party remains viable at the time the Pennsylvania primary election is contested in late April.

55 3.   The Commonwealth of Pennsylvania has no interest, let alone a compelling governmental interest, nor weighty administrative purpose in limiting the number of nomination petitions that a registered elector may sign where the primary election decides the standard-bearer and political agenda of a private political party.

56 4.   Furthermore, the Commonwealth of Pennsylvania has no interest, let alone a compelling governmental interest, nor weighty administrative purpose in

preventing plaintiffs from collecting multiple nomination petition signatures from registered voters who want to voice the widest articulation of their desired political agenda by supporting more than one like-minded candidate for the nomination of their political party.

57. The limitation imposed under 25 P.S. § 2868 increases plaintiff Benezet's cost of circulating plaintiff multiple nomination petitions in the Commonwealth of Pennsylvania.

58. The limitation imposed under 25 P.S. § 2868 preventing registered electors from signing more than one nomination petition is a content based impairment of rights guaranteed under the First Amendments to the United States Constitution.

59. An actual and justiciable controversy exists as to which the plaintiffs require a declaration of their rights.

60. Unless the requested injunctive relief issues, defendants will continue to infringe the constitutional rights of plaintiffs and other candidates, voters and petition circulators.

61. Plaintiffs have no adequate remedy at law for defendants' violations of their rights.

62<s>0</s>.    Plaintiffs are suffering, or will imminently suffer, irreparable harm as a result of defendants' violations of the law and Constitution and the harm will continue unless declared unlawful and enjoined by this Court.

**ADDITIONAL FACTUAL AVERMENTS SINCE HEARING:**

63.    Plaintiff Love was not permitted to sign the nomination petitions circulated by plaintiff Pool because plaintiff Pool was not able to secure an in-state witness in Lancaster County and was, therefore, not able to circulate nomination petitions in Lancaster County where plaintiff Carol Love resides.

64.    Plaintiff Love wanted to sign more than one nomination petition for President of the United States because, at this early stage of the process, she currently, and at all times during the circulation period of nomination petition, supports more than one candidate for the Republican nomination for President of the United States.

65.    Plaintiff Love intends, if permitted, to sign more than one nomination petition in future elections because she believe access to the Commonwealth's primary election ballot allows a wider choice for registered Republicans to make an informed choice for the elected standard bearer of her chosen political party.

66.    Plaintiff Pool was contracted by Rocky De La Fuente a Democrat candidate for President of the United States to circulate nomination petitions in the Commonwealth of Pennsylvania.

67.    Plaintiff Pool had eight (8) out-of-state professional circulators ready to circulate nomination petition on or about Wednesday, February 27th but was not able to circulate any nomination petitions until Monday, March 1st because plaintiff Pool was not able to secure any in-state witness to tag along with plaintiff Pool and Pool's out-of-state circulators.

68.    Plaintiff Pool was forced to expend funds on advertising, through flyers and advertisements on Craig's List to find in-state witnesses willing to work for $10.00 per hour to tag along with Pool and Pool's professional out-of-state circulators to witness the signatures recorded on the nomination petitions circulated by Pool and Pool's professional out-of-state circulators.

69.  Plaintiff Pool contacted the local Republican and Democrat parties to request that they assist in finding in-state witnesses and was, at all times, refused any help from local party officials.

70.    Even after March 1st, plaintiff Pool and Pool's circulators were hindered in gathering signatures for Rocky De La Fuenta because the witnesses would: (a) not be willing to work the same number of hours as plaintiff Pool and Pool's professional out-of-state circulators; (b) cancel at the last minute such that a replacement in-state witness could not be located to permit the circulation of nomination petition; (c) pick fights with voters unwilling to sign nomination petitions; (d) interfere with the process of securing a recorded signature on the

27

nomination petitions circulated by Pool and Pool's professional out-of-state circulators.

71.    By way of example, and to show the 'quality' of individuals willing to tag along for $10 per hour to serve as in-state witnesses for nomination petitions, one in-state witness would pick fights/verbally interact in a negative manner, with voters unwilling to sign the nomination petition and in one such instance called the voter a "cock sucker" for not signing the nomination petition which caused the voter to turn back and respond to the in-state witness which triggered a physical confrontation that Pool's professional out-of-state circulator was forced to break-up causing loss of time in the circulation of the nomination petition – not quite the idealized utopian version of enhanced First Amendment speech/team work propounded by opposing counsel in argument to this Court at the TRO hearing on January 25th.

