**EXHIBIT 10**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OPENPITTSBURGH.ORG, et al., ) | |
| ) | |
| Plaintiffs, ) | 2:16-cv-1075 |
| ) | |
| v. ) | **Judge Mark R. Hornak** |
| ) | |
| MARK WOLOSIK, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

AND NOW, this 9th day of August, 2016, upon consideration of Plaintiff's Motions for Preliminary Injunction at ECF No. 10 and ECF No. 11 (converted from requests for temporary restraining orders at ECF No. 30), the stipulations of the parties, the testimony and exhibits entered into the record at the hearing conducted on August, 8, 2016, and the various briefs, responses, and arguments submitted on behalf of all parties to this case, Plaintiff's Motions for Preliminary Injunction are GRANTED IN PART AND DENIED IN PART in the manner (and for the reasons) provided below.

### A. Circulator Registration and Pennsylvania Residency Requirements

1. It is hereby ORDERED that Defendants Mark Wolosik, John P. DeFazio, Rich Fitzgerald, and Samuel Demarco are ENJOINED from invalidating any referendum petitions ("Petition")[1] on the basis that the Petition's <u>circulator</u> was (1) not a resident of the Commonwealth Pennsylvania or (2) not a registered Elector of the Commonwealth of Pennsylvania. Any out-of-state circulator shall be required to record on the certification

---

[1] This includes *both* (1) Petitions submitted by 5:00 on August 9, 2016, pursuant to the original filing deadline and the Court's Order at ECF No. 40 *and* (2) Petitions submitted by the August 15, 2016 deadline created in numeral 2 of this Order.

1

as to each Petitoin for which they are the circulator, their full legal name, their legal residence, their age, and an affirmation that they are citizens of the United States. Any out-of-state circulator shall also record their signature in the appropriate spaces provided within the "Affidavit of Circulator" and may disregard any text imposing requirements enjoined by this Order. Finally, each out-of-state circulator shall file with the corresponding referendum Petition a written statement whereby they unconditionally and irrevocably submit to the personal jurisdiction and venue of the Commonwealth of Pennsylvania as to any administrative or judicial proceeding, hearing, or other process relating to such Petitions or their activities as a circulator.

2. In furtherance of the relief granted by this Order, it is hereby ORDERED that Defendants Mark Wolosik, John P. DeFazio, Rich Fitzgerald, and Samuel Demarco shall, until 5:00 p.m. EDT on August 15, 2016, accept referendum Petitions from Plaintiff OpenPittsburgh.org ("OPO") signed by petitioners between 5:00 p.m. EDT on August 9, 2016 and 4:00 p.m. EDT August 15, 2016. All such Petitions shall be subject to review under and compliance with applicable law, except to the extent otherwise provided by this Order.

3. Pursuant to the oral motion of Defendants Kathleen Kane and Pedro Cortes (in their official capacities as Attorney General and Secretary of the Commonwealth of Pennsylvania) are hereby DISMISSED WITHOUT PREJUDICE as named Defendants in this action pursuant to Fed. R. Civ. Pro. 12(b)(6). However, pursuant to Fed. R. Civ. Pro. 5.1 and 28 U.S.C. § 2403 the Attorney General of the Commonwealth of Pennsylvania is hereby permitted "to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State

2

shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." 28 U.S.C. § 2403. The oral motion of the Attorney General is GRANTED WITHOUT PREJUDICE and the Attorney General is deemed an intervening Defendant in this action in her official capacity. Further, it is hereby ORDERED that neither the Attorney General of the Commonwealth of Pennsylvania nor the Secretary of the Commonwealth of Pennsylvania may take any actions as to OpenPittsburgh.org's Petitions that interfere with the relief granted by this Order.[2]

Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir.1994) (internal quotation marks omitted). The test for such relief is familiar. "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318–19 (3d Cir. 2015). "The failure to establish any element of that test renders a preliminary injunction inappropriate." *Id.* (internal quotations and alterations removed).

Upon consideration of this standard, the Court concludes that Plaintiff has met the requirements for a preliminary injunction enjoining Defendants from enforcing the requirement

---

[2] Secretary Cortes was given the opportunity to participate in the August 8, 2016, hearing via his counsel, who was present at all times. The Court finds and concludes that Secretary Cortes will nonetheless be bound by this Order. Fed. R. Civ. Pro. 65(d)(2)(C).

3

that Petition *circulators* be a resident of the Commonwealth Pennsylvania or a registered Elector of the Commonwealth of Pennsylvania.

