**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1925
_____

SHAWN WILMOTH; TRENTON POOL;
SIGNATURE MASTERS INC.; BENEZET CONSULTING LLC,[1]
Appellants

v.

SECRETARY OF THE STATE OF NEW JERSEY;
LIEUTENANT GOVERNOR OF NEW JERSEY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-16-cv-01854)
District Judge: Honorable Peter G. Sheridan

_____

Argued January 23, 2018
_____

Before: HARDIMAN, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Filed: April 19, 2018)

Paul A. Rossi, Esq. [**Argued**]
IMPG Advocates Inc.
316 Hill Street
Mountville, PA 17554

_____

[1] This caption reflects the proper spelling for Benezet even though the caption of the complaint contains a typographical error, spelling it as "Benzet."

Lawrence M. Otter, Esq.
P.O. Box 575
Doylestown, PA 18901
　　*Counsel for Appellants*

George N. Cohen, Esq. [**Argued**]
Office of Attorney General of New Jersey
Division of Law, Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
　　*Counsel for Appellee*

OPINION[*]

VANASKIE, *Circuit Judge.*

At issue in this case is a New Jersey law requiring that persons circulating petitions on behalf of candidates for national office be residents of New Jersey. Appellants Shawn Wilmoth and Trenton Pool argue that the law in question, N.J. Stat. Ann. § 19:23-11, imposes an impermissible burden on their First Amendment right to engage in core political speech. The District Court dismissed their complaint for failure to plead a plausible claim for relief. We, however, conclude that Appellants have pleaded facts sufficient to survive dismissal and proceed to discovery. We therefore will vacate the District Court's order and remand for further proceedings consistent with this opinion.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

I.

New Jersey holds a closed primary election during each presidential election cycle. To vote in New Jersey's closed primary, an individual must be (1) registered to vote in New Jersey and (2) a registered member of a political party that appears on the primary election ballot. N.J. Stat. Ann. § 19:23-45. Under New Jersey law, a "political party" is defined as any party that garners at least 10 percent of the votes cast in the last primary election for the office of a member of the General Assembly. *Id.* § 19:5-1. As it stands today, New Jersey recognizes only two political parties: Democratic and Republican.

To be listed on New Jersey's primary election ballot, a prospective presidential candidate must submit a nomination petition to the Secretary of State within sixty-four days of the primary election. *Id.* § 19:23-14. This mandatory petition must contain, *inter alia*, 1,000 signatures of individuals who are both residents of New Jersey and registered members of the same political party as the candidate seeking election.[2] *Id.* § 19:23-8.

---

[2] In addition to the 1,000-signature requirement, New Jersey law mandates that a nomination petition contain the following elements:

> Each such petition shall set forth that the signers thereof are qualified voters of the State, congressional district, county, or county election district, municipality, ward or election district, as the case may be, in which they reside and for which they desire to nominate candidates; that they are members of a political party (naming the same), and that they intend to affiliate with that political party at the ensuing election; that they indorse the person or persons named in their petition as candidate or candidates for nomination for the office or offices therein named, and that they request that the name of the person or persons therein mentioned be printed upon the official

3

A person who obtains signatures on nomination petitions for a prospective candidate is known as a "circulator." New Jersey law requires that a circulator "be *a registered voter in this State* whose party affiliation is of the same political party named in the petition." *Id.* § 19:23-11 (emphasis added). Because the statute restricts circulators to "registered voter[s] in [New Jersey]," it follows that out-of-staters—or, by the same token, in-state residents who are not registered to vote—may only gather signatures on behalf of a prospective candidate if they are accompanied at all times by an in-state witness, *i.e.*, a New Jersey resident who is a registered voter of the same political party as the candidate named in the petition. *Id.* To verify that circulators and/or witnesses are indeed citizens of, and registered to vote in, New Jersey, the Secretary of State retains the right to cross-check nomination petitions with New Jersey's "Statewide voter registration system" ("SVRS"), which serves as the State's official repository for voter registration information. *Id.* § 19:31-31.

Appellants Wilmoth and Pool are self-described "professional circulators of election petitions." (Appellants' Br. 6.) Wilmoth, a registered Democrat residing in Michigan, currently serves as the chief relations officer of Signature Masters, Inc.

---

> primary ballots of their political party as the candidate or candidates for such nomination. The petition shall further state the residence and post-office address of each person so indorsed, and shall certify that the person or persons so indorsed is or are legally qualified under the laws of this State to be nominated, and is or are a member or members of the political party named in the petition.

