IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENEZET CONSULTING, LLC, et al.,** | : | |
| **Plaintiffs** | : | |
| | : | No. 1:16-cv-00074 |
| | : | |
| **v.** | : | (Judge Kane) |
| | : | |
| **KATHY BOOCKVAR and** | : | |
| **JONATHAN MARKS,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court is the motion to amend/correct the judgment (Doc. No. 77) entered by this Court on January 13, 2020 in its Memorandum and Order granting in part and denying in part the parties' motions for summary judgment in the above-captioned action (Doc. Nos. 74, 75), pursuant to Federal Rule of Civil Procedure 59(e), filed by Plaintiffs Benezet Consulting, LLC ("Benezet"), Trenton Pool ("Pool"), and Carol Love ("Love") (collectively referred to herein as "Plaintiffs"). For the reasons that follow, the Court will deny Plaintiffs' motion. (Doc. No. 77.)

### I.    BACKGROUND[1]

Plaintiffs initiated the above-captioned action on January 14, 2016 by filing a complaint against Defendants Pedro A. Cortes, in his official capacity as the Secretary of the Commonwealth of Pennsylvania, a position currently held by Defendant Kathy Boockvar, and Jonathan Marks, in his official capacity as Commissioner for the Bureau of Commissions, Elections and Legislation (referred to together herein as "Defendants"), challenging the

---

[1] The Court previously summarized the relevant procedural and factual details of the background of this case when it disposed of the parties' motions for summary judgment in its January 13, 2020 Memorandum and Order that are the subject of the instant motion. (Doc. Nos. 75, 76.) Accordingly, the Court incorporates its prior background discussion herein.

constitutionality of various portions of the Commonwealth of Pennsylvania's Election Code (the "Election Code") that pertain to Pennsylvania's primary election for President of the United States. (Doc. No. 1.) Most relevant to the instant proceedings, Plaintiffs challenged the constitutionality of a provision of the Election Code, codified at 25 P.S. § 2868, which prohibits out-of-state circulators from witnessing nomination petitions (the "In-State Witness Requirement") for purposes of Pennsylvania's primary elections. More specifically, Plaintiffs alleged that the In-State Witness Requirement violated the First Amendment of the United States Constitution, both facially and as-applied to Plaintiffs. (Doc. No. 1.)[2]

The Court previously summarized Plaintiffs' involvement in presidential elections as follows:

> Benezet is a Texas limited liability company, of which Pool is the only member, that was formed in 2014 and is involved in the business of gathering signatures for political campaigns. (Doc. No. 46 ¶¶ 1-3.) Benezet's business specifically deals with "political consulting, ballot access[,] and signature gathering" (id. ¶ 4), and Benezet became involved in gathering signatures in 2006 (id. ¶ 6). Pool is a registered Republican in the state of Texas (id. ¶ 99) . . . .
>
> Benezet took part in signature-gathering efforts in Pennsylvania as part of the 2016 presidential election. (Id. ¶¶ 5, 7.) In doing so, Benezet hired signature gatherers as independent contractors, consistent with its past practice. (Id. ¶ 7.) As part of their efforts to gather signatures, "Benezet's circulators . . . move[] around the country as needed to meet individual state deadlines" (id. ¶ 9), and its "contractors are paid on a per signature basis" (id. ¶ 10).

(Doc. No. 74 at 5.)[3]

---

[2] In addition, Plaintiffs brought alternative challenges to the constitutionality of the In-State Witness Requirement under the Equal Protection Clause and the Commerce Clause. (Doc. No. 1.) The Court, however, did not address the merits of these alternative arguments in light of its conclusion that Plaintiffs were entitled to summary judgment on their as-applied challenge to the In-State Witness Requirement under the First Amendment. (Doc. No. 74 at 28 n.21.)

[3] Plaintiffs also included Plaintiff Carol Love ("Love"), a registered Republican and resident of Pennsylvania. (Id. at 5) (citing Doc. No. 46 ¶ 83).