72.    In addition to the 2,000 signatures that each candidate must get to be included in the state's top-line ballot primary vote, the total number of signatures which must be gathered, and notarized, for congressional district delegates and alternates are 26,000 per Democrat candidate (104 total delegates x 250 signatures) and 35,500 signatures per Republican candidate (71 delegates, 71 alternate delegates x 250 signatures).

73.    The business of circulation of nomination/election petition in the United States is interstate commerce.

74.    Plaintiff Pool intends to circulate nomination petitions, and bid for contracts to circulate nomination petitions, for future elections held in the Commonwealth of Pennsylvania.

## COUNT I – FACIAL CHALLENGE
**(The State Residency Requirement for Witnesses of Nomination Petition Circulation Imposed by 25 P.S. § 2869 is a Facial Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

75~~61~~. Plaintiffs reassert each preceding allegation as if set forth fully herein.

76~~62~~. The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

77~~63~~. Signatures recorded on nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

78~~64~~. The state residency requirement imposed on witnesses of nomination petition circulation contained in 25 P.S. § 2869 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny.

67~~95~~. Because the state residency requirement imposed on witnesses of nomination petition circulation is not narrowly tailored to further a compelling

29

governmental interest, the provision facially violates the First Amendment to the

United States Constitution, as incorporated to the States by the Fourteenth

Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

80~~66~~. Alternatively, because no state regulatory interests justify the state

residency requirement imposed on witnesses of nomination petition circulation

violates the First Amendment to the United States Constitution, as incorporated to

the States by the Fourteenth Amendment to the United States Constitution and

enforced by 42 U.S.C. § 1983.

81~~67~~. Defendants are state actors charged with enforcement of 25 P.S. §

2869 against plaintiffs.

82~~68~~. Defendants, pursuant to the Pennsylvania Election Code, are required

to reject any nomination petition sought to be filed by plaintiffs if it contains

material errors or defects apparent on the face thereof, or on the face of the

appended or accompanying affidavits; or if it contains material alterations made

after signing without the consent of the signers; or it does not contain a sufficient

number of signatures as required by law.

83~~69~~. Accordingly, defendants enforcement of 25 P.S. § 2869 is the direct

and proximate cause of the impairment of rights guaranteed to plaintiffs under the

First Amendment to the United States Constitution of the United States for which

plaintiffs request relief.

## COUNT II – AS APPLIED CHALLENGE
**(The State Residency Requirement for Witnesses of Nomination Petition Circulation Imposed by 25 P.S. § 2869 is As Applied to the Facts of This Case, an Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

84~~70~~. Plaintiffs reassert each preceding allegation as if set forth fully herein.

85~~71~~. The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

86~~72~~. Signatures recorded on nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

87~~73~~. The state residency requirement imposed on witnesses of nomination petition circulation contained in 25 P.S. § 2869 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny.

88~~74~~. Because the state residency requirement imposed on witnesses of nomination petition circulation is not narrowly tailored to further a compelling governmental interest, the provision, as applied to the facts of this case, violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

89~~75~~. Alternatively, because no state regulatory interests justify the state residency requirement imposed on witnesses of nomination petition circulation violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

90~~76~~. Defendants are state actors charged with enforcement of 25 P.S. § 2869 against plaintiffs.

91~~77~~. Defendants, pursuant to the Pennsylvania Election Code, are required to reject any nomination petition sought to be filed by plaintiffs if it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or if it contains material alterations made after signing without the consent of the signers; or it does not contain a sufficient number of signatures as required by law.

92~~78~~. Accordingly, defendants enforcement of 25 P.S. § 2869 is the direct and proximate cause of the impairment of rights guaranteed to plaintiffs under the First Amendment to the United States Constitution of the United States for which plaintiffs request relief.

## COUNT III – FACIAL CHALLENGE
**(Defendants' Enforcement of 25 P.S. § 2869 So As To Require Plaintiffs to Notarize Every Nomination Petition Paper is a Facial Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)**

93. Plaintiffs reassert each preceding allegation as if set forth fully herein.

94. The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

95. Signatures recorded on nomination petition paper as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

96. Defendants' enforcement of 25 P.S. § 2869 of the Pennsylvania Election Code requiring witnesses of nomination petition circulation to secure a sworn affidavit from the likes of a notary public places a severe burden on core political speech and is subject to strict scrutiny.