Likelihood of Success on the Merits. The Court concludes that Plaintiff OPO has made a strong showing that the residency and registration requirements imposed upon circulators are unconstitutional burdens on the activity of OpenPittsburgh.org under the First Amendment. OpenPittsburgh.org is a small group. It has demonstrated that prior to seeking relief here, it attempted to utilize only in-state, registered elector circulators. However, they have sufficiently demonstrated that these efforts to comply with the statutory law have caused them to fall short of the required signature mark—and surely not for want of effort. OpenPittsburgh.org has also made a record that expanding the pool of circulators will make a real difference in meeting the signature mark. Since the apparent goal of the petitioner signature requirement is to demonstrate a sufficient level of citizen interest in the ballot question (which, essentially, is what each "signing" petitioner attests), rather than showing an outpouring of local circulators, the record reveals actual impairment of the constitutionally-protected interests of this Plaintiff, creating true "injury in fact" standing with no accompanying showing of a compelling state interest, along with demonstrating tangible harm to those interests that are immediate and irreparable (as will be addressed below).

"As the law has developed following the Supreme Court's decisions in *Meyer v. Grant,* 486 U.S. 414 (1988), and *Buckley v. American Constitutional Law Foundation,* 525 U.S. 182 (1999), a consensus has emerged that petitioning restrictions like the one at issue here are subject to strict scrutiny analysis." *Libertarian Party of Virginia v. Judd,* 718 F.3d 308, 317 (4th Cir. 2013) (citing *Yes on Term Limits, Inc. v. Savage,* 550 F.3d 1023 (10th Cir.2008) (applying strict scrutiny to overturn Oklahoma prohibition on nonresident circulators of initiative

4

petitions); *Nader v. Blackwell,* 545 F.3d 459 (6th Cir.2008) (declaring unconstitutional, as failing strict scrutiny, Ohio ban on nonresidents circulating nominating petitions); and *Nader v. Brewer,* 531 F.3d 1028 (9th Cir.2008) (invalidating, pursuant to strict scrutiny analysis, Arizona deadline and residency provisions relating to nominating petitions and circulator-witnesses)). *See also Green Party of Pennsylvania v. Aichele*, 89 F. Supp. 3d 723, 740 (E.D. Pa.), *aff'd,* 103 F. Supp. 3d 681 (E.D. Pa. 2015) (citing *Judd* for this proposition)[3]; *Benezet Consulting LLC v. Cortes*, Case No. 1:16-cv-00074 (M.D. PA Jan. 27, 2016) (concluding that "Plaintiffs cite numerous persuasive authorities that suggest to the Court that they may prevail on at least one of the challenged provisions" but declining relief based upon the lack of a fully developed record). These cases generally concluded that, under a strict scrutiny analysis, the states failed to put forth a compelling state interest in favor of the challenged statutory provision that could not be achieved through less restrictive means. *See e.g. Green Party*, 89 F. Supp. 3d at 742 ("We hold that the In–State Witness requirement is not so narrowly tailored as to effectuate the Commonwealth's compelling interest in fairly resolving signature challenges."); *Morrill v. Weaver*, 224 F. Supp. 2d 882, 900 (E.D. Pa. 2002) ("In light of *Buckley,* 25 P.S. § 2911(d) must be given a constitutional construction, that 'qualified electors' who serve as nominating petition affiants need not be registered voters. If we were to interpret § 2911(d) otherwise, then strict scrutiny of the statute reveals that it is not narrowly-tailored to meet a compelling government interest, it unconstitutionally burdens core First Amendment expression and association, and it

---

[3] Of note *Green Party* analyzes a different statutory provision than the one at issue in this case. Both provisions—25 Pa. Stat. Ann. § 2911 in *Green Party* and 25 P.S. § 2869(a), as applied to the circulation of referendum petitions by 53 Pa.C.S.A. § 2943(a) of the Home Rule & Optional Plan Law in *this case*—impose substantially the same residency and registration requirements on circulators. *See Green Party* 89 F. Supp. 3d at 739–40 ("Section 2911(d) requires the circulator to be a 'qualified elector' of the Commonwealth and attest that he or she has personal knowledge of the validity and circumstances of the recorded signatures which effectively prohibits out-of-state circulators from collecting signatures on nomination papers.") As such, the Opinions cited provide highly persuasive authority to this Court.