N.J. Stat. Ann. § 19:23-7.

("SMI"), "a Michigan corporation that specializes in petition management solutions on a national level." (App. 161, 165.) Pool, for his part, is a registered Republican residing in Texas. He currently serves as president of Benezet Consulting ("Benezet"), a Texas-based LLC "engaged in the business of circulating nomination petitions for Republican and Democratic candidates, including candidates for President of the United States."[3] (*Id.* at 163.)

In the months leading up to the 2016 presidential primaries, Wilmoth and SMI were hired by Democratic Presidential candidate Roque ("Rocky") De La Fuente to conduct "petition drives" in New Jersey. (*Id.* at 161–62.) As for Pool, Appellants do not describe the extent of his political work; instead, they note only that Pool sought to circulate petitions in New Jersey, but was unable to do so "because he does not know and/or could not locate any in-state registered voter willing to serve as a witness of the nomination petitions that he wanted to circulate in 2016." (*Id.* at 162.)

On April 4, 2016, Wilmoth and Pool commenced suit under 42 U.S.C. § 1983 in the United States District Court for the District of New Jersey against Appellee New Jersey Lieutenant Governor and Secretary of State Kimberly Guadagno, in her capacity as the State's chief election official.[4] Wilmoth and Pool specifically sought a declaration that N.J. Stat. Ann. § 19:23-11 is unconstitutional under the First and Fourteenth

---

[3] SMI and Benezet are also named parties to this dispute. During oral argument, however, Appellants' counsel conceded that the entities' respective interests are not at stake. Therefore, on remand, the District Court need only focus on the First Amendment rights of Wilmoth and Pool.

[4] For sake of simplicity, we will refer to the Appellee as "New Jersey."

5

Amendments insofar as it prevents out-of-staters like themselves from circulating nomination petitions in New Jersey unless they are accompanied by an in-state, registered voter. Such a requirement, Wilmoth and Pool argued, "place[d] a severe burden" on "core political speech" because it restricted their ability to engage in a number of political activities, including their rights to:

> (a) disseminate their political views unimpeded; (b) choose the most effective mode of conveying their message; (c) associate with the voters of New Jersey in a meaningful way to elicit political change; and (d) . . . secure ballot access for the candidates of their choice in the most effective, efficient and cost-effective manner possible. . . .

(App. 168.)

On March 24, 2017, the District Court issued an oral opinion from the bench granting New Jersey's Rule 12(b)(6) motion to dismiss. Applying strict scrutiny review, the District Court determined that N.J. Stat. Ann. § 19:23-11 was constitutional because, in its view, New Jersey's "goal [of] ensur[ing] the integrity of [its] election [system] through the use of the SVRS . . . clearly outweigh[ed] the adverse effect[s] on Wilmoth and Pool." (App. 31.) This timely appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a decision to grant a motion to dismiss. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 415 (3d Cir. 2006) (citation omitted). "[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be

taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted). To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[5]

### III.

#### A.

It is well established that states have "broad power" to regulate their respective electoral processes. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing U.S. Const. art. I, § 4, cl. 1). Indeed, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). The fact that states are afforded broad power to regulate their elections, however, does not mean that their authority to do so is unrestricted. To the contrary, election-related legislation

---

[5] Although Wilmoth and Pool indicate in their brief that they "seek declaratory and injunctive relief, both facially and as-applied[,]" (Appellants' Br. 3), Appellants' counsel clarified during oral argument that their claim is in fact an as-applied challenge, not a facial challenge. The distinction is important. A facial challenge "seeks to vindicate not only [the plaintiffs'] rights, but those of others who may also be adversely impacted by the statute in question." *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999). An as-applied challenge, by contrast, "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

must conform to the limits imposed by the Constitution. *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).

In reviewing a First Amendment challenge to a state's election law, the Supreme Court has emphasized that "[n]o bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms." *Timmons*, 520 U.S. at 359 (citing *Storer*, 415 U.S. at 730). Instead, under what has come to be known as the *Anderson-Burdick* balancing test, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens" the plaintiff's First Amendment rights. *Burdick*, 504 U.S. at 434. Evaluating these alleged burdens, in turn, requires a "weighing" of several factors, including: (1) the "character and magnitude" of the alleged constitutional injury; (2) "the precise interests put forward by the State as justifications for the burden imposed by its rule[;]" and (3) "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). If, after reviewing these factors, we determine that the challenged regulation imposes "'severe' restrictions" on the plaintiff's First Amendment rights, then the law may be upheld as constitutional only if it is "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). In other words, strict scrutiny applies. However, if we find that the challenged "provision imposes only 'reasonable, nondiscriminatory restrictions'" upon the plaintiff's rights, *id.* at 434 (quoting *Anderson*, 460 U.S. at 788), then "the State need not establish a compelling interest to tip the constitutional scales in its direction." *Id.* at 439. Rather, the