Following the close of discovery, the parties filed motions for summary judgment, and both Defendants and Plaintiffs moved for summary judgment on Plaintiffs' challenge to the In-State Witness Requirement. (Doc. Nos. 41, 44.) The Court granted Defendants' motion and denied Plaintiffs' motion as to Plaintiffs' facial challenge to the In-State Witness Requirement (Count I) and granted Plaintiffs' motion and denied Defendants' motion as to Plaintiffs' as-applied challenge to the requirement. (Doc. No. 75 at 1.) In so holding, the Court reasoned that:

> [T]he Court finds that the In-State Witness Requirement is not narrowly tailored to advance the Commonwealth's interest in preventing fraud and maintaining the integrity of the election process, as applied to Benezet and Pool in the context of the Republican primary election. It bears noting that Pool "has expressly agreed to consent to the jurisdiction of the Commonwealth . . . for any investigation and/or prosecutorial action related to the circulation of election petitions in the Commonwealth" (Doc. No. 45 at 16), especially in light of the case law in which "[f]ederal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes of subpoena enforcement, and . . . have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result." See Brewer, 531 F.3d at 1037 (citing Chandler v. City of Arvada, Colo., 282 F.3d 1236, 1242-44 (10th Cir. 2002)). Moreover, in Wilmoth, the Court of Appeals specifically noted that "[s]ubmitting to a state's jurisdiction for purposes of subpoena enforcement . . . has been accepted as a less restrictive means of achieving the [] goal" of preventing election fraud. See Wilmoth, 731 F. App'x at 104 (citing Chandler, 292 F.3d at 1244). The Court is mindful of this instruction in the case at bar. The relevant evidence of record does not demonstrate that Benezet and Pool's submission to the Commonwealth's jurisdiction would be ineffective for purposes of maintaining the integrity of the election process in the Commonwealth. Here, the Commonwealth's existing measures for safeguarding against voter fraud may be applied with equal force to Benezet and Pool as it would in regard to Pennsylvania residents because Benezet and Pool presumably "will possess the same incentive as their resident counterparts to appear at the Commonwealth's request and answer any questions concerning the petitioning process." See Judd, 718 F.3d at 318.20. In light of the fact that the Commonwealth has in place an existing remedy for potential voter fraud that is less offensive to Plaintiffs' First Amendment rights, the Court finds that Defendants have not met their burden, for purposes of strict scrutiny, of demonstrating that Benezet and Pool's submission to the jurisdiction of the Commonwealth does not advance the Commonwealth's compelling interest in maintaining the integrity of the election process. Accordingly, the In-State Witness Requirement, as applied to Benezet and Pool

> with respect to Republican candidates, does not pass strict scrutiny and, as a result, violates the First Amendment.
>
> In light of the above conclusion, the Court turns to the question of the appropriate remedy to be fashioned, and, in turn, addresses the fact that Plaintiffs have asserted both facial and as applied challenges to the In-State Witness Requirement.  Despite Plaintiffs' inclusion of facial challenges in the second amended complaint, however, Plaintiffs' briefing appears to contemplate only an as-applied challenge, for the arguments asserted therein ultimately concern the constitutionality of the Election Code as it applies to Plaintiffs.  (Docs. 45 at 9-29, 53 at 27- 35.)  Even if the Court were to consider Plaintiffs' filings as having pursued a facial challenge to the In-State Witness Requirement, though, for Plaintiffs to be successful in this regard, they "must establish that no set of circumstances exists under which [the requirement] would be valid."  See Heffner v. Murphy, 745 F.3d 56, 65 (3d Cir. 2014) (quoting United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011)).  Upon review of the relevant evidence of record, undisputed facts, the parties' arguments, and the governing law, the Court is unconvinced that Plaintiffs have satisfied this "particularly demanding standard." Id. (citing United States v. Salerno, 481 U.S. 739, 745 (1987)).  The Court concludes, therefore, that Defendants are entitled to summary judgment as to Count I of the second amended complaint, which asserts a facial challenge under the First Amendment, while Plaintiffs are entitled to summary judgment as to Count II of the second amended complaint, which sets forth an as-applied challenge under the First Amendment.  Accordingly, the Court deems the Pennsylvania Election Code's In-State Witness Requirement unconstitutional as applied to Benezet and Pool, and Defendants will be enjoined from enforcing this requirement as to Benezet and Pool in the context of the 2020 Republican primary election for President of the United States.