97. Because defendants' enforcement of the affidavit requirement of 25 P.S. § 2869 is not narrowly tailored to further a compelling governmental interest, the provision facially violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

98. Alternatively, because no state regulatory interests justify defendants' enforcement of the affidavit requirement of 25 P.S. §2869 defendants' enforcement of the provision violates the First Amendment to the United States Constitution, as

33

incorporated to the States by the Fourteenth Amendment to the United States

Constitution and enforced by 42 U.S.C. § 1983.

99~~85~~. Defendants are state actors charged with enforcement of 25 P.S. §

2869 against plaintiffs.

100~~86~~. Defendants, pursuant to the Pennsylvania Election Code, are

required to reject any nomination petition sought to be filed by plaintiffs if it

contains material errors or defects apparent on the face thereof, or on the face of

the appended or accompanying affidavits; or if it contains material alterations

made after signing without the consent of the signers; or it does not contain a

sufficient number of signatures as required by law.

101~~87~~. Accordingly, defendants enforcement of the affidavit

requirement of 25 P.S. § 2869 is the direct and proximate cause of the impairment

of rights guaranteed to plaintiffs under the First Amendment to the United States

Constitution of the United States for which plaintiffs request relief.

### COUNT IV – AS APPLIED CHALLENGE
**(Defendants' Enforcement of 25 P.S. § 2869 So As To Require Plaintiffs to
Notarize Every Nomination Petition Paper is, As Applied to the Facts of This
Case, an Impairment of Rights Guaranteed to Plaintiffs under the First
Amendment to the United States Constitution)**

102~~88~~. Plaintiffs reassert each preceding allegation as if set forth fully

herein.

103<del>89</del>.     The circulation of nomination petitions as defined by 25 P.S. §
2869 of the Pennsylvania Election Code is core political speech protected by the
First Amendment to the United States Constitution.

104<del>90</del>.     Signatures recorded on nomination petitions as defined by 25
P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by
the First Amendment to the United States Constitution.

105<del>91</del>.     Defendants' enforcement of 25 P.S. § 2869 of the Pennsylvania
Election Code requiring witnesses of nomination petition circulation to secure a
sworn affidavit from the likes of a notary public places a severe burden on core
political speech and is subject to strict scrutiny.

106<del>92</del>.     Because the defendants' enforcement of the affidavit
requirement imposed by 25 P.S. § 2869 is not narrowly tailored to further a
compelling governmental interest, the provision, as applied to the facts of this case,
violates the First Amendment to the United States Constitution, as incorporated to
the States by the Fourteenth Amendment to the United States Constitution and
enforced by 42 U.S.C. § 1983.

107<del>93</del>.     Alternatively, because no state regulatory interests justify
defendants' enforcement of the affidavit requirement imposed by 25 P.S. §2869
defendants' enforcement of the provision violates the First Amendment to the

United States Constitution, as incorporated to the States by the Fourteenth

Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

10894.   Defendants are state actors charged with enforcement of 25 P.S.

§ 2869 against plaintiffs.

10995.   Defendants, pursuant to the Pennsylvania Election Code, are

required to reject any nomination petition sought to be filed by plaintiffs if it

contains material errors or defects apparent on the face thereof, or on the face of

the appended or accompanying affidavits; or if it contains material alterations

made after signing without the consent of the signers; or it does not contain a

sufficient number of signatures as required by law.

11096.   Accordingly, defendants enforcement of the affidavit

requirement of 25 P.S. § 2869 is the direct and proximate cause of the impairment

of rights guaranteed to plaintiffs under the First Amendment to the United States

Constitution of the United States for which plaintiffs request relief.

### COUNT V – FACIAL CHALLENGE
### (The Prohibition of Qualified Electors from Signing More than One Nomination Paper Imposed by 25 P.S. § 2868 is a Facial Impairment of Rights Guaranteed to Plaintiffs under the First Amendment to the United States Constitution)

11197.   Plaintiffs reassert each preceding allegation as if set forth fully

herein.