5

must be struck down.").[4]  *See also* ECF No. 17 at 5–6 (collecting cases).  Defendants have not convinced this Court to deviate from these consistent holdings here, and the Court concludes that there is not an independent basis to do so.  The requirements imposed by the Court's Order here (that the circulator provide identifying information and submit to the jurisdiction and venue of the Commonwealth) fulfill the legitimate interests in accuracy and circulator accountability raised by the Commonwealth.[5]  Though the Court cannot say for sure that any final judgment in this case will be resolved in the same manner as this Order, Plaintiff has shown a strong likelihood that *as applied to this Plaintiff* (and as to *this* ballot referendum issue) the in-state residency and registration requirements of circulators may not be constitutionally enforced as they are not necessary to fulfill a compelling state interest in the face of actual constitutional harm.

Irreparable Harm.    Plaintiff has correctly noted that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  As such, the when an "action involves the alleged

---

[4] Of note, *Morrill* ruled on two aspects of Pennsylvania election law: (1) a requirement that circulators who verify election petitions are registered voters, and (2) a requirement that circulators who verify election petitions be residents of a specific district.  As to the first requirement—which is much the same as the circulator registration requirement at issue here—the Court concluded that "[i]f the Commonwealth defines 'qualified electors' who are permitted to verify election petition signatures such that the phrase includes only registered voters, then the statute is clearly unconstitutional under *Buckley*." *Id.* at 885.  As to the second requirement, the Court concluded "that the Commonwealth has articulated no compelling or sufficient reason for requiring election petition 'affiants' to be residents of a specific district, as opposed to residents of the Commonwealth at-large." *Id.*  Ten years after *Morrill* was decided, the Pennsylvania Supreme Court examined the portion of that case dealing with a district residency requirement (and state court cases disagreeing with *Morrill*) and concluded that *Morrill* has preclusive effect under *res judicata* principals.  As such, the Supreme Court concluded that "the final decision in *Morrill* is binding upon the Commonwealth. Accordingly, the district residency requirement discerned in Section 2911(d) is unenforceable by the Secretary and the courts of this Commonwealth. Pennsylvania courts shall not enter orders that would be in tension with the permanent injunction issued in *Morrill*." *In re Stevenson*, 615 Pa. 50, 69–70 (2012).

[5] The Court also recognizes that private parties (rather than the Secretary or the Attorney General) challenge nomination paper signatures.  "The Courts of the Commonwealth certainly have a compelling interest in fairly resolving these challenges, but they have other mechanisms better suited to resolving challenges to nomination papers, namely, objectors' reliance on signature comparisons in the SURE system." *Green Party of Pennsylvania*, 89 F. Supp. 3d at 742.

6

suppression of speech in violation of the First Amendment" the Court "focus[es] its attention on the first factor, i.e., whether [Plaintiff] is likely to succeed on the merits of [its] constitutional claim." *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010). As noted above, Plaintiff OpenPittsburgh.org has made a strong showing of likely success on the merits.[6] Nonetheless, the Court concludes that there is an additional element of irreparable harm: Plaintiff's ability to participate in the upcoming election by having its proposed amendment placed on the ballot. Such an interest is not easily quantifiable such that the Court could later provide redress to the Plaintiff for any constitutional violation that may or may not have occurred due to the circulator residency and registration requirements. If the injunction is denied as to these requirements, the Plaintiff may face the very tangible harm of being denied the chance to place its proposed amendment before the eyes of Pittsburgh voters this November, based on election statutes that appear unconstitutional as applied to this small group seeking substantial signatures. Such harm would be irreparable.

Granting Preliminary Relief Will Not Result in Even Greater Harm to the Nonmoving Party.[7] The Commonwealth Defendants contend that granting Plaintiff its requested relief will throw the upcoming election into chaos. Though the Court recognizes the there are certain logistical hurdles that the Allegheny County Board of Elections will face in effectuating this

---

[6] There was no evidence presented as to Plaintiff Witmer, and the rulings set out in this Order are based on the record developed as to OpenPittsburgh.Org.

[7] The Allegheny County Defendants—Mark Wolosik, John P. DeFazio, Rich Fitzgerald, and Samuel Demarco—have taken the position that as the local election officials they will simply apply the Election Code as written, or as otherwise directed by this Court. They are essentially legally ambivalent. The Commonwealth Defendants—Kathleen Kane and Pedro Cortes, each in their official capacities—have asked to be dismissed as "true" Defendants, but the Attorney General has orally sought to intervene to assert the constitutionality of the states at issue. *See* Fed. R. Civ. Pro. 5.1; 28 U.S.C. § 2403. *See also* 71 Pa. Stat. Ann. § 732-204(a)(3) ("It shall be the duty of the Attorney General to uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction."). The Court conditionally granted such motion. As noted, the Commonwealth Defendants are enjoined from taking any actions as to OpenPittsburgh.org's Petitions that interfere with the relief granted by this Order.