State need only show that its "legitimate interests" in upholding the law "sufficient[ly] . . . outweigh" the burden imposed on the plaintiff. *Id.* at 440.[6]

Our *Anderson-Burdick* inquiry in the instant case is quite straightforward. Since the turn of the century, "a consensus has emerged" that laws imposing residency restrictions upon circulators of nomination petitions "are subject to strict scrutiny analysis." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 316–17 (4th Cir. 2013) (citing *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030–31 (10th Cir. 2008) (overturning, under strict scrutiny review, Oklahoma's prohibition on nonresident circulators of initiative petitions); *Nader v. Blackwell*, 545 F.3d 459, 475–76 (6th Cir. 2008) (finding Ohio's ban on nonresident circulators of nomination petitions unconstitutional under strict scrutiny review); *Nader v. Brewer*, 531 F.3d 1028, 1038 (9th Cir. 2008) (declaring unconstitutional, under strict scrutiny review, Arizona law requiring circulators of nomination petitions to be in-state residents)); *see also Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616–17 (8th Cir. 2001) (applying strict scrutiny review to North Dakota's proscription against nonresident initiative-petition circulators, but concluding that the State had satisfied its burden of proving that the law was narrowly tailored to advance North Dakota's compelling interest in preventing fraud).

---

[6] It is important to note that the *Anderson-Burdick* balancing test concerns only the appropriate level of judicial scrutiny of an election-related regulation, and not whether the interest articulated by the State is compelling. *See Biener v. Calio*, 361 F.3d 206, 214 (3d Cir. 2004) (explaining that "we follow[] the flexible standard set forth in *Anderson v. Celebrezze* for determining the appropriate level of scrutiny in ballot access cases") (citing *Belitskus v. Pizzingrilli*, 343 F.3d 632, 643 (3d Cir. 2003)).

9

Our sister courts' collective agreement on this issue has its genesis in *Meyer v. Grant*, where a unanimous Supreme Court held that Colorado's criminalization of paid petition circulators amounted to an unconstitutional restriction on "core political speech." 486 U.S. 414, 422 (1998). In so holding, the Court emphasized that "the circulation of a petition involves the type of interactive communication concerning political change" for which First Amendment protection "is at its zenith." *Id.* at 421–22, 425 (citations and quotation marks omitted). *Cf. Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 192 (1999) (declaring unconstitutional Colorado's initiative petition laws because they "significantly inhibit[ed] communication with voters about proposed political change, and [were] not warranted by the state interests . . . alleged to justify those restrictions").

The plain language of N.J. Stat. Ann. § 19:23-11 makes clear that one's *residency* is the sine qua non for determining whether he or she may lawfully circulate nomination petitions in New Jersey. Specifically, the relevant portion of the statute states that "[t]he person who circulates the petition shall be a registered voter *in this State* whose party affiliation is of the same political party named in the petition." N.J. Stat. Ann. § 19:23-11 (emphasis added). New Jersey seeks to inoculate the "in this State" language by arguing that the statute, as a whole, should be more appropriately regarded as imposing a "party affiliation" restriction, not a residency restriction. *See, e.g.,* (Appellee's Br. 21) ("[T]his Court should . . . uphold the party affiliation requirement in N.J. Stat. Ann. § 19:23-11 as justified by 'important regulatory interests.'") (quoting *Timmons*, 520 U.S. at 358). This argument, however, is unavailing. Wilmoth and Pool are dues-paying members of the

10

Democratic and Republican Parties, respectively, yet remain barred under N.J. Stat. Ann. § 19:23-11 from circulating nomination petitions in New Jersey. Their party affiliations, in other words, are immaterial; instead, it is the fact that they reside out of state that prevents them from circulating petitions. Because New Jersey's residency requirement for circulators restricts "core political speech," strict scrutiny review is warranted.

### B.

Having determined that strict scrutiny applies, the burden now shifts to New Jersey to prove (1) that its stated interests in upholding the constitutionality of N.J. Stat. Ann. § 19:23-11 are compelling and (2) that the statute is narrowly tailored to advance those interests. *See Burdick*, 504 U.S. at 434; *see also Republican Party of Minnesota v. White*, 536 U.S. 765, 774–75 (2002).