(Doc. No. 74 at 26-29) (footnotes omitted).  Additionally, the Court explained its rationale for limiting the as-applied relief to the Republican primary in light of Plaintiff Pool's status as registered Republican as follows:

> "[P]arty raiding" is inapplicable to the case at bar only insofar as Pool is circulating on behalf of Republican candidates.  As it pertains to any circulation by Pool on behalf of candidates from other parties, however, the Court finds that De La Fuente governs the instant case because, as noted supra, the Court of Appeals indicated therein that one does not have a constitutional right to associate with a party to which he does not belong.  See De La Fuente, 751 F. App'x at 274.

(Id. at 26 n.19.)

In accordance with its discussion above, the Court ordered, in pertinent part, that:

4

> Plaintiffs' motion for summary judgment (Doc. No. 44) is GRANTED as to Count II of Plaintiffs' second amended complaint (Doc. No. 25), and the Clerk of Court is directed to enter judgment in favor of Plaintiffs and against Defendants as to Count II of the second amended complaint (Doc. No. 25); [and]
>
> Defendants are enjoined from enforcing the state residency requirement for witnesses of nomination petitions, set forth in 25 P.S. § 2869, as to Plaintiffs Benezet Consulting, LLC and Trenton Pool, for purposes of the 2020 Pennsylvania Republican primary election for President of the United States[.]

(Doc. No. 75 at 1.)  Having disposed of the parties' motions for summary judgment such that no claims remained for trial, the Court then directed that the case be closed.  (Id. at 2.)

On February 10, 2020, following the entry of the order discussed above, Plaintiffs filed the instant motion, which is styled as a motion to amend/correct pursuant to Federal Rule of Civil Procedure 59(e).  (Doc. No. 77.)  Through this motion, Plaintiffs request that this Court alter the terms of its judgment as to their as-applied challenge to the In-State Witness Requirement so as to mirror the text of an order entered in another action in this Court, Accelevate 2020, LLC v. Boockvar, docketed at 1:20-cv-00128.  In Accelevate, the plaintiffs—who include circulators registered with the Democratic Party—filed a complaint on January 24, 2020 seeking a judgment declaring the In-State Witness Requirement unconstitutional as it applied to their circulation activity for a candidate then participating in Pennsylvania's Democratic primary election for President of the United States.  See 1:20-cv-00128, Doc. No. 1.  In granting the plaintiffs' motion for an emergency temporary restraining order, the Court held that "Defendants are enjoined from enforcing the state residency requirement for witnesses of nomination petitions, set forth in 25 P.S. § 2869, as to Plaintiffs Accelevate 2020, LLC and Joe Richard Pool, for purposes of the 2020 Pennsylvania Democratic primary election for

President of the United States." See id., Doc. No. 14 at 8.  The Court subsequently held a status conference with the parties during which the parties agreed to confer as to the specific terms of a stipulation governing the plaintiffs' involvement with the primary election, which resulted in the following stipulation that Court approved:

> [I]t is hereby ORDERED that Defendants are enjoined from rejecting any nomination petition from Accelevate 2020 LLC and Joe Richard Pool submitted for purposes of the 2020 Pennsylvania Democratic primary election for President of the United States; provided, however, that Accelevate 2020 LLC and Joe Richard Pool shall file with each nomination petition a written statement, subject to the penalties of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), whereby: (1) they unconditionally and irrevocably submit to the personal jurisdiction and venue of the Commonwealth of Pennsylvania for any administrative or judicial proceeding, hearing, or other process relating to any petition that they submit; (2) they state they are members of the Democratic party; (3) they provide full legal name, address, phone number, and email address; (4) they unconditionally and irrevocably agree to present themselves at any administrative or judicial proceeding, hearing, or other process relating to petitions that they submit; and (5) they unconditionally and irrevocably agree to update Defendants of their physical location from the time that they submit petitions until the close of the objection period.

Id., Doc. No. 16-1 at 1.

In this action, Plaintiffs have filed the instant motion to amend/correct this Court's Order to mirror that of the Order issued in Accelevate described supra (the "Accelevate Order").  (Doc. No. 77.)  Plaintiffs describe the basis for this motion as follows:

> Plaintiffs have tracked the requested amendment to the judgment granted as to Count II of Plaintiffs' second amended complaint based on the text of the Stipulated Order filed today by Defendants Boockvar and Marks and Plaintiffs Accelevate 2020, LLC and Joe Richard Pool in Accelevate 2020 LLC, et al., v. Boockvar et al., 1:20- cv-0128 (M.D. Pa., Judge Kane), a related action filed after this Court issued its judgment in this litigation in an effort to extend the relief granted to Plaintiffs in this action to other out-of-state circulators/witnesses of nomination petitions in Pennsylvania for the 2020 election cycle.  See[] Exhibit A.  It is this redundant litigation that the requested amendments are designed to render moot in future election cycles.