Case 1:16-cv-00074-YK Document 25-1 Filed 02/16/16 Page 37 of 49

112~~98~~.       The circulation of nomination petitions as defined by 25 P.S. §

2869 of the Pennsylvania Election Code is core political speech protected by the

First Amendment to the United States Constitution.

113~~99~~.       Signatures recorded on nomination petitions as defined by 25

P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by

the First Amendment to the United States Constitution.

1~~1~~400.       The prohibition of qualified electors from signing more than

one nomination petition imposed by 25 P.S. § 2868 of the Pennsylvania Election

Code places a severe burden on core political speech and is subject to strict

scrutiny.

1~~1~~150~~1~~.       Because the prohibition of qualified electors from signing more

than one nomination paper imposed by 25 P.S. § 2868 is not narrowly tailored to

further a compelling governmental interest, the provision facially violates the First

Amendment to the United States Constitution, as incorporated to the States by the

Fourteenth Amendment to the United States Constitution and enforced by 42

U.S.C. § 1983.

1~~1~~160~~2~~.       Alternatively, because no state regulatory interests justify

prohibiting qualified electors from signing more than one nomination petition, 25

P.S. § 2868 facially violates the First Amendment to the United States

Constitution, as incorporated to the States by the Fourteenth Amendment to the

United States Constitution and enforced by 42 U.S.C. § 1983.

11703. Defendants are state actors charged with enforcement of 25 P.S.

§ 2868 against plaintiffs.

11804. Defendants, pursuant to the Pennsylvania Election Code, are

required to reject any nomination petition sought to be filed by plaintiffs if it

contains material errors or defects apparent on the face thereof, or on the face of

the appended or accompanying affidavits; or if it contains material alterations

made after signing without the consent of the signers; or it does not contain a

sufficient number of signatures as required by law.

11905. Accordingly, defendants enforcement of 25 P.S. § 2868 is the

direct and proximate cause of the impairment of rights guaranteed to plaintiffs

under the First Amendment to the United States Constitution for which plaintiffs

request relief.

## COUNT VI – AS APPLIED CHALLENGE

**(The Prohibition of Qualified Electors from Signing More than One
Nomination Paper Imposed by 25 P.S. § 2868 is, As Applied to the Facts of
this Case, an Impairment of Rights Guaranteed to Plaintiffs under the First
Amendment to the United States Constitution)**

12006. Plaintiffs reassert each preceding allegation as if set forth fully

herein.

121. The circulation of nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

122. Signatures recorded on nomination petitions as defined by 25 P.S. § 2869 of the Pennsylvania Election Code is core political speech protected by the First Amendment to the United States Constitution.

123. The prohibition of qualified electors from signing more than one nomination petition imposed by 25 P.S. § 2868 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny.

124. Because the prohibition of qualified electors from signing more than one nomination petition imposed by 25 P.S. § 2868 is not narrowly tailored to further a compelling governmental interest, the provision, as applied to the facts of this case, violates the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

125. Alternatively, because no state regulatory interests justify prohibiting qualified electors from signing more than one nomination petition, 25 P.S. § 2868 violates the First Amendment to the United States Constitution, as

incorporated to the States by the Fourteenth Amendment to the United States

Constitution and enforced by 42 U.S.C. § 1983.

126~~12~~.        Defendants are state actors charged with enforcement of 25 P.S.

§ 2868 against plaintiffs.

127~~13~~.        Defendants, pursuant to the Pennsylvania Election Code, are

required to reject any nomination petition sought to be filed by plaintiffs if it

contains material errors or defects apparent on the face thereof, or on the face of

the appended or accompanying affidavits; or if it contains material alterations

made after signing without the consent of the signers; or it does not contain a

sufficient number of signatures as required by law.

128~~14~~.        Accordingly, defendants enforcement of 25 P.S. § 2868 is the

direct and proximate cause of the impairment of rights guaranteed to plaintiffs

under the First Amendment to the United States Constitution for which plaintiffs

request relief.

**IN THE ALTERNATIVE:**

## COUNT VII – EQUAL PROTECTION CLAIM
### (The In-State Witness Requirement for Nomination Petitions)

129~~15~~.        Plaintiffs reassert each preceding allegation as if set forth fully

herein.