7

Order (and the potential for some requests for clarification that the Secretary of the Commonwealth may receive from others considering the implications of this Order) the Court does not believe that the requested relief will result in *greater* harm to the non-moving parties, nor in chaos. Perhaps most importantly, the testimony from the Court's August 8, 2016, hearing clarified that it is much more appropriate to include a petition (or person) on a ballot and later disregard the voting results as to that petition if the injunction decision is overturned, than it is to initially *exclude* a petition and then work to re-include that petition at the eleventh hour. Furthermore, there is no record as to the number of other referendum petitions in home rule units of government that are planned to be submitted in Allegheny County or elsewhere in the Commonwealth, and the parties can only speculate as to how (or even if) this Order will affect those petitions (if there are any). Granting the Plaintiff's requested preliminary injunction as to the residency and registration requirements for circulators will protect recognized First Amendment interests but modestly alter the timing as to how the County Board of Elections operates as to such petitions and may inconvenience some agencies of the Commonwealth. Especially in light of the strong likelihood of success on the merits of the First Amendment claims noted above, the Court concludes that any harm to a nonmoving party does not outweigh the harm to Plaintiff OPO.[8]

---

[8] The Commonwealth Defendants' principal argument is that Plaintiff waited too long to seek the relief granted here. While it is true that sooner would have been better, the Court also concludes that if Plaintiff had raised these challenges at the start of the petition process, they would have been faced with the argument that their claims were premature and speculative. By this Order, the Court orders a remedy that is narrowly and specifically tailored to the actual harm found, is fully consistent with decisions of other federal courts in Pennsylvania as to these issues, and by extending the Petition filing deadline by a week (but only one week) provides such specific relief in a way that will nonetheless permit the sound administration of election processes by the County Defendants. In any event, the facts here are far different than those present in *Benezet Consulting LLC v. Cortes*, Case No. 1:16-cv-00074 (M.D. PA Jan. 27, 2016) and *Bowes v. Indiana Sec'y of State*, 2014 WL 6474097, at *1 (S.D. Ind. Nov. 19, 2014) where the records easily supported the courts applying principals of waiver/ estoppel /laches/etc. to limit or bar a remedial order due to untoward delay.

8

The Public Interest. Though the public has a strong interest in the efficient regulation and processing of referendum petitions, the public also has a strong interest in ensuring that referendum petitioners are not confronted with unconstitutional hurdles, thereby impacting their speech and the choices of the voting public. Both parties agree on the record that "[t]he health and well-being of a democracy depends upon choice at the ballot box," *see* ECF No. 39 at 30, and it is strongly in the public's interest to ensure that this choice is not unconstitutionally restricted. The balance of the public's interest favors the granting of an injunction against the enforcement of residency and registration requirements for circulators.

### B. Circulator Notarization Requirements

4. It is hereby ORDERED that Plaintiff's Motions for Preliminary Injunction are DENIED WITHOUT PREJUDICE as to their request that this Court enjoin enforcement of the requirement that the "Affidavit of Circulator" on a ballot question Petition be executed in front of a notary public or through a sworn affidavit in conformity with 25 P.S. § 2869(a), as applied to the circulation of referendum petitions by 53 Pa.C.S.A. § 2943(a) of the Home Rule & Optional Plan Law. As such, the Court does *not* Order Defendants Mark Wolosik, John P. DeFazio, Rich Fitzgerald, and Samuel Demarco to depart from their *status quo* course of conduct with respect to the acceptance or rejection of any Petition based upon the existence (*vel non*) of a notarized Affidavit of Circulator.