Here, New Jersey argues that N.J. Stat. Ann. § 19:23-11 serves two compelling interests, namely: it "protect[s] political parties from the raiding of their closed primaries and . . . preserv[es] the associational rights of New Jersey political parties." (Appellee's Br. 23) (internal citation omitted). The Supreme Court has held that, as a general proposition, each interest is indeed compelling. *See Rosario v. Rockefeller*, 410 U.S. 752, 761–62 (1973) (accepting New York's compelling interest in safeguarding its elections from "party raiding"); *see also Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214 (1986) ("The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization[s].").

Our inquiry, however, does not end with a determination that "the Government's asserted interests are important in the abstract." *Turner Broad. Sys., Inc. v. FCC*, 512

U.S. 622, 646 (1994). Instead, "[w]hen the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must . . . demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.* (internal citations omitted). Yet here, our ability to assess whether New Jersey's asserted interests are compelling is constrained by the fact that, at this stage of litigation, we "have before us only the allegations . . . in the complaint, orders issued in the action, and other matters of public record." *Free Speech Coal., Inc. v. Att'y Gen.*, 677 F.3d 519, 536 (3d Cir. 2012) (citation omitted). In other words, because the District Court granted New Jersey's motion to dismiss prior to discovery taking place, the parties were not afforded an opportunity to develop an evidentiary record, and thus we have no basis upon which to gauge the validity of the competing interests at stake.

To illustrate why the absence of such a record is ultimately dispositive, consider the Eighth Circuit's decision in *Initiative & Referendum Institute*. There, North Dakota argued that the residency requirement at issue "allow[ed] North Dakota's Secretary of State to protect the petition process from fraud and abuse by ensuring that circulators answer to the Secretary's subpoena power." 241 F.3d at 616. As support for its position, the State "point[ed] to a 1994 incident" involving "[t]wo Utah residents" who fled the State after playing a role in "petition irregularities" that resulted in some 17,000 signatures being invalidated, a "matter that was never fully resolved." *Id.* Relying on this evidence, the court accepted North Dakota's contention that the State indeed had "a compelling interest in preventing fraud . . . ." *Id.* Here, by contrast, New Jersey has not

12

been afforded an opportunity to present evidence showing that the State's goals of preventing party raiding and preserving the associational rights of New Jersey political parties are sufficiently compelling reasons to uphold the constitutionality of N.J. Stat. Ann. § 19:23-11. *See also Krislov v. Rednour*, 226 F.3d 851, 866 n.7 (7th Cir. 2000) ("[I]f the use of non-citizens were shown to correlate with a high incidence of fraud, a State might have a compelling interest in further regulating noncitizen circulators.").

Similarly, we also have no basis upon which to determine whether the New Jersey law prohibiting registered, out-of-state voters from circulating nomination petitions is narrowly tailored to protect the State's interests. For example, to help ensure the integrity of New Jersey's election system, Wilmoth and Pool each "have agreed to submit to the jurisdiction of [New Jersey] for purposes of any investigation and/or prosecution of petition fraud . . . ." (Appellants' Br. 13.) Submitting to a state's jurisdiction for purposes of subpoena enforcement, in turn, has been accepted as a less restrictive means of achieving the same goal. *See, e.g., Chandler v. City of Arvada*, 292 F.3d 1236, 1244 (10th Cir. 2002) (holding that Appellee failed to prove narrow tailoring because it could achieve its "compelling interest in policing its petition process" by requiring "the prospective circulator [to] agree to submit to [its] jurisdiction . . . for the purpose of subpoena enforcement"); *Libertarian Party of Virginia*, 718 F.3d at 318 ("[R]equiring non-residents to sign agreements providing their contact information and swearing to return in the event of a protest is a more narrowly tailored option.") (quoting *Yes on Term Limits*, 550 F.3d at 1030). Thus, to survive strict scrutiny, New Jersey must "show[] that [Appellants'] proposed less restrictive alternatives are less effective than" N.J. Stat. Ann.

13

§ 19:23-11 in achieving the State's asserted interests. *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017), *as amended* (June 26, 2017) (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)). Because satisfying this burden necessarily requires recourse to an evidentiary record, we have no choice but to remand for further proceedings.

IV.

The complaint in this action presents a plausible claim that the New Jersey law infringes out-of-state circulators' First Amendment rights. Accordingly, we will vacate the order dismissing this action and remand to allow the parties to develop an appropriate factual record for the purposes of determining whether the New Jersey law does in fact violate the Appellants' constitutional rights.