(Id. at 1-2.)  Plaintiffs request that the Court amend its Order as to Plaintiffs' challenge to the In-State Witness Requirement set forth in Count II of Plaintiffs' second amended complaint so that the Order reads, in pertinent part, as follows:

> 3. Plaintiffs' motion for summary judgment (Doc No. 44) is GRANTED as to Count II of Plaintiffs' second amended complaint (Doc. No. 25), and the Clerk of Court is directed to enter judgment in favor of Plaintiffs and against Defendants as to Count II of the second amended complaint (Doc. No. 25);
>
> 4. Defendants are enjoined from enforcing the state residency requirement for witnesses of nomination petitions, set forth in 25 P.S. § 2869, as to witnesses of nomination petitions willing to file with each nomination petition a written statement, subject to the penalties of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), whereby: (a) they unconditionally and irrevocably submit to the personal jurisdiction and venue of the Commonwealth of Pennsylvania for any administrative or judicial proceeding, hearing, or other process relating to any petition that they submit; (b) they state they are members of the same political party as the candidate named on the nomination petition; (c) they provide their full legal name, address, and phone number; (d) they unconditionally and irrevocably agree to present themselves at any administrative or judicial proceeding, hearing, or other process relating to petitions that they witnesses; and (e) they unconditionally and irrevocably agree to update the Commonwealth of their physical location from the time that they submit the nomination petitions until the final adjudication of any petition they witnessed.

(Id. at 2-3.)  Having been fully briefed (Doc. Nos. 80, 83, 86), Plaintiffs' motion is ripe for disposition.

## II.  LEGAL STANDARD

A party may file a motion for reconsideration under Federal Rule of Civil Procedure 59(e), which provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  See Fed. R. Civ. P. 59(e).  A motion for reconsideration is a device of limited utility, which may not be used "to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant."  See Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citation omitted).  Rather, a court may alter or amend its judgment only where the party seeking

7

reconsideration shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." See Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Reconsideration is an extraordinary remedy that should be granted sparingly. See D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

**III.   DISCUSSION**

    **A.   Arguments of the Parties**

        **1.   Plaintiffs' Arguments in Support of Rule 59(e) Relief**

In support of their motion, Plaintiffs assert that they filed this motion "not because the judgment of the [C]ourt was in error, but precisely because the Court properly adjudicated that the ban on out-of-state circulators was unconstitutional to the extent that the prohibition is not narrowly tailored to advance the Commonwealth's legitimate interests to prevent petition fraud." (Doc. No. 80 at 1.) According to Plaintiffs, "because the Court properly ruled that the Commonwealth's ban on out-of-state circulators affiliated with the same political party as the candidate named in the nomination petition violates rights guaranteed under . . . the United States Constitution[,] [] the judgment with respect to Count II of Plaintiffs' amended complaint should be tweaked to extend to all out-of-state circulators affiliated with the same political party as the candidate named in the nomination petition willing to submit to the subpoena power of the Commonwealth." (Id. at 1-2.) To that end, Plaintiffs assert that they have set forth the instant request "solely to foreclose the need for Plaintiffs, and all other similarly situated professional out-of-state circulators, to continually need to file serial lawsuits in this [C]ourt to establish their

right to freely circulate nomination petitions in the Commonwealth of Pennsylvania for each four[-]year election cycle." (Id. at 2.)

More specifically, Plaintiffs rely on the "manifest injustice" prong of Rule 59(e) in support of their motion. (Id. at 4.) As stated by Plaintiffs:

> Based on this Court's recognition that the ruling in this action granting Count II of Plaintiffs' amended complaint compelled the Court to grant the requested temporary restraining order in Accelevate 2020, LLC, with the parties thereafter entering into a Stipulated Order voluntarily extending the TRO to the entire circulation period for nomination petitions, it is clear that unless the requested amendment to the Court's judgment is granted, there will be a continual need for professional out-of-state circulators to initiate new litigation in this Court to cover their future efforts to circulate nomination petitions in the Commonwealth. In fact, Plaintiffs in this action will file a new action to cover the 2024 election cycle later this year. Furthermore, the litigation in Accelevate 2020, LLC is pending and will need to be fully litigated unless the Plaintiffs' instant motion is granted.