130~~16~~.        Defendants, pursuant to a federal injunction and declaration that

the in-state witness restriction is unconstitutional, as applied to the Pennsylvania

Green and Libertarian parties in the circulation of nomination papers, have

abandoned enforcement of the in-state witness requirement for the Affidavit made

part of each nomination paper to the extent that the Affidavit has been re-named

from the "Affidavit of Qualified Elector" in 2014 nomination papers to the

"Affirmation of Circulator" for the 2015 nomination papers.

13117.         Accordingly, circulation of nomination papers to place

candidates for minor political parties and political bodies directly on the

Commonwealth's general election ballot are permitted free from the in-state

witness requirement.

13218.         Plaintiffs who are members of a major political party and/or

who circulate election petitions for major political party candidates remain subject

to the in-state witness requirement for the Affidavit made part of each nomination

petition.

13319.         Defendants' different treatment of, and imposition of different

requirements upon, plaintiffs in the circulation of nomination petitions for

candidates of major political parties versus those who circulate nomination papers

for minor political parties and bodies denies plaintiffs equal protection of the laws

and constitutes a violation of plaintiffs' rights under the Equal Protection Clause of

the Fourteenth Amendment to the United States Constitution.

**COUNT VIII – EQUAL PROTECTION CLAIM**

**(The Notarization Requirement for the Affidavit Made Part of Each
Nomination Petition Paper)**

1~~20~~34. Plaintiffs reassert each preceding allegation as if set forth fully herein.

1~~21~~35. Defendants, pursuant to a federal injunction and declaration that the notarization requirement for each Affidavit made part of each nomination paper page is unconstitutional, as applied to the Pennsylvania Green and Libertarian parties in the circulation of nomination papers, have abandoned enforcement of the notarization requirement for the Affidavit made part of each nomination paper to the extent that the Affidavit has been re-named from the "Affidavit of Qualified Elector" in 2014 nomination papers to the "Affirmation of Circulator" for the 2015 nomination papers.

1~~22~~36. Accordingly, circulation and notarization of nomination papers to place candidates for minor political parties and political bodies directly on the Commonwealth's general election ballot are permitted free from the requirement that Affidavit made part of each page of the nomination paper must be notarized.

1~~23~~37. Plaintiffs who are members of a major political party and/or who circulate election petitions for major political party candidates remain subject to the requirement that they must notarize the Affidavit made part of each nomination petition paper.

42

138<del>24</del>.     Defendants' different treatment of, and imposition of different requirements upon, plaintiffs in the circulation and execution of the Affidavits for nomination petitions for candidates of major political parties versus those who circulate and execute nomination papers for minor political parties and bodies denies plaintiffs equal protection of the laws and constitutes a violation of plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### COUNT IX – EQUAL PROTECTION CLAIM
### (The Requirement that Registered Voters Enrolled in Major Political Parties May Sign Only One Nomination Petition for Each Office)

139<del>25</del>.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

140<del>26</del>.     Defendants, pursuant to a federal injunction and declaration that the requirement that registered voters may only sign one nomination paper for each office is unconstitutional, as applied to the Pennsylvania Green and Libertarian parties in the circulation of nomination papers, have abandoned enforcement of the restriction on all voters from signing more than one nomination paper to the extent that the restriction has been eliminated from defendants' instructions promulgated for nomination papers.

141<del>27</del>.     Accordingly, registered voters seeking to place candidates for minor political parties and political bodies directly on the Commonwealth's

43

general election ballot are permitted to sign an unlimited number of nomination

papers for an unlimited number of minor political party and political body

candidates.

14228.    Plaintiffs Benezet Consulting and Pool who are members of a

major political party and/or who circulate election petitions for major political

party candidates remain subject to the requirement that they may not validly collect

signatures from voters for more than one nomination petition for candidates

seeking nomination from major political parties and access to the

Commonwealth's primary election ballot.

143.  Plaintiff Love is a registered Republican of the Commonwealth of

Pennsylvania who is prohibited from lawfully signing more than one nomination

petition to make sure at least one candidate that she supports is on the

Commonwealth's primary election ballot for her chosen political party.

14429.    Defendants' different treatment of, and imposition of different

requirements upon, plaintiffs in the circulation and signing of nomination petitions

for candidates of major political parties versus those who circulate and sign

nomination papers for minor political parties and bodies denies plaintiffs equal

protection of the laws and constitutes a violation of plaintiffs' rights under the

Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution.