Plaintiff, has not made the same necessary showing of a likely success on the merits as to the notarization requirement in 25 P.S. § 2869(a), as applied to the circulation of their referendum petitions by 53 Pa.C.S.A. § 2943(a) of the Home Rule & Optional Plan Law in this

9

specific case. First, there is not a developed body of case-law favoring Plaintiff's request in this regard. *See, e.g., Green Party*, 89 F. Supp 3d at 745 (holding that a notarization requirement was constitutionally impermissible as applied to the particular plaintiffs, but rejecting plaintiffs' facial challenge because there may be a set of circumstances under which such a requirement could be constitutional"). Second, it is not as clear that strict scrutiny would apply to the notarization requirements at issue here. "The reasoning employed by the Supreme Court in *Buckley* suggests that the level of scrutiny applicable in a case such as this depends on the extent to which the relevant statutory provision burdens the expressive activities of the parties challenging its validity." *Project Vote v. Kelly*, 805 F. Supp. 2d 152, 173 (W.D. Pa. 2011). *See also Burdick v. Takushi*, 504 U.S. 428, 434 (1992) ("[T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.") (internal quotations and citations omitted); *Green Party of Pennsylvania*, 89 F. Supp. 3d at 739 ("In short, we look at the nature of the alleged rights involved and the burdens imposed on them to determine whether the complained-of burden is justified."). The record reflects that the burden from the notarization requirement is much less severe than that imposed by the in-state and registration circulator requirements, and thus a lower standard of constitutional review would apply.

With this in mind, the court concludes that there has not been a sufficient factual showing of irreparable harm necessary to enjoin the enforcement of this provision. From the testimony elicited by the Plaintiff in the August 8, 2016, hearing and the allegations made in Plaintiff's briefing, Plaintiff would be facing a cost of, at most, $1000-$1700 to secure notarizations of all of their Affidavits of Circulators, and Plaintiff may still be able to secure free notarizations from an interested or charitable notary. While this amount of money is nothing to be dismissed, there has been no testimony or factual evidence that this monetary or logistical burden will (actually or effectively) impair Plaintiff from being able to submit its Petitions to the Board of Elections for review or engage in its petition activity. Further, the harm to Plaintiff in this regard is, by and large, monetary, and such harm is easily reparable at law. The notarization of petitions provides for "self-authenticating" documents under Pennsylvania law, something of significance in election challenge litigation and enforcement. Further, Plaintiff has made no factual showing at the requisite level of proof for this Court to conclude that the notarization requirement did or will actually interfere with their exercise of First Amendment rights, and the non-monetary harm asserted was in the Court's estimation essentially speculative.

### C. Requirement that Petition Signatories be Registered Voters

5. It is hereby ORDERED that Plaintiff's Motions are DENIED WITHOUT PREJUDICE as to the entry of injunctive relief as to the requirement under Pennsylvania law that the signatories of Plaintiff's referendum Petitions be registered voters in the Commonwealth of Pennsylvania.

At the August 8, 2016, hearing, Plaintiff clarified that they are not challenging the *signatory* voter-registration requirement under federal law or the Constitution of the United States. They are only challenging this provision as a matter of state statutory interpretation. The Court recognizes the following: (1) the Commonwealth has advanced a reasonable interest that the law be construed as to require signatories to be registered voters—namely, the efficient and accurate verification of any signatures on a Petition; (2) the Pennsylvania Election Code provisions at issue are a complex and intricate statutory scheme over which state courts likely possess special expertise and proficiency; (3) there is an established state court mechanism for the state courts to review any challenges to Petitions submitted by Plaintiff, or other similarly situated individuals/organizations in which these purely state law issues may be effectively litigated; (4) there is an unsettled issue of state election law, s*ee In re Vodvarka*, 2016 WL 3448403, at *10 (Pa. June 23, 2016) (discussing how previous Pennsylvania Supreme Court cases "erroneously confused electors who were qualifiedto vote with electors who were registered to vote"). Therefore, the Court declines to exercise its supplemental jurisdiction over this issue of state statutory law, *see* 28 U.S.C. § 1367(c)(1), and denies Plaintiff's request for a preliminary injunction on these grounds without prejudice.[9] *Cf. Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959) (counseling that federal courts should abstain from deciding unclear issues of state law where the law is "intimately involved with sovereign prerogative").

### D. Bond and Other Matters

---

[9] Of note, it is unclear whether the Attorney General, as a dismissed named party but an intervenor to defend the constitutionality of relevant state statutes, can stake a position on the proper interpretation of the statute at issue here. *See* 28 U.S.C.§ 2403 (". . . the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument *on the question of constitutionality*.") (emphasis added). At this point, however, the question is purely academic.

12

6. It is hereby ORDERED that, pursuant to Fed. R. Civ. P. 65(c), Plaintiffs are ORDERED to post acceptable security in the amount of $500 forthwith.

7. A Telephone Status Conference will be scheduled by further Order to discuss a case management schedule for the prompt resolution of this case.

Mark R. Hornak
United States District Judge

Dated: August 9, 2016

cc: All counsel of record