(Id.) Further, in support of this point, Plaintiffs maintain that "[t]o require circulators to go to the expense to initiate new litigation every four years to protect rights already recognized by this Court's adjudication of this action is a sufficient basis for this Court to amend the judgment of the Court as to Count II . . . to prevent manifest injustice under Rule 59(e)." (Id. at 5.) Lastly, Plaintiffs state that "while judicial economy from the standpoint of the Court's own docket management may not conform with the requirement that Plaintiffs show that the requested amendment will prevent a manifest injustice, it is the flip side of the manifest injustice that will be occasioned by the constant need for professional out-of-state circulators to initiate litigation every four years . . . to protect rights that this Court has recognized." (Id.)

### 2. Defendants' Arguments in Opposition to Rule 59(e) Relief

In opposition, Defendants assert that the Court should deny Plaintiffs' motion because Plaintiffs do not: "offer any new evidence"; "claim that there has been an intervening change of law"; or "proffer any other extraordinary circumstance" for purposes of Rule 59(e). (Doc. No.

9

83 at 1.)  Further, Defendants state that as to Plaintiffs' reliance on the "manifest injustice" prong, Plaintiffs simply restate arguments already presented to the Court in earlier briefing and ultimately "want this Court not to amend its decision but to reverse its decision[] denying Plaintiffs' facial constitutional challenge to the In-State Witness Requirement[] and conclude that this provision of the Election Code is facially unconstitutional." (Id. at 2.)  According to Defendants, this request is problematic because "Plaintiffs ask for this extraordinary relief with nothing substantively new to offer" and "Plaintiffs argued their position before and lost[,]" but now attempt to reassert those arguments to the Court through the instant motion that "masquerad[es] as a Rule 59 motion."  (Id.)

Defendants further posit that "Plaintiffs' claim of 'manifest injustice' amounts to nothing more than a disagreement with this Court's ruling" regarding their facial challenge to the In-State Witness Requirement, arguing that Plaintiffs' proffered conception of "manifest injustice" does not comport with authority delineating the meaning of "manifest injustice" for purposes of Rule 59(e), which generally contemplates circumstances in which a court "overlooked some dispositive factual or legal matter that was presented to it." (Id. at 7) (quoting Greene v. V.I. Water & Power Auth., No. 1:06–cv–11, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012)).  As explained by Defendants, Plaintiffs do not meet this standard because they "do not posit that the Court overlooked a dispositive fact or legal question—nor could they given the extensive record developed and briefing that occurred[,]" but, rather, Plaintiffs "argue that the Court's opinion denying the facial challenge . . . is a manifest injustice because similar as-applied relief was afforded in Accelevate." (Id.) (internal quotation marks omitted).  Moreover, Defendants take issue with Plaintiffs' request that the judgment as to Count II be "tweaked" on the grounds that Plaintiffs' request "is hardly a 'tweak,'" given that Plaintiffs ultimately request "that this Court—

10

after refusing to do so the first time—[] now facially nullify the statute in favor of any future out-of-state circulator in any election for any candidate." (Id. n.4.)

In addition, Defendants state that Plaintiffs' references to a "continual need" for out-of-state circulators to initiate new litigation on this issue and the possibility of continuing to litigate Accelevate are misplaced. As to an ostensible need for additional litigation for other out-of-state circulators, Defendants state that Plaintiffs fail to "take into account the burden attendant to mounting a facial challenge," and this Court previously noted that Plaintiffs failed to establish that there are "no set of circumstances" under which the In-State Witness Requirement would be valid. (Id. at 8.) Defendants refer to a recent decision of the Commonwealth Court of Pennsylvania that was issued with respect to two distinct actions, Alkassmi v. Boockvar, No. 135 M.D. 2020 (Pa. Commw. Ct. 2020), and Wyatt v. Boockvar, No. 137 M.D. 2020 (Pa. Commw. Ct. 2020),[4] which was issued subsequent to the entry of the temporary restraining order in

---

[4] In Alkassmi and Wyatt, in which the Commonwealth court issued an opinion on March 6, 2020, the Commonwealth Court considered petitions for writs of mandamus by "[c]andidates [] seeking placement on primary ballots for election as delegates to the 2020 Republican National Convention" whose "nomination petitions were rejected because the circulators' affidavits were invalid due to 'out of state circulators.'" (Doc. No. 83-1 at 2.) Specifically, Alkassmi and Wyatt sought writs of mandamus to compel election officials of the Commonwealth of Pennsylvania to accept their nomination petitions on the basis that the In-State Witness Requirement violated their First Amendment rights as candidates, relying on this Court's decision in the instant action as well as Accelevate. (Id. at 6.)