**COUNT X**
**(Violation of the Commerce Clause of the United States Constitution)**

Formatted: Centered, Line spacing: single

145.  Plaintiffs reassert each preceding allegation as if set forth fully herein.

Formatted: Line spacing: single

146.  The Commerce Clause of the United States Constitution, Article I

Section 8 Clause 3, prohibits states from enacting legislation that protects its own

citizens from commercial competition from citizens of other states or that places an

undue burden on interstate commerce.

147.  25 P.S. § 2869 violates the Commerce Clause because it is a

protectionist measure that shields in-state professional circulators from economic

competition by out-of-state professional circulators by imposing undue burdens on

out-of-state professional circulators that in-state professional circulators are not

subjected to and which increase the costs on out-of-state professional circulators

who want to circulate nomination petitions in Pennsylvania giving in-state

professional circulators a built in cost advantage in securing contracts to circulate

nomination petitions for candidates seeking to be placed on the Commonwealth's

primary election ballot.

148.  The business of circulating nomination petitions by professional

circulators is interstate commerce.

149.  The in-state witness requirement of  25 P.S. § 2869 forces out-of-state

professional circulators who desire to contract with candidates who seek to appear

on the Commonwealth's primary election ballot to either: (1) absorb the additional

45

costs imposed by 25 P.S. § 2869, thereby reducing the economic benefit of a contract to circulate nomination petitions in Pennsylvania, or (2) pass along the additional costs imposed by 25 P.S. § 2869 to the candidate placing them at a competitive disadvantage with in-state professional circulators who are not required, simply by virtue of their in-state residency, to suffer the additional costs, both in time, money and efficiency, to secure additional in-state witnesses to execute the Affidavit necessary to lawfully file nomination petitions with defendants.

150.   The in-state witness requirement of 25 P.S. § 2869 serves no legitimate state purpose.

151.   Accordingly, the in-state witness requirement of 25 P.S. § 2869 violates the Commerce Clause of the United States Constitution.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.   Enter declaratory judgment against all challenged provisions of 25 P.S. §§2868, 2869 as detailed in Counts I through IX above, or any combination thereof;

b.   Enter emergency preliminary and permanent injunction, on or before January 25, 2016, enjoining defendants from enforcing the challenged provisions and interpretations of 25 P.S. §§2868, 2869 as detailed in

Counts I through IX above, or any combination thereof, against all

defendants now and in the future;

c.      Immediately enjoin defendants to from continuing to publish

nomination petitions and instructions for the nomination petitions that

do not conform to the declaratory and injunctive relief ordered by this

Court;

d.      Award plaintiffs the cost of this action together with their

reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988;

and,

e.      Retain jurisdiction of this action and grant plaintiffs such other

relief which may in the determination of this Honorable Court to be

necessary and proper.

Dated:      February~~January~~ 16~~19~~, 2016

                           ___/s/ *Paul A. Rossi, Esq*_____
                           Paul A. Rossi, Esq.
                           *Counsel to Plaintiffs*
                           IMPG Advocates
                           873 East Baltimore Pike
                           Suite #705
                           Kennett Square, PA  19348
                           717.961.8978
                           Paul-Rossi@comcast.net

47

Case 1:16-cv-00074-YK Document 25-1 Filed 02/16/16 Page 48 of 49

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on February 16, 2016, he personally caused to be served upon opposing counsel of record a true and correct copy of the foregoing "Second Amended Complaint" via the Court's ECF filing system.

Dated: February 16, 2016

/s/ *Paul A. Rossi*
Paul A. Rossi, Esq.

Formatted: Font: (Default) Times New Roman
Formatted: Space After: 0 pt, Line spacing: single
Formatted: Font: (Default) Times New Roman
Formatted: Indent: Left: -0.25", Right: -0.25", Space After: 0 pt, Line spacing: Double
Formatted: Font: (Default) Times New Roman
Formatted: Font: (Default) Times New Roman
Formatted: Font: (Default) Times New Roman
Formatted: Font: (Default) Times New Roman, 14 pt, Not Bold, Not Italic
Formatted: Font: (Default) Times New Roman
Formatted: Space After: 0 pt, Line spacing: single
Formatted: Font: (Default) Times New Roman
Formatted: Font: (Default) Times New Roman
Formatted: Font: (Default) Times New Roman
Formatted: Font: (Default) Monotype Corsiva
Formatted: Font: (Default) Times New Roman