The Commonwealth Court, however, denied the petitions for writs of mandamus and held in pertinent part that "Benezet is factually is factually distinguishable" because the Alkassmi and Wyatt "are solely seeking office in their state districts" and "are required to obtain 250 valid signatures to become a candidate for delegate[,]" and "[t]herefore, this Court questions whether the right to retain out-of-state circulators is as important a right here as in Benezet, when in this instant matter, the candidates were seeking to become delegates representing the interests of Pennsylvania alone." (Id. at 7.) The Commonwealth Court also reasoned that the record before it "contain[ed] no indication that the candidates' out-of-state circulators either consented or offered to consent to submit themselves to the jurisdiction of Pennsylvania courts in the event of future challenges to signatures they gathered." (Id. at 8.) In sum, the court stated that the

Accelevate, which "demonstrates that not all out-of-state circulators will timely consent to the Commonwealth's jurisdiction, let alone . . . provide the same assurances as those provided" in Acclevate.  (Id. at 8-9.)[5]  Defendants note that while in both Accelevate and Benezet, "the as-applied relief was afforded to those particular parties because of the unique assurances from those specific Plaintiffs who brought the challenges . . . [i]t is not clear that the other 'professional' circulators would offer those assurances . . . and Plaintiffs have adduced no new evidence to demonstrate that all other 'professional' circulators would, in fact, agree to the same requirements in every election for every candidate from here to eternity." (Id. at 9-10.)  Finally, as to Plaintiffs statement that the prospect of continuing litigation in Acclevate warrants granting the instant motion, Defendants state that such a comment is "of no moment" because "[i]nconvenience or burden on the [p]arties and the Court in handling subsequent challenges to the constitutionality of a statute is not grounds to amend a prior judgment." (Id. at 10.)

---

candidate-petitioners "failed to provide the necessary factual support to establish Benezet's application." (Id.)

[5] In reply, Plaintiffs assert that Alkassmi and Wyatt are inapplicable to the instant motion because they involved neither a challenge to the as-applied relief granted by this Court nor the requested amendment to this Court's judgment that is presently at issue. (Doc. No. 86 at 6-7.) Plaintiffs also state that "the underlying unconstitutionality of the [I]n-[S]tate [W]itness [R]equirement was not adjudicated by . . . the Commonwealth Court because the action merely sought to extend the as[-] applied relief granted to Plaintiffs in this action to all other similarly situated out-of-state circulators based on Equal Protection concerns, and not under the First Amendment." (Id. at 7.)  Additionally, Plaintiffs state that the Commonwealth Court's opinion in Alkassmi and Wyatt is unpublished and, therefore, lacks any precedential value, and that Defendants' citation to this opinion "is clearly employed to bolster their argument that facial relief should not be granted." (Id. at 7-8.)

      Plaintiffs also state that in those Commonwealth Court proceedings, their counsel (who is also counsel for Plaintiffs in the case at bar), testified as a witness with respect to the fact "that the circulators in Alkassmi and Wyatt could not submit to the Commonwealth's jurisdiction because . . . the Commonwealth did not extend the opportunity to participate in the as[-]applied relief granted to [] Plaintiffs in this action for the 2020 primary election[,]" and "did not testify that the circulators in the Commonwealth Court case would not submit to the Commonwealth's jurisdiction, just that they had not" because they were not permitted to do so through the subject as-applied relief.  (Id. at 8-9.)

### B. Whether Plaintiffs' Motion Should Be Granted

Upon consideration of Plaintiffs' motion and the parties' arguments in accordance with the governing legal standard, the Court concludes that Plaintiffs have not met their burden in establishing entitlement to relief under Rule 59(e) and, accordingly, will deny Plaintiffs' motion. First, the Court agrees with Defendants that Plaintiffs' requested amendment may be viewed as asserting, in essence, a renewed facial challenge to the In-State Witness Requirement under the First Amendment. (Doc. No. 83 at 7 n.4) (stating that while "Plaintiffs specifically request that 'the judgment with respect to Count II of Plaintiffs' amended complaint should be tweaked to extend to all out-of-state circulators affiliated with the same political party as the candidate named on the nomination petition willing to submit to the subpoena power of the Commonwealth . . . [t]his is hardly a 'tweak'" in that "Plaintiffs' request is that this Court—after refusing to do so the first time—should now facially nullify the statute in favor of any future out-of-state circulator in any election for any candidate"). Although Plaintiffs request that the Court's Order be amended in accordance with Accelevate to render the relief as to Count II of Plaintiffs' second amended complaint to be made permanent, Plaintiffs ultimately request that this Court broaden the scope of its as-applied relief so as to effectively grant facial relief, and this Court previously rejected such an argument when it disposed of the parties' motions for summary judgment, as explained supra. Such a request is an improper basis for Rule 59(e) relief. See, e.g., Hubbell v. World Kitchen, LLC, 717 F. Supp. 2d 494, 496-97 (W.D. Pa. 2010) (stating that "[b]ecause of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided" (quoting Williams v. City of Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998))). Moreover, such a request importantly ignores the fact that

the Court's decision to grant Plaintiffs as-applied relief was based on a developed factual record, which the Third Circuit deemed necessary with respect to the given First Amendment challenge involved in this case.  See Wilmoth v. Sec'y of N.J., 731 F. App'x 97, 104 (3d Cir. 2018) (describing the "opportunity to develop an evidentiary record" as a "basis upon which to gauge the validity of the competing interests at stake").  The Court, therefore, finds that the requested amendment is not a proper basis for Rule 59(e) relief in this instance.

Second, Plaintiffs' reliance on the "manifest injustice" aspect of Rule 59(e) lacks merit because Plaintiffs' dissatisfaction with any potential need for additional litigation as to future primary elections does not implicate the "manifest injustice" prong of a motion for reconsideration.  As an initial matter, the Court observes that Plaintiffs fail to cite any relevant authority in support of the proposition that additional litigation as to subsequent elections, ipso facto, constitutes a manifest injustice for purposes of their motion for reconsideration.  (Doc. Nos. 80 at 3-5, 86 at 3-5.)  Moreover, to the extent that Plaintiffs assert that the prevention of duplicative litigation may be grounds for granting a motion for reconsideration so as to avoid a manifest injustice, the Court cannot find at this juncture that there is a potential for duplicative litigation here because, as this Court has already observed and Defendants correctly note, examining the merits of Plaintiffs' First Amendment challenge to the In-State Witness Requirement requires the development of a specific factual record on which the Court may ascertain the ability of the Commonwealth to further its interest in preventing voter fraud while ensuring that the First Amendment rights of the circulators are not impermissibly infringed.  See Doc. No. 74 at 26-28 (concluding that "[t]he relevant evidence of record does not demonstrate that Benezet and Pool's submission to the Commonwealth's jurisdiction would be ineffective for purposes of maintaining the integrity of the election process in the Commonwealth" and that "the

In-State Witness Requirement, as applied to Benezet and Pool with respect to Republican candidates, does not pass strict scrutiny and, as a result, violates the First Amendment"); see also Doc. No. 83 at 9 & n.5 (arguing in opposition to the instant motion that in Accelevate, as-applied injunctive relief was proper where the plaintiffs made "specific assurances" regarding submission to the jurisdiction of the Commonwealth for purposes of circulation-related activity and that in that case, "[t]he record developed evidenced that such assurances were, and are, necessary"). Finally, the Court acknowledges the authority cited previously herein indicating that motions for reconsideration are to be granted sparingly, and in light of the lack of pertinent authority cited by Plaintiffs, the Court finds that denial of Plaintiffs' motion is appropriate. Having found no merit to Plaintiffs' request, therefore, the Court will deny Plaintiffs' motion.[6]

## IV.   CONCLUSION

Based on the foregoing, the Court will deny Plaintiffs' motion. (Doc. No. 77.) An appropriate Order follows.

---

[6] The Court notes that it previously stayed Accelevate pending the disposition of the instant motion in this case. See No. 1:20-cv-000128, Doc. No. 24. In light of the disposition of Plaintiffs' motion herein and as set forth in the accompanying Order, the Court will lift the stay in Accelevate through a separate order to be issued in that action.